UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARTIN FAMATIGAN and,
HEATHER KERCHEN-FAMATIGA,

Case No.
Hon.

      Plaintiff,

Lower Case No. 09-24909-CK

vs.

MORTGAGE ELECTRONIC REGISTRATION
SYSTEMS, INC. (MERS);
U.S. BANK NATIONAL ASSOCIATION,
AMERICA'S SERVICING COMPANY, a
California Corporation authorized to do
Business in Michigan, BNC MORTGAGE,
A California Corporation authorized to
do business in Michigan, IT MORTGAGE,
a Michigan Corporation doing business
in Michigan,

      Defendants.

_____/

| | |
|---|---|
| DAILY LAW FIRM, P.C.<br>Brian Dailey (P39945)<br>Justin G. Grove (P71253)<br>Attorneys for Plaintiff<br>28000 Woodward Ave., Suite 201<br>Royal Oak, MI 48067<br>(248) 744-5005<br>brian@thelawshow.com | PLUNKETT COONEY<br>Matthew J. Boettcher (P40929)<br>Megan P. McKnight (P70428)<br>Attorneys for Defendants Mortgage<br>Electronic Registration Systems, U.S.<br>Bank National Assoc. and America's<br>Servicing Co., only<br>38505 Woodward Ave., Suite 2000<br>Bloomfield Hills, MI 48304<br>(248) 901-4000 fax: 901-4040<br>mboettcher@plunkettcooney.com<br>mmcknight@plunkettcooney.com |

_____/

**NOTICE OF FILING REMOVAL**
**NOTICE OF REMOVAL TO FEDERAL COURT**
**VERIFICATION**
**PROOF OF SERVICE**

PLUNKETT COONEY

By: /s/ MATTHEW J. BOETTCHER

Matthew J. Boettcher (P40929)
Megan P. McKnight (P70428)
Attorneys for Defendants Mortgage
Electronic Registration Systems, U.S. Bank
National Assoc. and America's Servicing Co.,
only
38505 Woodward Ave., Suite 2000
Bloomfield Hills, MI  48304
(248) 901-4000  fax: 901-4040
mboettcher@plunkettcooney.com
mmcknight@plunkettcooney.com

DATED:  March 9, 2010

STATE OF MICHIGAN

IN THE CIRCUIT COURT FOR THE COUNTY OF LIVINGSTON

MARTIN FAMATIGAN and,
HEATHER KERCHEN-FAMATIGA,

Case No. 09-24909-CK
Hon. Michael P. Hatty

        Plaintiff,

vs.

MORTGAGE ELECTRONIC REGISTRATION
SYSTEMS, INC. (MERS);
U.S. BANK NATIONAL ASSOCIATION,
AMERICA'S SERVICING COMPANY, a
California Corporation authorized to do
Business in Michigan, BNC MORTGAGE,
A California Corporation authorized to
do business in Michigan, IT MORTGAGE,
a Michigan Corporation doing business
in Michigan,

        Defendants.

_____/

| DAILY LAW FIRM, P.C. | PLUNKETT COONEY |
|---|---|
| Brian Dailey (P39945) | Matthew J. Boettcher (P40929) |
| Justin G. Grove (P71253) | Megan P. McKnight (P70428) |
| Attorneys for Plaintiff | Attorneys for Defendants Mortgage |
| 28000 Woodward Ave., Suite 201 | Electronic Registration Systems, U.S. |
| Royal Oak, MI 48067 | Bank National Assoc. and America's |
| (248) 744-5005 | Servicing Co., only |
| brian@thelawshow.com | 38505 Woodward Ave., Suite 2000 |
| | Bloomfield Hills, MI 48304 |
| | (248) 901-4000 fax: 901-4040 |
| | mboettcher@plunkettcooney.com |
| | mmcknight@plunkettcooney.com |

_____/

## NOTICE OF FILING REMOVAL

To:   Clerk of the Court
      Attorney for Plaintiff

Please take notice that Mortgage Electronic Registration Systems, Inc.

(MERS), U.S. Bank National Association, and America's Servicing Company, only,

have this day, filed a Notice of Removal to Federal Court, a copy of which is

attached hereto, in the offices of the clerk of the United States District Court,

Eastern District of Michigan, Southern Division, at 231 W. Lafayette Blvd., Detroit,

Michigan

PLUNKETT COONEY

By: /s/ MATTHEW J. BOETTCHER
_____
Matthew J. Boettcher (P40929)
Megan P. McKnight (P70428)
Attorneys for Defendants Mortgage
Electronic Registration Systems, U.S. Bank
National Assoc. and America's Servicing Co.,
only
38505 Woodward Ave., Suite 2000
Bloomfield Hills, MI  48304
(248) 901-4000  fax: 901-4040
mboettcher@plunkettcooney.com
mmcknight@plunkettcooney.com

DATED:  March 9, 2010

4

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARTIN FAMATIGAN and,
HEATHER KERCHEN-FAMATIGA,

          Plaintiff,

vs.

MORTGAGE ELECTRONIC REGISTRATION
SYSTEMS, INC. (MERS);
U.S. BANK NATIONAL ASSOCIATION,
AMERICA'S SERVICING COMPANY, a
California Corporation authorized to do
Business in Michigan, BNC MORTGAGE,
A California Corporation authorized to
do business in Michigan, IT MORTGAGE,
a Michigan Corporation doing business
in Michigan,

          Defendants.

Case No.
Hon.

Lower Case No. 09-24909-CK

_____/

| | |
|---|---|
| DAILY LAW FIRM, P.C.<br>Brian Dailey (P39945)<br>Justin G. Grove (P71253)<br>Attorneys for Plaintiff<br>28000 Woodward Ave., Suite 201<br>Royal Oak, MI 48067<br>(248) 744-5005<br>brian@thelawshow.com | PLUNKETT COONEY<br>Matthew J. Boettcher (P40929)<br>Megan P. McKnight (P70428)<br>Attorneys for Defendants Mortgage<br>Electronic Registration Systems, U.S.<br>Bank National Assoc. and America's<br>Servicing Co., only<br>38505 Woodward Ave., Suite 2000<br>Bloomfield Hills, MI 48304<br>(248) 901-4000 fax: 901-4040<br>mboettcher@plunkettcooney.com<br>mmcknight@plunkettcooney.com |

_____/

## NOTICE OF REMOVAL TO FEDERAL COURT

To:    Clerk of the Court
        Attorney for Plaintiff

Defendants Mortgage Electronic Registration Systems, Inc. (MERS), U.S. Bank National Association, and America's Servicing Company, ("Defendants"), only, by and through their attorneys, Plunkett Cooney, and pursuant to 28 USCA §1332, 1441 and 1446, remove this action from the Livingston County Circuit Court to the United States District Court for the Eastern District of Michigan. In support of this Notice of Removal, Defendants state the following:

1.    On or about December 8, 2009, this action was commenced against Defendants in the Livingston County Circuit Court.

2.    Copies of the Summons and Complaint and the Civil Scheduling Order are attached as Exhibit "A."

3.    The Summons shows that it was received by Defendants on or about February 12, 2010. *See*, Exhibit "A."

4.    The documents attached as Exhibit "A" constitute all process, pleadings and orders received by Defendants and/or otherwise of record in this action.

5.    This case is a civil action of which this Court has original federal question jurisdiction pursuant to 28 U.S.C. § 1331. Plaintiff's Complaint purports to assert federal causes of action against Defendants arising out of the Real Estate Settlement Procedure Act, 12 U.S.C. § 2601, *et seq.*, the Truth in Lending Act, 15 U.S.C. § 1601, *et seq.* and the Fair Debt Creditors Act, 15 U.S.C. § 1692, *et seq.* This Court has supplemental jurisdiction over the remaining claims pursuant to 28 U.S.C. § 1367. The case is, therefore, removable pursuant to 28 U.S.C. § 1441.

6.      As for the remaining Defendants, BNC Mortgage and IT Mortgage, the Livingston County Circuit Court Register of Actions dated February 26, 2010 does not contain return of service for these defendants or, for that matter, any other record entry that would reflect that service has been property effected on these defendants.      Further, no attorney has appeared on behalf of either of these defendants or filed a responsive pleading.  As such, Defendants have not been able to confirm whether the remaining defendants have been served with process for purposes of procuring their consents to removal, but Defendants have no basis upon which to conclude that these defendants would object to removal.

7.      The written Notice of Filing Removal will be filed promptly with the Livingston County Circuit Court as required by 28 U.S.C. § 1446(d), and copies of the same have been served upon Plaintiff's counsel as verified by the attached Proof of Service.

10.      Based upon the foregoing, Defendants are entitled to remove this action to this Court under 28 U.S.C. § 1441, *et seq.*

**WHEREFORE**, Defendants, Mortgage Electronic Registration Systems, Inc. (MERS), U.S. Bank National Association, and America's Servicing Company, only,

3

request that this Court take jurisdiction over this action and grant such other relief as the Court deems proper.

PLUNKETT COONEY

By: /s/ MATTHEW J. BOETTCHER

Matthew J. Boettcher (P40929)
Megan P. McKnight (P70428)
Attorneys for Defendants Mortgage
Electronic Registration Systems, U.S. Bank
National Assoc. and America's Servicing Co.,
only
38505 Woodward Ave., Suite 2000
Bloomfield Hills, MI 48304
(248) 901-4000 fax: 901-4040
mboettcher@plunkettcooney.com
mmcknight@plunkettcooney.com

DATED: March 9, 2010

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARTIN FAMATIGAN and,                          Case No.
HEATHER KERCHEN-FAMATIGA,                       Hon.

       Plaintiff,                              Lower Case No. 09-24909-CK

vs.

MORTGAGE ELECTRONIC REGISTRATION
SYSTEMS, INC. (MERS);
U.S. BANK NATIONAL ASSOCIATION,
AMERICA'S SERVICING COMPANY, a
California Corporation authorized to do
Business in Michigan, BNC MORTGAGE,
A California Corporation authorized to
do business in Michigan, IT MORTGAGE,
a Michigan Corporation doing business
in Michigan,

       Defendants.

_____/

| | |
|---|---|
| DAILY LAW FIRM, P.C. | PLUNKETT COONEY |
| Brian Dailey (P39945) | Matthew J. Boettcher (P40929) |
| Justin G. Grove (P71253) | Megan P. McKnight (P70428) |
| Attorneys for Plaintiff | Attorneys for Defendants Mortgage |
| 28000 Woodward Ave., Suite 201 | Electronic Registration Systems, U.S. |
| Royal Oak, MI 48067 | Bank National Assoc. and America's |
| (248) 744-5005 | Servicing Co., only |
| brian@thelawshow.com | 38505 Woodward Ave., Suite 2000 |
| | Bloomfield Hills, MI 48304 |
| | (248) 901-4000  fax: 901-4040 |
| | mboettcher@plunkettcooney.com |
| | mmcknight@plunkettcooney.com |

_____/

## VERIFICATION

MATTHEW J. BOETTCHER, first being duly sworn, states that he is the attorney for Defendants Mortgage Electronic Registration Systems, U.S. Bank National Association, and America's Servicing Co., and that the foregoing Notice of Removal is true in substance and in fact to the best of her knowledge, information and belief.

PLUNKETT COONEY

By: /s/ MATTHEW J. BOETTCHER

Matthew J. Boettcher (P40929)
Megan P. McKnight (P70428)
Attorneys for Defendants Mortgage
Electronic Registration Systems, U.S. Bank
National Assoc. and America's Servicing Co.,
only
38505 Woodward Ave., Suite 2000
Bloomfield Hills, MI 48304
(248) 901-4000 fax: 901-4040
mboettcher@plunkettcooney.com
mmcknight@plunkettcooney.com

2

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARTIN FAMATIGAN and,
HEATHER KERCHEN-FAMATIGA,

          Plaintiff,

vs.

MORTGAGE ELECTRONIC REGISTRATION
SYSTEMS, INC. (MERS);
U.S. BANK NATIONAL ASSOCIATION,
AMERICA'S SERVICING COMPANY, a
California Corporation authorized to do
Business in Michigan, BNC MORTGAGE,
A California Corporation authorized to
do business in Michigan, IT MORTGAGE,
a Michigan Corporation doing business
in Michigan,

          Defendants.

Case No.
Hon.

Lower Case No. 09-24909-CK

_____/

| DAILY LAW FIRM, P.C. | PLUNKETT COONEY |
|---|---|
| Brian Dailey (P39945) | Matthew J. Boettcher (P40929) |
| Justin G. Grove (P71253) | Megan P. McKnight (P70428) |
| Attorneys for Plaintiff | Attorneys for Defendants Mortgage |
| 28000 Woodward Ave., Suite 201 | Electronic Registration Systems, U.S. |
| Royal Oak, MI 48067 | Bank National Assoc. and America's |
| (248) 744-5005 | Servicing Co., only |
| brian@thelawshow.com | 38505 Woodward Ave., Suite 2000 |
| | Bloomfield Hills, MI 48304 |
| | (248) 901-4000 fax: 901-4040 |
| | mboettcher@plunkettcooney.com |
| | mmcknight@plunkettcooney.com |

_____/

## PROOF OF SERVICE

STATE OF MICHIGAN   )
COUNTY OF OAKLAND)

       MATTHEW J. BOETTCHER, being first duly sworn, deposes and says

that he is employed by PLUNKETT COONEY, and that on March 9, 2010, he

served a copy of Mortgage Electronic Registration Systems, Inc. (MERS), U.S. Bank National Association, and America's Servicing Company's Notice of Removal, Removal of Case to Federal Court, Verification, and Proof of Service, with the Clerk of the Court using the ECF system, and that he has mailed the foregoing documents by United States Postal Service to any parties that are not ECF participants or have not yet appeared or been served.

PLUNKETT COONEY

By: /s/ MATTHEW J. BOETTCHER

Matthew J. Boettcher (P40929)
Megan P. McKnight (P70428)
Attorneys for Defendants Mortgage
Electronic Registration Systems, U.S. Bank
National Assoc. and America's Servicing Co.,
only
38505 Woodward Ave., Suite 2000
Bloomfield Hills, MI  48304
(248) 901-4000  fax: 901-4040
mboettcher@plunkettcooney.com
mmcknight@plunkettcooney.com

Blmfield.17807.00450.1258323-2

# EXHIBIT A

STATE OF MICHIGAN

**TRUE COPY**
MARGARET M. DUNLEAVY
LIVINGSTON COUNTY CLERK

44TH CIRCUIT COURT FOR THE COUNTY OF LIVINGSTON
* * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

_Martin Jamatigan_
Plaintiff,

v

_Mortgage Electronic_
Defendant,

Case No. _09-24909-CK_

FILED
LIVINGSTON COUNTY CLERK
09 DEC -8 PH 4:06

### CIVIL SCHEDULING/TRIAL ORDER

At a session of said Court held in the City of Howell on the
_8_ day of December, 2009.

### PRESENT: HONORABLE MICHAEL P. HATTY, CIRCUIT JUDGE

Pursuant to Michigan Supreme Court Administrative Order 2003-7 and Livingston County 44th Circuit Court/Family Court Administrative Order No. 2004-07J:

### IT IS HEREBY ORDERED:

Status Conference is set for: May _4th_, 2010 @ _3:30_ P.M.

Discovery terminates 10/01/10.

Case Evaluation is set for 10/27/10 @ time set by ADR clerk. You will receive a separate notice from the ADR clerk with exact time of scheduled case evaluation.

Final Pretrial is set for 12/03/10 @ 8:30 A.M.

Bench/Jury Trial is set for 12/06/10 @ 8:30 A.M.

You will receive no other notices of scheduled dates.

## PLEASE TAKE NOTICE OF THE FOLLOWING REQUIREMENTS OF THE COURT:

**Plaintiff/Third Party Plaintiff shall cause to be served a copy of this Order upon each Defendant/Third Party Defendant in the case in the same manner as, and at the same time as the service of the Summons and Complaint/Third Party Complaint. Proof of Service shall be filed with the Clerk of the Court. All persons receiving this notice shall immediately notify all other parties that they have received a copy of this Order.**

Page -1-

Attorneys, pro per parties, and representatives of insurance carriers SHALL ATTEND ALL DATES SCHEDULED BY THIS COURT.  Insurance company representatives must have authority to settle.  Failure to appear at any court scheduled date may result in sanctions allowed under court rules.

If any party feels that case evaluation or mediation is inappropriate, or that this scheduling will cause hardship, a motion to modify must be filed within 30 days of the receipt of this Scheduling/Trial Order.

*Status Conference:*  Insurance representatives are not required to attend Status Conference. Attendance of attorney and pro per party may be waived if all of the listed documents are filed, by *ALL* parties, with the Clerk of the Court *ten (10) days prior to the scheduled Status Conference date*.  It is the parties responsibility to confer with the court to ensure attendance requirement has been waived. Should parties opt not to submit the below listed documents *ten (10) days prior to the scheduled Status Conference,* the following documents are due no later than the Status Conference date:

    ✓    ***Order for Mediation:*** On attached form. Mediation under MCR 2.411(A)(2) is to be ordered for all civil cases.  The parties shall confer prior to the status conference as to the selection of a mediator.  In absence of agreement, a mediator will be selected by the Court pursuant to MCR 2.411(B)(3).  Item #3 on the form must indicate a specific number of days by which the mediation will be completed.  Mediation must be completed prior to case evaluation. Failure to complete mediation may result in sanctions allowed under court rules.

    ✓    ***Witness lists and pretrial statements:*** on forms similar to those contained herein. (Original and Judge's Copy)

    ✓    Stipulation that no other parties are to be added.

*Motions:*  All motions shall be scheduled for a regular motion day, without exception.  An original and Judge's copy is required for all motions.  All motions shall be filed and argued no later than 30 days before the scheduled trial date, unless they could not have been reasonably anticipated.

Motions to **add parties** must be filed and argued no later than 180 days from service of this Order; and delay of trial will be a factor when considering if such a motion should be granted.

All **dispositive** motions ***must be filed and argued before Case Evaluation***.  Each motion, brief and any response to such motion shall be submitted in Word and/or WordPerfect *ONLY* format on disk or e-mailed to: **JudgeHattyMotions@co.livingston.mi.us** at the same time that the original and judge's copy are submitted to the Clerk of the Court. Exhibits for summary disposition motions need not be included in digital submissions. Electronic submission of a proposed judgment supported by findings of fact in the party's favor is required with each summary disposition motion and/or response.

*Trial Exhibits:*  Must be marked and served on the other parties at Final Pretrial. An index on a form similar to that contained herein, together with an indexed bench copy of the exhibits shall be left with the Court at the time of the final pretrial conference. If exhibits cannot conveniently be copied, they should still be included on the index. Plaintiff's exhibits are to be identified with numbers and defendant's exhibits with **letters**. Disputed exhibits shall be ruled upon at final pretrial. No further exhibits shall be admitted at trial except for good cause shown.

*Special voir dire* requests must be submitted, in writing, before the close of the final pre-trial conference. The Court will conduct the jury voir dire.

*Proposed Jury Instructions:*  Jury instructions shall be submitted to the Court no later than the start of trial in hard copy and on disk (Word or WordPerfect) *ONLY*.

> Instructions shall be full text, double spaced, one instruction per page with no firm names or case caption. Each instruction shall be complete for the specific case, ready for presentation to the jury. Attorneys should confer in an attempt to agree on one set of standard instructions. Disputed instruction shall be noted as such. Additional instructions may be submitted if factual development requires the same.

*In non-jury cases:*  The parties shall submit the following on or before the start of trial, in both hard copy and disk (Word or WordPerfect) *ONLY*:

   ✓    A proposed statement of facts to be used by the Court in deciding factual disputes, with reference to the witness from whom the testimony will come.

   ✓    A proposed final order.

 

**Michael P. Hatty**
Circuit Court Judge

I certify the Plaintiff/Third Party Plaintiff has been served:

_____ 1. By Ordinary Mail   ✓ 2. Personally   _____ 3. By Attorney Mailbox

*12·08·09*
Date

Renae Roberts
Clerk/Assignment Clerk

Revised 08/09

44th CIRCUIT COURT FOR THE COUNTY OF LIVINGSTON
MICHAEL P. HATTY, CIRCUIT COURT JUDGE

_____,        Case No. _____
                    Plaintiff,
v                                     Page No. _____

_____
                    Defendant.

## EXHIBIT RECORD for _____
                              (Plaintiff/Defendant)

| Date | Exhibit No/Ltr | Description | Marked | Received |
|------|----------------|-------------|--------|----------|
|      |                |             |        |          |
|      |                |             |        |          |
|      |                |             |        |          |
|      |                |             |        |          |
|      |                |             |        |          |
|      |                |             |        |          |
|      |                |             |        |          |

## WITNESS LIST for _____
                          (Plaintiff/Defendant)

| Name | Address | Purpose of Testimony | Live or Video |
|------|---------|----------------------|---------------|
|      |         |                      |               |
|      |         |                      |               |
|      |         |                      |               |
|      |         |                      |               |
|      |         |                      |               |
|      |         |                      |               |
|      |         |                      |               |

_____          _____
Date                            Signature of (Plaintiff/Defendant) Attorney

44th CIRCUIT COURT FOR THE COUNTY OF LIVINGSTON
MICHAEL P. HATTY, CIRCUIT COURT JUDGE
Civil Pretrial Statement of _____
Plaintiff/Defendant

_____ Plaintiff,

v

Case No._____

_____
Defendant.

## BRIEF STATEMENT OF FACTS

## LEGAL BASIS FOR _____ POSITION
Plaintiff's/Defendant's
(Please set forth the "elements" of each legal theory you assert [e.g., defendant's affirmative defenses] and cite the controlling authorities.)

## ITEMIZATION OF DAMAGES AND AUTHORITIES

## FINDINGS OF FACT
(In non-jury cases - state facts Court must find in order for you to prevail.  MCR 2.517)

## MISCELLANEOUS
a) Estimated trial time for Plaintiff's proofs: _____
b) Estimated trial time for Defendant's proofs: _____
c) Is Mediation agreeable in this case? _____
d) Is settlement possible? _____ Probable? _____
e) Jury trial _____ Non-jury trial _____ Fee paid by _____

_____
Attorney signature

Page -5-

| STATE OF MICHIGAN<br>44th CIRCUIT COURT | ORDER FOR MEDIATION<br>(CIVIL) | CASE NO. |
|---|---|---|

| Court Address:<br>204 S. Highlander Way, Suite 5, Howell, MI 48843 | Court Telephone No.<br>517-546-9816. |
|---|---|

| Plaintiff name(s), address(es), and telephone no.(s) | Defendant name(s), address(es), and telephone no(s). |
|---|---|

V

| Plaintiff attorney, bar no., address, and telephone no. | Defendant attorney, bar no.,address, and telephone no. |
|---|---|

**IT IS ORDERED:**

1. This case is ordered to mediation under MCR 2.411(A)(2)
   □ a. by agreement of the parties.
   □ b. on the court's own motion.

2. The mediator will be:
   □ a. _____
       Name of mediator
   □ b. The ADR clerk shall assign one as provided by the court's alternative dispute resolution plan.

3. Mediation must be completed within □30  □60  □90  □ _____ days of the date this order is entered. The mediator shall promptly confer with the parties to schedule mediation within the deadline.

4. The costs of mediation shall be divided by the parties on a pro-rata basis unless otherwise agreed to by the parties or ordered by the court or, for persons unable to pay for mediation, as provided by the court's alternative dispute resolution plan.

5. Persons with authority to settle the case, including the parties to the action, their agents, representatives of lien holders, and representatives of insurance carriers shall be present at the mediation. The parties must provide to the mediator, as soon as possible, the names of the above mentioned individuals.

6. The attorneys who intend to try the case shall attend the mediation.

7. The parties shall ensure that the Mediator provides, in writing, mediation results pursuant to 2.411(C)(3).

_____
Date

**MICHAEL P. HATTY**
Circuit Court Judge

Approved as to form and content:

_____
_____
_____



**CORPORATION SERVICE COMPANY**

# Notice of Service of Process

BZS / ALL
Transmittal Number: 7393673
Date Processed: 02/15/2010

| | |
|---|---|
| **Primary Contact:** | Diana Benda - WFHM<br>Wells Fargo, Inc.<br>800 Walnut Street<br>Des Moines, IA 50309 |

| | |
|---|---|
| **Entity:** | America'S Servicing Company<br>Entity ID Number 1901284 |
| **Entity Served:** | America's Servicing Company |
| **Title of Action:** | Martin Famatigan vs. Mortgage Electornic Registration Systems, Inc. (MERS) |
| **Document(s) Type:** | Summons/Complaint |
| **Nature of Action:** | Contract |
| **Court:** | Livingston County Circuit Court, Michigan |
| **Case Number:** | 09-24909-CK |
| **Jurisdiction Served:** | Michigan |
| **Date Served on CSC:** | 02/12/2010 |
| **Answer or Appearance Due:** | 28 Days |
| **Originally Served On:** | CSC |
| **How Served:** | Regular Mail |
| Sender Information: | Justin G. Grove<br>248-744-5005 |

Information contained on this transmittal form is for record keeping, notification and forwarding the attached document(s). It does not constitute a legal opinion. The recipient is responsible for interpreting the documents and taking appropriate action.

**To avoid potential delay, please do not send your response to CSC**

*CSC is SAS70 Type II certified for its Litigation Management System.*

2711 Centerville Road   Wilmington, DE 19808   (888) 690-2882   |   sop@cscinfo.com

Approved, SCAO

| | Original - Court<br>1st copy - Defendant | 2nd copy - Plaintiff<br>3rd copy - Return |
|---|---|---|

| STATE OF MICHIGAN<br>JUDICIAL DISTRICT<br>44th JUDICIAL CIRCUIT<br>COUNTY PROBATE | SUMMONS AND COMPLAINT | CASE NO.<br>CK<br>09 24909 |
|---|---|---|

Court address
204 S Highlander Way Howell, MI 48843-2072                    Court telephone no.
(517) 546-9816

| Plaintiff name(s), address(es), and telephone no(s). | | Defendant name(s), address(es), and telephone no(s). |
|---|---|---|
| MARTIN FAMATIGAN and HEATHER<br>KERCHEN-FAMATIGA | v | MORTGAGE ELECTORNIC REGISTRATION<br>SYSTEMS, INC. (MERS), U.S. BANK NATIONAL<br>ASSOCIATION, AMERICA'S SERVICING COMPANY.,<br>a California Corporation authorized to do business in<br>Michigan, BNC MORTGAGE, a California Corporation |

Plaintiff attorney, bar no., address, and telephone no.
Dailey Law Firm, PC
Brian T. Dailey (P39945)
Justin G. Grove (P71253)
28000 Woodward Ave, Ste 201
Royal Oak, MI 48067      (248) 744-5005

JUDGE HATTY
P-30990

America's Servicing Company
CSC - Lawyers
601 Abbott Rd.
East Lansing, MI 48823

LIVINGSTON COUNTY CLERK FILED 09 DEC - 8 PM 4:03

**SUMMONS** NOTICE TO THE DEFENDANT: In the name of the people of the State of Michigan you are notified:
1. You are being sued.
2. **YOU HAVE 21 DAYS** after receiving this summons to **file a written answer with the court** and serve a copy on the other party or take other lawful action with the court (28 days if you were served by mail or you were served outside this state). MCR2.111(C)
3. If you do not answer or take other action within the time allowed, judgment may be entered against you for the relief demanded in the complaint.

| Issued<br>12-08-09 | This summons expires<br>03-09-10 | Court clerk<br>C | MARGARET M DUNLEAVY<br>CLERK OF THE CIRCUIT COURT<br>HOWELL, MICHIGAN 48843 |
|---|---|---|---|

*This summons is invalid unless served on or before its expiration date.
This document must be sealed by the seal of the court.

**COMPLAINT** *Instruction: The following is information that is required to be in the caption of every complaint and is to be completed by the plaintiff. Actual allegations and the claim for relief must be stated on additional complaint pages and attached to this form.*
**Family Division Cases**
☐ There is no other pending or resolved action within the jurisdiction of the family division of circuit court involving the family or family members of the parties.
☐ An action within the jurisdiction of the family division of the circuit court involving the family or family members of the parties has been previously filed in _____ Court.
The action ☐ remains ☐ is no longer pending. The docket number and the judge assigned to the action are:

| Docket no. | Judge | Bar no. |
|---|---|---|

**General Civil Cases**
☑ There is no other pending or resolved civil action arising out of the same transaction or occurrence as alleged in the complaint.
☐ A civil action between these parties or other parties arising out of the transaction or occurrence alleged in the complaint has been previously filed in _____ Court.
The action ☐ remains ☐ is no longer pending. The docket number and the judge assigned to the action are:

| Docket no. | Judge | Bar no. |
|---|---|---|

**VENUE**

| Plaintiff(s) residence (include city, township, or village) | Defendant(s) residence (include city, township, or village) |
|---|---|
| County of Livingston, Michigan | County of Livingston, Michigan |
| Place where action arose or business conducted | |
| County of Livingston, Michigan | |

12/08/2009
Date                                              Signature of attorney/plaintiff

If you require special accommodations to use the court because of a disability or if you require a foreign language interpreter to help you to fully participate in court proceedings, please contact the court immediately to make arrangements.

MC 01 (3/06) **SUMMONS AND COMPLAINT**   MCR 2.102(B)(11), MCR 2.104, MCR 2.105, MCR 2.107, MCR 2.113(C)(2)(a), (b), MCR 3.206(A)

| SUMMONS AND COMPLAINT |
|---|
| Case No. 09-24909 |

## PROOF OF SERVICE

**TO PROCESS SERVER:** You are to serve the summons and complaint not later than 91 days from the date of filing. You must make and file your return with the court clerk. If you are unable to complete service you must return this original and all copies to the court clerk.

### CERTIFICATE / AFFIDAVIT OF SERVICE / NON-SERVICE

| ☐ OFFICER CERTIFICATE | | ☐ AFFIDAVIT OF PROCESS SERVER |
|---|---|---|
| I certify that I am a sheriff, deputy sheriff, bailiff, appointed court officer, or attorney for a party [MCR 2.104(A)(2)], and that: (notary not required) | **OR** | Being first duly sworn, I state that I am a legally competent adult who is not a party or an officer of a corporate party, and that: (notary required) |

☐ I served personally a copy of the summons and complaint,

☐ I served by registered or certified mail (copy of return receipt attached) a copy of the summons and complaint,

together with _Scheduling Trial Order_
List all documents served with the Summons and Complaint

_____ on the defendant(s):

| Defendant's Name | Complete address(es) of service | Day, date, time |
|---|---|---|
| | | |
| | | |
| | | |

☐ After diligent search and inquiry, I have been unable to find and serve the following defendant(s):

_____

I have made the following efforts in attempting to serve the defendant(s): _____

_____

☐ I have personally attempted to serve the summons and complaint, together with _____
Attachment

_____ on _____
Name

at _____ and have been unable to complete service because
Address

the address was incorrect at the time of filing.

| Service Fee | Miles Traveled | Mileage Fee | Total Fee | Signature |
|---|---|---|---|---|
| $ | | $ | $ | |

Title

Subscribed and sworn to before me on _____ County, Michigan.
Date

My commission expires: _____ Signature: _____
Date                          Deputy court clerk/Notary Public

### ACKNOWLEDGMENT OF SERVICE

I acknowledge that I have received service of the summons and complaint, together with:

_____
Attachments

_____ on _____

Day, date, time

on behalf of _____

Signature

Approved, SCAO

| | Original - Court | 2nd copy - Plaintiff |
| | 1st copy - Defendant | 3rd copy - Return |

| STATE OF MICHIGAN | | CASE NO. |
| JUDICIAL DISTRICT | SUMMONS AND COMPLAINT | CK |
| 44th JUDICIAL CIRCUIT | | |
| COUNTY PROBATE | | 09 24909 |

Court address
204 S Highlander Way Howell, MI 48843-2072          (517) 546-9816          Court telephone no.

| Plaintiff name(s), address(es), and telephone no(s). | | Defendant name(s), address(es), and telephone no(s). |
| MARTIN FAMATIGAN and HEATHER KERCHEN-FAMATIGA | v | MORTGAGE ELECTORNIC REGISTRATION SYSTEMS, INC. (MERS), U.S. BANK NATIONAL ASSOCIATION, AMERICA'S SERVICING COMPANY, a California Corporation authorized to do business in Michigan, BNC MORTGAGE, a California Corporation |

| Plaintiff attorney, bar no., address, and telephone no. | |
| Dailey Law Firm, PC | America's Servicing Company |
| Brian T. Dailey (P39945) | CSC - Lawyers |
| Justin G. Grove (P71253)  JUDGE HATTY  P-30990 | 601 Abbott Rd. |
| 28000 Woodward Ave, Ste 201 | East Lansing, MI 48823 |
| Royal Oak, MI 48067     (248) 744-5005 | |

**SUMMONS**   NOTICE TO THE DEFENDANT: In the name of the people of the State of Michigan you are notified:
1. You are being sued.
2. **YOU HAVE 21 DAYS** after receiving this summons to file a written answer with the court and serve a copy on the other party or take other lawful action with the court (28 days if you were served by mail or you were served outside this state). MCR 2.111(C)
3. If you do not answer or take other action within the time allowed, judgment may be entered against you for the relief demanded in the complaint.

| Issued 12-08-09 | This summons expires 03-09-10 | Court clerk | MARGARET M. DUNLEAVY |
| | | | CLERK OF THE CIRCUIT COURT |
| | | | HOWELL, MICHIGAN 48843 |

*This summons is invalid unless served on or before its expiration date.
This document must be sealed by the seal of the court.

**COMPLAINT**   *Instruction: The following is information that is required to be in the caption of every complaint and is to be completed by the plaintiff. Actual allegations and the claim for relief must be stated on additional complaint pages and attached to this form.*

**Family Division Cases**
☐ There is no other pending or resolved action within the jurisdiction of the family division of circuit court involving the family or family members of the parties.
☐ An action within the jurisdiction of the family division of the circuit court involving the family or family members of the parties has been previously filed in _____ Court.
The action ☐ remains  ☐ is no longer  pending. The docket number and the judge assigned to the action are:

| Docket no. | Judge | Bar no. |

**General Civil Cases**
☑ There is no other pending or resolved civil action arising out of the same transaction or occurrence as alleged in the complaint.
☐ A civil action between these parties or other parties arising out of the transaction or occurrence alleged in the complaint has been previously filed in _____ Court.
The action ☐ remains  ☐ is no longer  pending. The docket number and the judge assigned to the action are:

| Docket no. | Judge | Bar no. |

**VENUE**

| Plaintiff(s) residence (include city, township, or village) | Defendant(s) residence (include city, township, or village) |
| County of Livingston, Michigan | County of Livingston, Michigan |
| Place where action arose or business conducted | |
| County of Livingston, Michigan | |

12/08/2009
Date                                          Signature of attorney/plaintiff

If you require special accommodations to use the court because of a disability or if you require a foreign language interpreter to help you to fully participate in court proceedings, please contact the court immediately to make arrangements.

MC 01  (3/06)  SUMMONS AND COMPLAINT    MCR 2.102(B)(11), MCR 2.104, MCR 2.105, MCR 2.107, MCR 2.113(C)(2)(a), (b), MCR 3.206(A)

LIVINGSTON COUNTY CLERK   FILED   09 DEC -8 PM 4: 03

SUMMONS AND COMPLAINT

Case No. 09-24909

PROOF OF SERVICE

**TO PROCESS SERVER:** You are to serve the summons and complaint not later than 91 days from the date of filing. You must make and file your return with the court clerk. If you are unable to complete service you must return this original and all copies to the court clerk.

CERTIFICATE / AFFIDAVIT OF SERVICE / NON-SERVICE

| ☐ OFFICER CERTIFICATE | OR | ☐ AFFIDAVIT OF PROCESS SERVER |
|---|---|---|
| I certify that I am a sheriff, deputy sheriff, bailiff, appointed court officer, or attorney for a party [MCR 2.104(A)(2)], and that: (notary not required) | | Being first duly sworn, I state that I am a legally competent adult who is not a party or an officer of a corporate party, and that: (notary required) |

☐  I served personally a copy of the summons and complaint,

☐  I served by registered or certified mail (copy of return receipt attached) a copy of the summons and complaint,

together with   _Scheduling/Trial Order_
List all documents served with the Summons and Complaint

_____ on the defendant(s):

| Defendant's Name | Complete address(es) of service | Day, date, time |
|---|---|---|
| | | |
| | | |
| | | |

☐ After diligent search and inquiry, I have been unable to find and serve the following defendant(s):

_____

I have made the following efforts in attempting to serve the defendant(s): _____

_____

☐ I have personally attempted to serve the summons and complaint, together with _____
                                                                                            Attachment

_____ on _____
                                               Name

at _____ and have been unable to complete service because
     Address
the address was incorrect at the time of filing.

| Service Fee | Miles Traveled | Mileage Fee | Total Fee | Signature |
|---|---|---|---|---|
| $ | | $ | $ | |

Title _____

Subscribed and sworn to before me on _____, _____ County, Michigan.
                                              Date

My commission expires: _____    Signature: _____
                              Date                                Deputy court clerk/Notary Public

ACKNOWLEDGMENT OF SERVICE

I acknowledge that I have received service of the summons and complaint, together with: _____
                                                                                                    Attachments

_____ on _____
                                               Day, date, time

_____ on behalf of _____
Signature

STATE OF MICHIGAN

TRUE COPY
MARGARET M. DUNLEAVY
LIVINGSTON COUNTY CLERK

IN THE CIRCUIT COURT FOR THE COUNTY OF LIVINGSTON

MARTIN FAMATIGAN and,
HEATHER KERCHEN-FAMATIGA

     Plaintiff,

Case No. 09- 24909 -CK
Hon.

**JUDGE HATTY**
P-30990

v.

MORTGAGE ELECTORNIC REGISTRATION
SYSTEMS, INC. (MERS),
U.S. BANK NATIONAL ASSOCIATION,
AMERICA'S SERVICING COMPANY., a
California Corporation authorized to do business in
Michigan, BNC MORTGAGE, a
California Corporation authorized to do business
in Michigan, IT MORTGAGE  a Michigan Corporation
doing business in Michigan.

     Defendants

**DAILEY LAW FIRM, PC**
**BY: BRIAN DAILEY (P39945)**
     **JUSTIN G. GROVE (P71253)**
Attorneys for Plaintiff
28000 Woodward Ave., Ste 201
Royal Oak, MI 48067
248.744.5005

There is no other civil action between these parties arising out of the same
transaction or occurrence alleged in this Complaint pending in this court,
nor has any such action been previously filed and dismissed or transferred
after having been assigned to a judge.

Brian Dailey (P39945)

**COMPLAINT**

**NOW COMES** the Plaintiffs, **Martin Famatiga and Heather Kerchen-Famatiga**, by

and through their attorneys, DAILEY LAW FIRM, PC and for their Complaint against the above

named Defendant, states unto this Honorable Court as follows:

*(left margin, vertical text)* DAILEY LAW FIRM, P.C.

## PARTIES, JURISDICTION, AND VENUE

1. Plaintiff, **MARTIN FAMATIGA**, is a resident of the township of Marion, County of Livingston, in the State of Michigan

2. Plaintiff, **HEATHER KERCHEN-FAMATIGA**, is a resident of the township of Marion, County of Livingston, in the State of Michigan

3. Defendant, **MORTGAGE ELECTRONIC SYSTEM, INC, (MERS)** is a Corporation that continuously conducts business throughout the State of Michigan.

4. Defendant, **U.S. BANK NATIONAL ASSOCATION**, is a Corporation that continuously conducts business throughout the State of Michigan.

5. Defendant, **BNC MORTGAGE, (BNC)** is a California Corporation with its principle place of business in the city of Irvine, County of Orange, State of California. Defendant continuously conducts business throughout the State of Michigan and is engaged in the business of predatory lending and promotion of fraudulent mortgages.

6. Defendant, **AMERICA'S SERVICING COMPANY**, (referred to as **ASC**), is a Delaware Corporation that continuously conducts business throughout the State of Michigan.

7. Defendant, **IT MORTGAGE COMPANY**, is a Michigan Corporation with its principle place of business in the City of Livonia, County of Wayne, State of Michigan. Defendant continuously conducts business throughout the State of Michigan.

8. Venue is proper in this Court as this is an action based in contract law, the SUBJECT PROPERTY is located in Livingston County and Defendants continuously conduct business in the County of Livingston, State of Michigan and the amount in controversy is greater than $25, 000.

## GENERAL ALLEGATIONS

9. Plaintiffs, **MARTIN FAMATIGA** and **HEATHER KERCHEN-FAMATIGA**

incorporate by reference paragraphs 1 through 6 and further states.

10. That on March 25, 2005 Plaintiffs entered into a Mortgage agreement with the above named Defendants for the purchase of property located at 1282 Morning Mist Drive, Marion Township, MI 48843.

11. That the Mortgage agreement entered into by Plaintiffs was deficient and failed to provide all necessary disclosures to Plaintiff.

12. That the loan was improper and resulted from Defendants' violations of state and federal law.

13. That the loan was fraudulent upon inception.

14. That Plaintiffs were placed into a loan product that was against their best interests and which the Defendants knew Plaintiffs would be unable to afford when the interest rate adjusted.

15. That Defendants put Plaintiffs into this loan product without regard for their ability to pay back the loan.

16. That the interest rate on Plaintiffs' mortgage adjusted and Plaintiffs were forced to pay a considerably larger monthly mortgage payment.

17. That thereafter Plaintiffs were unable to make this much larger monthly mortgage payment.

18. That Plaintiffs attempted to reach a compromise with Defendant, ASC who allegedly was the current holder of the note.

19. That Plaintiffs complied with the terms of the loan modification yet Defendant, ASC refused to take the last payment from Plaintiff's. (**Exhibit 1**)

20. That thereafter Defendant, ASC attempted to foreclose on Plaintiffs' property.

21. However, to this date, Plaintiff has seen no legal evidence that would support assertions or conclusion that any Defendants, have or acquired legal standing as a holder in due

course for adequate value.

22. Plaintiffs allege upon information and belief that none of the above named Defendants are the holder of the notes identified.

23. Thus Defendants do not have legal standing to attempt to foreclose on Plaintiff's property.

24. That shortly before the scheduled foreclosure sale, Plaintiffs filed for Chapter 7 Bankruptcy thus preventing the sale of the home.

25. The Mortgage Agreement entered into by Plaintiffs is invalid and Plaintiffs did not receive all necessary disclosures from Defendants.

## COUNT I: QUITE TITLE AGAINST ALL DEFENDNATS

26. Plaintiffs incorporates, by reference the allegations set forth in paragraphs 1-25 and further states:

27. Plaintiffs are the owners of the SUBJECT PROPERTY per the recorded mortgage executed by Plaintiffs. (**Exhibit 2**)

28. The basis of Plaintiffs' interest in title is the recorded mortgage from Defendants, granting the SUBJECT PROPERTY to Plaintiffs, and recorded in the Official Records of the County of Livingston.

29. Plaintiffs are seeking to quiet title against the claims of Defendants as follows:

Defendants are seeking to hold themselves out as the fee simple owners of the SUBJECT PROPERTY, when in fact Plaintiffs have an interest in said property, Defendants have no right, title, interest, or estate in the SUBJECT PROPERTY and Plaintiffs' interest is adverse to defendants' claim of ownership.

30. Plaintiffs' seek to quiet title as of October 1, 2009.

WHEREFORE, Plaintiffs seek a judicial declaration that the title to the SUBJECT PROPERTY is vested in Plaintiffs alone and that Defendants be declared to have no estate, right, title, or

DAILEY LAW FIRM, P.C.

interest in the subject property and that Defendants be forever enjoined from asserting any estate, right, title, or interest in the subject property, adverse to Plaintiffs herein.

### COUNT I: WRONGFUL FORECLOSURE

31. Plaintiffs incorporates, by reference the allegations set forth in paragraphs 1-30 and further states:

32. The original loan and note at issue were initially made in favor of the lender, **BNC MORTGAGE.**

33. That upon information and belief at some point the servicing of the loan was transferred to Defendant, **IT MORTGAGE** then transferred again to Defendant, **ASC**. Thereafter, it is believed that Defendant,**ASC** took over the **IT MORTGAGE** note and the accompanying mortgage security agreement. Thereafter, the note and mortgage were transferred to Defendant, **U.S. BANK** as trustee and Defendant, **MERS** is foreclosing the loan.

34. Plaintiffs made lawful demands to Defendant, **ASC** to attempt to validate the alleged debt and to determine the status of the note and mortgage, including the mailing of four Qualified Written Requests. **(Exhibit 3).** No answers were ever provided by Defendant, **ASC**.

35. Defendants to this date have been unable to produce proof of its ownership of the underlying note nor the legal validity of a note or valid security interest in Plaintiffs' property. MCL 125.1449a (1) (c).

36. Defendants have continued to act against Plaintiffs' property rights, failed to credit their tender of payment, failed to respond to RESPA requests and has attempted to continue with a wrongful foreclosure. MCL 440.3305(a) ); MCL 600.3204 (1)(d)

37. Defendants have proceeded with the foreclosure of Plaintiffs' property without satisfying the requirements under Michigan and Federal laws.

38. Specifically, Defendants have failed to provide proper notice of default, failed to produce any proof that it has a valid promissory note and valid deed. *See* UCC Sec 3-309(a)(1)(b).

39. Michigan Commercial Code Sec. 3201 requires a "negotiation" for the transfer of a note, defining that term as a "transfer of possession...of an instrument by a person other than the issuer to a person who thereby becomes its holder" See UCC 3-204, 3-201.

40. In addition, Section 3201 (b) requires that "if an instrument [note] is payable to an identified person, negotiation requires transfer of the possession of the [note] and endorsement by the holder. Sec. 3203(a) states that "an instrument is transferred when it is delivered by a person other than its issuer for the purpose of giving to the person receiving delivery the right to enforcement to the note. See UCC 1-201 (20); UCC 3-203; Vitols v Citizens Banking Co. 10 F. 3d 1227, 1223 (6th Cir.:1993).

41. Absent proof that the purported holder of the note has complied with the above statutory procedure, there can be no standing to enforce said note. ; UCC 3-104(1); UCC 3-103

42. That Defendants, acting as a service agent, do not have standing to enforce the note. For only a person who is the holder of the note has standing to enforce the note.

43. **It is the holder of the note, who bears the burden of establishing its status as a holder in due course, when the debtor initially raise any issue.** UCC 3-308(b).

44. When the complaining party cannot prove the existence of the note, then there is no note. Pacific Concrete F.C.U v Kauanoe, 62 Haw.334, 614 P 2d 936 (1980).

45. To be a holder in due course, a lender must have taken the instrument in "good faith". *U.C.C. 3-302(a)(2); Kennard v. reliance, Inc., 264 A.2d 832 (Md. 1970).*

46. The holder must make inquiry sufficient to satisfy the suspicions raised by such circumstances. *Agrilance, L.L.C. v. Farmpro Servs., Inc., 328 F. Supp. 2d 958 (S.D. Iowa 2003); Nat'l Check Cashing, Inc. v. Desrochers, 60 U.C.C rep. Serv. 2d 1198 (N.J. Super. Ct. App. Div. 2006).*

DAILEY LAW FIRM, P.C.

47. For a transferee to be a holder in due course, it must take the instrument without notice of that someone else has a claim to the instrument or that any party has defense or claim in recoupment. *See U.C.C 3-305(a)(3); Official Comment 3 to U.C.C. 3-305.*

48. Thus, defects apparent on the face of the documents, such as unfair contract terms, Truth In Lending violations, or usurious interest rates, "should defeat holder-in-due-course status" as is the case here.

**WHEREFORE,** PLAINTIFFS REQUESTS that this Court enter a judgment in its favor and against Defendants, declaring that none of the above named Defendants are the holder in due course of the original signed deed of trust and any related note, plus interest, costs, and attorney fees and for such further and additional relief as may be fair and just under the circumstances.

## COUNT II: FRAUD/MISREPRESENTATION

49. Plaintiffs incorporates, by reference the allegations set forth in paragraphs 1-48 and further states:

50. The Defendant, **BNC MORTGAGE,** by and through its representatives, agents and/or employees, fraudulently induced Plaintiffs to enter into a mortgage transaction which was contrary to Plaintiffs' stated intentions, contrary to their interests, and contrary to the preservation of their home. MCL445.903(1)(a)(e)(m)(n)(o)(s)(v)(x)(y)(z)(cc)

51. The material representations were false when they were made. MCL 445.903

52. When the Defendant, **BNC MORTGAGE,** by and through its representatives, agents, and/or employees, made said material misrepresentations, they knew that they was false or made it recklessly without any knowledge of its truth as a positive assertion. MCL 445.903

DAILEY LAW FIRM, P.C.

53. The Defendant, **BNC MORTGAGE**, by and through its representatives, agents, and/or employees, made said material misrepresentations with the intention that the Plaintiffs should act on it.

54. Plaintiffs did in fact act in reliance on said material misrepresentations when it made payments to the Defendant under the mortgage agreement.

55. Plaintiffs allege that the fraudulent conduct of Defendant, **BNC MORTGAGE**, has caused Plaintiffs to incur costs and expenses in addition to the prospect of losing the SUBJECT PROPERTY to a sheriff's sale.

56. Plaintiffs allege that based upon the fraud perpetrated upon them by Defendant, **BNC MORTGAGE**, the mortgage and loan agreements must be rescinded.

57. The Plaintiff suffered damages by acting in reliance on the material misrepresentation.

**WHEREFORE,** PLAINTIFFS REQUESTS that this Court enter a judgment in its favor and against Defendants, declaring this mortgage to be void and allow rescission of the mortgage and notes, plus interest, costs, and attorney fees and for such further and additional relief as may be fair and just under the circumstances and allowed under MCL 445.911

### COUNT III: PREDATORY LENDING and UDAP

58. Plaintiffs incorporates, by reference the allegations set forth in paragraphs 1-57 and further states:

59. That Defendants took advantage of Plaintiff's inferior bargaining power in order to lock Plaintiffs into severely unfavorable Notes and Mortgage.

60. Defendants did not reveal all material terms of the Notes and Mortgage as they understood them. MCL 440.903

61. That at the time the consumer engaged loan broker, the broker failed to disclose the approximate amount of his (high) broker fee or that he already had a prearranged lender, thus violating the state UDAP statute. *In re Dukes, 24 B.R., 404 (Bankr. E.D. Mich.*

*1982).*

62. Specifically, Defendants knew or should have known that Plaintiffs could not; under any circumstances afford to pay the monthly mortgage loan payment on the property.

63. Defendants induced Plaintiffs into obtaining the loan on the property and granting it a security interest by promising Plaintiffs that their payments would be lower or they would be able to otherwise refinance in the future, both of these statements were untrue when they were made. MCL 445.903

64. Defendant further induced Plaintiffs into purchasing the property by creating a mortgage market environment with high and constantly increasing false property values.

65. That as a direct result of these predatory lending practices, Plaintiffs have suffered damages.

**WHEREFORE,** PLAINTIFFS REQUESTS that this Court enter a judgment in its favor and against Defendants, declaring this mortgage to be void and allow rescission of the mortgage and notes, plus interest, costs, and attorney fees and for such further and additional relief as may be fair and just under the circumstances

## COUNT IV: VIOLATIONS OF MICHIGAN CONSUMERS PROTECTION ACT

66. Plaintiffs incorporates, by reference the allegations set forth in paragraphs 1-65 and further states:

67. Plaintiff is a "person" as defined by the Michigan Consumer Protection Act, MCL § 445.902(b).

68. The transactions complained of constitute "trade or commerce" as defined by the Michigan Consumer Protection Act, MCL § 445.902(c).

69. In the course of the transaction that is the subject of this lawsuit, Defendants violated the Michigan Consumer Protection Act, MCL § 445.901 et. seq, by engaging in unfair, unconscionable or deceptive methods, acts or practices in the conduct of trade or

commerce, including but not limited to:

    a.  Placing Plaintiffs into a mortgage that was contrary to his stated intention.

    b.  By placing Plaintiffs into a mortgage in which they knew there was a high likelihood that Plaintiffs would default and be subject to foreclosure.

    c.  By Placing Plaintiffs into a mortgage that was clearly not in the best interest of Plaintiffs.

    d.  By failing to make reasonable inquiry into Plaintiffs' actual ability to repay this debt.

    e.  By misrepresenting the amount charged by or paid to a third party for product or service, in violation of MCL 445.1634(1)(b).

    f.  By making false and misleading statements in connection with this agreement, in violation of MCL 445.1634(3).

    g.  By engaging in unfair, unconscionable, or deceptive methods/practices in the conduct of trade, in violation of MCL 445.903.

70. As a direct and proximate result of Defendants' violations, the mortgage entered into by Plaintiffs is void. MCL 440.2721; MCL 440.3305 MCL 445.108, MCL 445.1611

71. Further, under MCL 445.911(1)(a)(b) Plaintiffs are entitled to obtain a declaratory judgment that a method, act, or practice is unlawful and the Court may enjoin in accordance with the principles of equity a person who is engaging or is about to engage in a method, act, or practice which is unlawful under section three.

    WHEREFORE, Plaintiffs respectfully prays that this Court enter judgment in favor of Plaintiff and against the Defendants declaring its actions to be unlawful under this act and declaring this mortgage void and allow rescission of the mortgage and notes, plus interest, costs and reasonable attorney fees as allowed by MCL § 445.911(2).

## COUNT V: VIOLATIONS OF THE MORTGAGE BROKERS, LENDERS, AND SERVICERS LICENSING ACT

72. Plaintiffs incorporates, by reference the allegations set forth in paragraphs 1-71 and further states:

73. That MCL 445.1652(1) requires a person acting as a mortgage broker, mortgage lender, or mortgage servicer be licensed under this act.

74. That Defendant, **IT MORTGAGE,** violated MCL 445.1652 by failing to be a registered broker in the State of Michigan. Defendant, **IT MORTGAGE,** was an unlicensed broker at the time this agreement was entered into.

75. That Defendant, **IT MORTGAGE,** violated its duties under this act. MCL 445.1634

76. That Defendant, **IT MORTGAGE,** engaged in fraud, deceit, and material misrepresentation in connection with this transaction, in violation of MCL 445.1672b(a).

77. That Defendant, **IT MORTGAGE,** intentionally or due to gross negligence, repeatedly failed to provide borrowers with material disclosures, in violation of MCL 445.1672b(b).

78. That Plaintiffs are entitled to a declaratory judgment that Defendants methods, acts, or practices are in violation of this act and an injunction against Defendants who are engaging in these acts.

**WHEREFORE,** PLAINTIFF REQUESTS that this Court enter a judgment in its favor and against Defendant, **IT MORTGAGE,** declaring its acts and practices are in violation of The Mortgage Brokers, Lenders, and Servicers Licensing act and declare this mortgage to be void and allow rescission of the mortgage and notes, plus interest, costs, and attorney fees and for such further and additional relief as may be fair and just under the circumstances.

## COUNT VI: TRUTH IN LENDING ACT VIOLATIONS

79. Plaintiff incorporates, by reference the allegations set forth in paragraphs 1-78 and further states:

80. That Defendants, failed to include and disclose certain charges in the finance charge shown on the TIL statement, which charges were imposed on Plaintiffs incident to the extension of credit to Plaintiffs.

81. That disclosure of these charges is required pursuant to 15 USC Sec. 1605 and Regulation Z Sec. 1601.

82. Further, Defendants failed to provide a copy of the final HUD-1 statement signed by Plaintiffs.

83. The "closing" HUD -1 statement provided to Plaintiffs contained different interest rates and different mortgage rate computations than the final HUD -1 statement signed by Plaintiffs.

84. Further, Defendants failed to deliver two copies of notice of right to rescind to each borrower.

85. That The Truth in Lending Act Sec. 125(a), 15 USCA Sec 1635(a) requires the lender to deliver two copies of notice of right to rescind to each borrower.

86. That failure to provide two copies of notice of right to rescind to each borrower is grounds for rescission of the note and discharge of the mortgage under the Truth in Lending Act, *Elsner v. Albrecht,* 185 Mich. App 72; 460 NW2d 232 (1990).

87. That failure of the lender to deliver two copies of notice of right to rescind extends the time during which borrowers may rescind. *Truth in Lending Act Sec. 125(a), 15 USCA Sec 1635(a) and Regulation Z Sect 22.23(a) (3).*

88. That by calculation the annual percentage rate based upon improperly calculated and disclosed amount is a material violation of TILA. Defendants violated 15 U.S.C 1602(u), Regulation Z 226.23 n 48.

89. In transactions where the creditor sets an initial interest rate to be adjusted later (whether fixed or to be determined by an index or formula), in determining repayment ability the creditor must consider the consumer's ability to make loan payments based on the non-discounted or fully-indexed rate at the time of consummation. 15 USCA Sec 1635(a) (3).

90. That Plaintiffs' loan did have an interest rate to be adjusted later and Defendants failed to consider the consumer's ability to make payments based on non-discounted rates.

91. Under TILA, loan originators and assignees maybe held liable for failure to make required disclosures. Remedies for TILA violations include rescission, damages and equitable relief. 15 U.S.C. Sec. 1635

92. Civil damages are appropriate when disclosure requirements have been violated and liability is imposed despite the creditor's alleged good faith and reasonableness. 15 U.S.C 1640 (a).

93. Consumers are awarded attorneys fees in successful action or when they are "determined to have a right of rescission under 15 U.S.C Sec 1635.

94. A consumer is entitled to actual damages when a creditor fails to comply with the requirements imposed by TILA in the amount equal to the sum of any actual damage sustained by the consumer as a result of the creditor's violation. 15 U.S.C. 1640 (a)(1).

95. That Plaintiffs did not discover, and could not discover, Defendants' violations of the Truth in Lending Act because the documents provided to Plaintiffs were extremely misleading. Defendants took affirmative steps to conceal Plaintiffs' cause of action by failing to answer Plaintiffs' Qualified Written Requests and not providing Plaintiffs with a copy of the final HUD-1 statement.

96. Thus, Plaintiffs' claims under the Truth in Lending Act are subject to equitable tolling.

97. Plaintiffs are further entitled to equitable tolling because Plaintiffs took action prior to the 3 year statute of limitation by retaining the Law Office of Marshall Rosenbach to negotiate with Defendant, ASC in March of 2008(**Exhibit 4**). Plaintiffs also had a mortgage audit conducted in 2009, this is when they first realized the problems with their mortgage as outlined in the audit. (**Exhibit 5**).

**WHEREFORE**, PLAINTIFFS REQUESTS that this Court enter a judgment in its favor and against Defendants, declaring this mortgage to be void and allow rescission of the notes and mortgage, plus interest, costs, and attorney fees and for such further and additional relief as may be fair and just under the circumstances.

## COUNT VII: VIOLATIONS OF HOME OWNERSHIP EQUITY PROTECTION ACT

98. Plaintiffs incorporates, by reference the allegations set forth in paragraphs 1-97 and further states:

99. That Defendants extended credit to Plaintiff recklessly and without regards for Plaintiffs' ability to repay.

100.    Specifically, in the course and conduct of offering and making HOEPA mortgage loans, Defendants have violated, and continue to violate, the requirements of HOEPA and Regulation Z by engaging in a pattern or practice of extending such credit to a consumer based on the consumers collateral rather than considering the consumer's current and expected income, current obligations, and employment status to determine whether the consumer is able to make the scheduled payments to repay the obligation, in violation of Sec 129(h) of TILA, 15 U.S.C. 1639 (h), and Section 226.32(e)(1) of Regulation Z C.F.R. 226.32(e)(1)

101.    That Defendants have violated the Home Ownership Equity Protection Act

DAILEY LAW FIRM, P.C.

(HOEPA) by engaging in a pattern and practice of extending credit to individuals without regard to their ability to repay the loan. 15 USC Sec. 1639(h).

102.     Further, in the Mortgage transaction at issue here, Plaintiffs were required to pay excessive fees, expenses, and costs which exceeded more than eight percent of the amount financed.

103.     Defendants further violated HOEPA by failing to provide Plaintiffs with accurate TIL disclosures, and by understating the amount to be financed.

104.     Defendants also inserted "prepayment penalties" in violation of HOEPA. 15 U.S.C 1639 (c)-(h).

105.     Failure by defendants to deliver required notice or inclusion of prohibited terms triggers an extended (three year) right of rescission. 15 U.S.C 1639 (j)

106.     HOEPA violations give rise to "enhanced" Monetary damages under 15 U.S.C. 1640 (a) (4), namely all payments made by the borrower.

**WHEREFORE,** PLAINTIFFS REQUESTS that this Court enter a judgment in its favor and against Defendants, declaring this mortgage to be void and allow rescission of the mortgage and notes , plus interest, costs, and attorney fees and for such further and additional relief as may be fair and just under the circumstances.

## COUNT VIII: VIOLATIONS OF REAL ESTATE SETTLEMENT PROCEDURES ACT

107.     Plaintiffs incorporates, by reference the allegations set forth in paragraphs 1-106 and further states:

108.     That Plaintiff sent Defendant, **ASC,** four formal RESPA request, a Qualified Written Request in compliance with 12 U.S.C. Sec. 2605(c) and Regulation X at 24 C.F.R. 3500 and the Gramm Leach Liability Act. **(Exhibit 3)**

DAILEY LAW FIRM, P.C.

109. That to this date, Defendant, ASC, failed to respond to any of these qualified written requests.

110. That any Notice of Default from Defendants is defective due to the failure to respond to Plaintiff's RESPA request.

111. The servicer must initially provide a written response acknowledging receipt of the request within twenty days.

112. Within sixty days of receipt of a Qualified Written Request from the borrower, the servicer must, provide the borrower with the information requested. *12 U.S.C. 2605(e)(2)(C)(i); Reg. X, 24 C.F.R. 3500.21(e)(3)(ii)(B).*

113. Further, Defendant, **ASC's** failure to respond to Plaintiff's Qualified Written Request is a violation of the Michigan Fair Debt Collection laws and Federal Fair Debt Collection Practices Act, 15 USC Sec. 1692(g). When proof is requested, the law requires that all efforts to collect the debt must be suspended until the requested information is mailed.

114. Congress intended RESPA to be a remedial consumer-protection statute. As such, RESPA is to be construed liberally in order to best "serve Congress intent"

115. Defendants never provided Plaintiffs with a copy of the final HUD-1 statement, in violation of 15 U.S.C. 1629 (c)-(h).

116. RESPA prescribed remedies include "rescission, the sum of all total fees paid at closing, costs and attorney fees". 15 U.S.C. 1639 (j); 15 U.S.C. 1640(a)(4)

117. Defendants failed to account and or remit to the plaintiffs the "missing" sum of $7000.00, which was negotiated between the builder and plaintiffs to be used as credit for closing costs.

DAILEY LAW FIRM, P.C.

118. Thus plaintiffs asserts that any payment to a broker or originator that does not represent reasonable compensation for services actually provided is prohibited and a violation of RESPA Sec 8; 12 U.S.C 2607(b); 24 C.F.R. 3500.14(c)

119. The RESPA prescribed remedies for this violation are "treble damages, the total fees at closing, costs and attorneys fees". 12 U.S.C 2607 (d).

120. Defendants failed to account and or remit to plaintiffs at closing the amount of $2500.00, which was negotiated between builder and plaintiffs as credit for appliances upon closing.

121. Plaintiffs asserts that any payment to a broker or originator that does not represent "reasonable" compensation for services actually provided is prohibited and a violation of RESPA Sec 8, 12 U.S.C 2607 (b); C.F.R 3500.14(c).

122. The RESPA prescribed remedy for this violation is "an amount equal to three times the amount of any charge paid for such settlement service, costs and attorneys fees". U.S.C. 2607 (d).

123. Plaintiffs assert that Defendants or its agents received 1% of the total loan amount as "YSP" yields spread premium from lender.

124. Defendants were already paid by plaintiffs, with the amount of $12,000 for fees and closing costs in form of a personal check during closing, which includes a broker's fee of $5,600.00.

125. Thus plaintiffs asserts that defendants violated 12 U.S.C. 2607 (a); C.F.R. 3500.14(b).

126. Plaintiffs assert that by giving Defendant, **IT MORTGAGE** a 1% of the total loan amount as "YSP" the lender added another 1% to the interest it charged for its own "YSP."

127. Plaintiffs believes this practice is a violation of 12 U.S.C 2607 (a); C.F.R. 3500.14(b).

128. Plaintiffs request the remedies prescribed under RESPA, including "the amount of three times the amount of any charge paid". 12 U.S.C. 2607(d)

WHEREFORE, PLAINTIFFS REQUESTS that this Court enter a judgment in its favor and against Defendants, declaring this mortgage to be void and allow rescission of the mortgage and notes , plus interest, costs, and attorney fees and for such further and additional relief as may be fair and just under the circumstances.

## COUNT IX VIOLATION OF FAIR DEBT COLLECTION PROCEDURES ACT.

129. .Plaintiffs incorporates, by reference the allegations set forth in paragraphs 1-128 and further states:

130. That Plaintiff sent four QWR's (Qualified Written Requests) requesting for information and validation to Defendant, **ASC.**

131. That Defendant, **ASC** failed to answer any of these requests.

132. Failure by the Defendants to respond to Plaintiffs qualified written response is a violation of FDCPA 809(a); 15 U.S.C 1692(g)

133. Failure by the defendants to cease collection of debt is a violation of FDCPA 809(b): 15 U.S.C. 1692(f).

WHEREFORE, PLAINTIFFS REQUESTS that this Court enter a judgment in its favor and against Defendants, declaring this mortgage to be void and allow rescission of the mortgage and notes , plus interest, costs, and attorney fees and for such further and additional relief as may be fair and just under the circumstances. And to certify this lawsuit a "class action", which the prescribed remedies of law held as reasonable. MCL 445.911

## COUNT X BREACH OF FIDUCIARY DUTY

134.    Plaintiffs incorporates, by reference the allegations set forth in paragraphs 1-133 and further states:

135.    Plaintiffs contend that Defendants breached its fiduciary duty by:

    a.  Placing Plaintiffs into a mortgage that was contrary to his stated intention.

    b.  By placing Plaintiffs into a mortgage in which they knew there was a high likelihood that Plaintiffs would default and be subject to foreclosure.

    c.  By Placing Plaintiffs into a mortgage that was not in the best interest of Plaintiffs.

    d.  By failing to make reasonable inquiry into Plaintiffs' actual ability to repay this debt.

    e.  By misrepresenting the amount charged by or paid to a third party for product or service, in violation of MCL 445.1634(1) (b).

    f.  By failing to provide Plaintiffs with the all required disclosure notices.

    g.  By making false and misleading statements in connection with this agreement, in violation of MCL 445.1634(3).

    h.  By engaging in unfair, unconscionable, or deceptive methods/practices in the conduct of trade, in violation of MCL 445.903.

    i.  Wyatt v Union Mtge. Co., 24 cal.3d 773,782,157 Cal Rptr. 392, 397.598 P. 2d 45(1979) accord: Pierce v Hom, 178 Cal. Rptr. 553,558 (Ct. App. 1981), mortgage broker has duty to use his expertise in real estate financing for the benefit of the borrower".

136.    Plaintiffs allege that as a direct and proximate result of Defendants breach of duty of care toward Plaintiffs, Plaintiffs have been damaged and injured both at equity and law, in that Plaintiffs' property is subject to non-judicial foreclosure sale and Plaintiffs

DAILEY LAW FIRM, P.C.

only remedy to address Defendants' breaching conduct is to obtain a Stay of the foreclosure proceedings to address Defendants' wrongful conduct.

**WHEREFORE,** PLAINTIFFS REQUESTS that this Court enter a judgment in its favor and against Defendants, declaring this mortgage to be void and allow rescission of the mortgage and notes , plus interest, costs, and attorney fees and for such further and additional relief as may be fair and just under the circumstances

## COUNT XI VIOLATIONS OF EQUAL CREDIT OPPURTUNITY ACT

137.      Plaintiffs incorporates, by reference the allegations set forth in paragraphs 1-136 and further states:

138.      Under ECOA, a borrower is entitled to the same terms of credit issuance that another borrower of equal characteristics is entitled to. 15 U.S.C 1691 et. Seq.

139.      Plaintiffs assert that Defendnats placed the plaintiffs into a loan that had a significantly higher interest rate than what was qualified for.

140.      That in doing so Defendant, **IT MORTGAGE** received the amount of $5600 and "lender" increased the interest of the loan by another 1%. An increase in the interest rate and monthly payment, in order to receive a "Yield Spread Premium" is a violation of ECOA.

**WHEREFORE,** PLAINTIFFS REQUESTS that this Court enter a judgment in its favor and against Defendants, declaring this mortgage to be void and allow rescission of the mortgage and notes , plus interest, costs, and attorney fees and for such further and additional relief as may be fair and just under the circumstances.

## COUNT XI: FOR DECLARATORY AND INJUNCTIVE RELIEF AGAINST ALL DEFENDANTS

141.      Plaintiffs incorporates, by reference the allegations set forth in paragraphs 1-140 and further states:

142. Plaintiffs allege that actual controversy exists as to the following issues:

a. Plaintiffs contend that the loan agreements of March 25, 2005, are void based upon Defendants' violation of disclosure requirements, violations of State and Federal Statutes and violations of other statutory provisions described herein.

143. Plaintiffs contend that any foreclosure sale of the SUBJECT PROPERTY is improper in that Defendants are not the holders of the original note to the SUBJECT PROPERTY.

144. Plaintiffs allege the Defendants failed to provide all necessary disclosures and violated numerous State and Federal Statutes and as such the entire loan transaction is subject to rescission.

145. Plaintiffs desire a judicial determination of their rights and duties, a declaration as to the validity of the loan transactions at issue and to Defendants' right to proceed with the foreclosure of the SUBJECT PROPERTY.

146. Plaintiffs allege that a judicial declaration is necessary and appropriate at this time under the circumstances in order that Plaintiffs may ascertain their rights under the Agreements and as to Defendants' right to proceed with the foreclosure of the SUBJECT PROPERTY.

147. Plaintiffs' allege that Defendants' action have undermined their right to the SUBJECT PROPERTY and have interfered, and continue to interfere with Plaintiffs' right of possession of the SUBJECT PROPERTY.

148. By the action above and set forth herein, Plaintiffs have a strong likelihood of prevailing on the merits of the case.

149. Plaintiffs request that this Honorable Court grant a Preliminary Injunction and Temporary Restraining Order as to the foreclosure or sale of the SUBJECT

PROPERTY and a Permanent Injunction precluding Defendants from engaging in the wrongful conduct identified herein in the future.

## WHEREFORE PLAINTIFF PRAYS FOR JUDGMENT AGAINST DEFENDANTS AS FOLLOWS:

1. That the foreclosure or attempted foreclosure of Plaintiffs' home be deemed illegal and void and the same be permanently enjoined;

2. That the above mentioned loan transactions be deemed void as a result of Defendants' various fiduciary breaches, violations of State law and violations of Federal law.

3. That the actions of all Defendants be determined to be unfair and deceptive business practices in violation of Michigan Law and Statutes, and that this Court award all such relief to Plaintiffs as Plaintiffs may be entitled, including treble damages, actual damages, and an award of costs and attorney's fees;

4. That the actions of Defendants be determined to be in violation of Federal Law. Including but not limited to violations of Real Estate Settlement Procedures Act (RESPA), Truth in Lending Act (TILA), Home Ownership Equity Act (HOEPA), Fair Debt Collection Procedures Act (FDCPA), and violations of Equal Credit Opportunity Act (ECOA), which violations cause the rescission of the Loan Agreements/Contracts and disgorgement of any and all payments made by Plaintiffs to Defendants;

5. A permanent injunction precluding Defendants from engaging in the wrongful conduct identified herein;

6. For award of all damages Plaintiffs are entitled to under the law;

7. For award of attorney fees, and costs incurred and;

8. For any other relief this Honorable Court may deem just and proper.

DAILEY LAW FIRM, P.C.

I declare that the foregoing statements are true to the best of my information, knowledge and belief.

Dated: December _____ 2_____, 2009

Martin Famatiga, Plaintiff

Heather-Kerchen Famatiga, Plaintiff

Respectfully submitted,

**DAILEY LAW FIRM, PC**

By: Brian T. Dailey (P39945)
Justin G. Grove (P71253)
Attorney for the Plaintiff
28000 Woodward Ave., Ste 201
Royal Oak, MI 48067
248.744.5005

DAILEY LAW FIRM, P.C.

STATE OF MICHIGAN

TRUE COPY
MARGARET M. DUNLEAVY
LIVINGSTON COUNTY CLERK

IN THE CIRCUIT COURT FOR THE COUNTY OF LIVINGSTON

MARTIN FAMATIGAN and,
HEATHER KERCHEN-FAMATIGA

    Plaintiff,

v.

MORTGAGE ELECTORNIC REGISTRATION
SYSTEMS, INC. (MERS),
U.S. BANK NATIONAL ASSOCIATION,
AMERICA'S SERVICING COMPANY., a
California Corporation authorized to do business in
Michigan, BNC MORTGAGE, a
California Corporation authorized to do business
in Michigan, IT MORTGAGE  a Michigan Corporation
doing business in Michigan.

    Defendants

Case No. 09- 24909 -CK
Hon.

JUDGE HATTY
P-30990

**DAILEY LAW FIRM, PC**
**BY: BRIAN DAILEY (P39945)**
      **JUSTIN G. GROVE (P71253)**
Attorneys for Plaintiff
28000 Woodward Ave., Ste 201
Royal Oak, MI 48067
248.744.5005

There is no other civil action between these parties arising out of the same
transaction or occurrence alleged in this Complaint pending in this court,
nor has any such action been previously filed and dismissed or transferred
after having been assigned to a judge.

_____
Brian Dailey (P39945)

## COMPLAINT

**NOW COMES** the Plaintiffs, **Martin Famatiga and Heather Kerchen-Famatiga**, by

and through their attorneys, DAILEY LAW FIRM, PC and for their Complaint against the above

named Defendant, states unto this Honorable Court as follows:

## PARTIES, JURISDICTION, AND VENUE

1. Plaintiff, **MARTIN FAMATIGA**, is a resident of the township of Marion, County of Livingston, in the State of Michigan

2. Plaintiff, **HEATHER KERCHEN-FAMATIGA**, is a resident of the township of Marion, County of Livingston, in the State of Michigan

3. Defendant, **MORTGAGE ELECTRONIC SYSTEM, INC, (MERS)** is a Corporation that continuously conducts business throughout the State of Michigan.

4. Defendant, **U.S. BANK NATIONAL ASSOCATION**, is a Corporation that continuously conducts business throughout the State of Michigan.

5. Defendant, **BNC MORTGAGE, (BNC)** is a California Corporation with its principle place of business in the city of Irvine, County of Orange, State of California. Defendant continuously conducts business throughout the State of Michigan and is engaged in the business of predatory lending and promotion of fraudulent mortgages.

6. Defendant **AMERICA'S SERVICING COMPANY**, (referred to as **ASC**), is a Delaware Corporation that continuously conducts business throughout the State of Michigan.

7. Defendant, **IT MORTGAGE COMPANY,** is a Michigan Corporation with its principle place of business in the City of Livonia, County of Wayne, State of Michigan. Defendant continuously conducts business throughout the State of Michigan.

8. Venue is proper in this Court as this is an action based in contract law, the SUBJECT PROPERTY is located in Livingston County and Defendants continuously conduct business in the County of Livingston, State of Michigan and the amount in controversy is greater than $25,000.

## GENERAL ALLEGATIONS

9. Plaintiffs, **MARTIN FAMATIGA** and **HEATHER KERCHEN-FAMATIGA**

DAILEY LAW FIRM, P.C.

incorporate by reference paragraphs 1 through 6 and further states.

10. That on March 25, 2005 Plaintiffs entered into a Mortgage agreement with the above named Defendants for the purchase of property located at 1282 Morning Mist Drive, Marion Township, MI 48843.

11. That the Mortgage agreement entered into by Plaintiffs was deficient and failed to provide all necessary disclosures to Plaintiff.

12. That the loan was improper and resulted from Defendants' violations of state and federal law.

13. That the loan was fraudulent upon inception.

14. That Plaintiffs were placed into a loan product that was against their best interests and which the Defendants knew Plaintiffs would be unable to afford when the interest rate adjusted.

15. That Defendants put Plaintiffs into this loan product without regard for their ability to pay back the loan.

16. That the interest rate on Plaintiffs' mortgage adjusted and Plaintiffs were forced to pay a considerably larger monthly mortgage payment.

17. That thereafter Plaintiffs were unable to make this much larger monthly mortgage payment.

18. That Plaintiffs attempted to reach a compromise with  Defendant, **ASC** who allegedly was the current holder of the note.

19. That Plaintiffs complied with the terms of the loan modification yet Defendant, **ASC** refused to take the last payment from Plaintiff's. (**Exhibit 1**)

20. That thereafter Defendant, **ASC** attempted to foreclose on Plaintiffs' property.

21. However, to this date, Plaintiff has seen no legal evidence that would support assertions or conclusion that any Defendants, have or acquired legal standing as a holder in due

DAILEY LAW FIRM, P.C.

course for adequate value.

22. Plaintiffs allege upon information and belief that none of the above named Defendants are the holder of the notes identified.

23. Thus Defendants do not have legal standing to attempt to foreclose on Plaintiff's property.

24. That shortly before the scheduled foreclosure sale, Plaintiffs filed for Chapter 7 Bankruptcy thus preventing the sale of the home.

25. The Mortgage Agreement entered into by Plaintiffs is invalid and Plaintiffs did not receive all necessary disclosures from Defendants.

### COUNT I: QUITE TITLE AGAINST ALL DEFENDNATS

26. Plaintiffs incorporates, by reference the allegations set forth in paragraphs 1-25 and further states:

27. Plaintiffs are the owners of the SUBJECT PROPERTY per the recorded mortgage executed by Plaintiffs. (**Exhibit 2**)

28. The basis of Plaintiffs' interest in title is the recorded mortgage from Defendants, granting the SUBJECT PROPERTY to Plaintiffs, and recorded in the Official Records of the County of Livingston.

29. Plaintiffs are seeking to quiet title against the claims of Defendants as follows:

Defendants are seeking to hold themselves out as the fee simple owners of the SUBJECT PROPERTY, when in fact Plaintiffs have an interest in said property, Defendants have no right, title, interest, or estate in the SUBJECT PROPERTY and Plaintiffs' interest is adverse to defendants' claim of ownership.

30. Plaintiffs' seek to quiet title as of October 1, 2009.

WHEREFORE, Plaintiffs seek a judicial declaration that the title to the SUBJECT PROPERTY is vested in Plaintiffs alone and that Defendants be declared to have no estate, right, title, or

interest in the subject property and that Defendants be forever enjoined from asserting any estate, right, title, or interest in the subject property, adverse to Plaintiffs herein.

### COUNT I: WRONGFUL FORECLOSURE

31. Plaintiffs incorporates, by reference the allegations set forth in paragraphs 1-30 and further states:

32. The original loan and note at issue were initially made in favor of the lender, **BNC MORTGAGE.**

33. That upon information and belief at some point the servicing of the loan was transferred to Defendant, **IT MORTGAGE** then transferred again to Defendant, **ASC**. Thereafter, it is believed that Defendant, **ASC** took over the **IT MORTGAGE** note and the accompanying mortgage security agreement. Thereafter, the note and mortgage were transferred to Defendant, **U.S. BANK** as trustee and Defendant, **MERS** is foreclosing the loan.

34. Plaintiffs made lawful demands to Defendant, **ASC** to attempt to validate the alleged debt and to determine the status of the note and mortgage, including the mailing of four Qualified Written Requests. **(Exhibit 3).** No answers were ever provided by Defendant, **ASC.**

35. Defendants to this date have been unable to produce proof of its ownership of the underlying note nor the legal validity of a note or valid security interest in Plaintiffs' property. MCL 125.1449a (1) (c).

36. Defendants have continued to act against Plaintiffs' property rights, failed to credit their tender of payment, failed to respond to RESPA requests and has attempted to continue with a wrongful foreclosure. MCL 440.3305(a) ); MCL 600.3204 (1)(d)

37. Defendants have proceeded with the foreclosure of Plaintiffs' property without satisfying the requirements under Michigan and Federal laws.

DAILEY LAW FIRM, P.C.

38. Specifically, Defendants have failed to provide proper notice of default, failed to produce any proof that it has a valid promissory note and valid deed. *See* UCC Sec 3-309(a)(1)(b).

39. Michigan Commercial Code Sec. 3201 requires a "negotiation" for the transfer of a note, defining that term as a "transfer of possession...of an instrument by a person other than the issuer to a person who thereby becomes its holder" See UCC 3-204, 3-201.

40. In addition, Section 3201 (b) requires that "if an instrument [note] is payable to an identified person, negotiation requires transfer of the possession of the [note] and endorsement by the holder. Sec. 3203(a) states that "an instrument is transferred when it is delivered by a person other than its issuer for the purpose of giving to the person receiving delivery the right to enforcement to the note. See UCC 1-201 (20); UCC 3-203; Vitols v Citizens Banking Co. 10 F. 3d 1227, 1223 (6th Cir.:1993).

41. Absent proof that the purported holder of the note has complied with the above statutory procedure, there can be no standing to enforce said note. ; UCC 3-104(1); UCC 3-103

42. That Defendants, acting as a service agent, do not have standing to enforce the note. For only a person who is the holder of the note has standing to enforce the note.

43. **It is the holder of the note, who bears the burden of establishing its status as a holder in due course, when the debtor initially raise any issue.** UCC 3-308(b).

44. When the complaining party cannot prove the existence of the note, then there is no note. Pacific Concrete F.C.U v Kauanoe, 62 Haw.334, 614 P 2d 936 (1980).

45. To be a holder in due course, a lender must have taken the instrument in "good faith". *U.C.C. 3-302(a)(2); Kennard v. reliance, Inc., 264 A.2d 832 (Md. 1970).*

46. The holder must make inquiry sufficient to satisfy the suspicions raised by such circumstances. *Agrilance, L.L.C. v. Farmpro Servs., Inc., 328 F. Supp. 2d 958 (S.D. Iowa 2003); Nat'l Check Cashing, Inc. v. Desrochers, 60 U.C.C rep. Serv. 2d 1198 (N.J. Super. Ct. App. Div. 2006).*

47. For a transferee to be a holder in due course, it must take the instrument without notice of that someone else has a claim to the instrument or that any party has defense or claim in recoupment. *See U.C.C 3-305(a)(3); Official Comment 3 to U.C.C. 3-305.*

48. Thus, defects apparent on the face of the documents, such as unfair contract terms, Truth In Lending violations, or usurious interest rates, "should defeat holder-in-due-course status" as is the case here.

**WHEREFORE, PLAINTIFFS REQUESTS** that this Court enter a judgment in its favor and against Defendants, declaring that none of the above named Defendants are the holder in due course of the original signed deed of trust and any related note, plus interest, costs, and attorney fees and for such further and additional relief as may be fair and just under the circumstances.

### COUNT II: FRAUD/MISREPRESENTATION

49. Plaintiffs incorporates, by reference the allegations set forth in paragraphs 1-48 and further states:

50. The Defendant, **BNC MORTGAGE,** by and through its representatives, agents and/or employees, fraudulently induced Plaintiffs to enter into a mortgage transaction which was contrary to Plaintiffs' stated intentions, contrary to their interests, and contrary to the preservation of their home. MCL445.903(1)(a)(e)(m)(n)(o)(s)(v)(x)(y)(z)(cc)

51. The material representations were false when they were made. MCL 445.903

52. When the Defendant, **BNC MORTGAGE,** by and through its representatives, agents, and/or employees, made said material misrepresentations, they knew that they was false or made it recklessly without any knowledge of its truth as a positive assertion. MCL 445.903

DAILEY LAW FIRM, P.C.

53. The Defendant, **BNC MORTGAGE**, by and through its representatives, agents, and/or employees, made said material misrepresentations with the intention that the Plaintiffs should act on it.

54. Plaintiffs did in fact act in reliance on said material misrepresentations when it made payments to the Defendant under the mortgage agreement.

55. Plaintiffs allege that the fraudulent conduct of Defendant, **BNC MORTGAGE**, has caused Plaintiffs to incur costs and expenses in addition to the prospect of losing the SUBJECT PROPERTY to a sheriff's sale.

56. Plaintiffs allege that based upon the fraud perpetrated upon them by Defendant, **BNC MORTGAGE**, the mortgage and loan agreements must be rescinded.

57. The Plaintiff suffered damages by acting in reliance on the material misrepresentation.

**WHEREFORE,** PLAINTIFFS REQUESTS that this Court enter a judgment in its favor and against Defendants, declaring this mortgage to be void and allow rescission of the mortgage and notes, plus interest, costs, and attorney fees and for such further and additional relief as may be fair and just under the circumstances and allowed under MCL 445.911

## COUNT III: PREDATORY LENDING and UDAP

58. Plaintiffs incorporates, by reference the allegations set forth in paragraphs 1-57 and further states:

59. That Defendants took advantage of Plaintiff's inferior bargaining power in order to lock Plaintiffs into severely unfavorable Notes and Mortgage.

60. Defendants did not reveal all material terms of the Notes and Mortgage as they understood them. MCL 440.903

61. That at the time the consumer engaged  loan broker, the broker failed to disclose the approximate amount of his (high) broker fee or that he already had a prearranged lender, thus  violating the state UDAP statute. *In re Dukes, 24 B.R., 404 (Bankr. E.D. Mich.*

DAILEY LAW FIRM, P.C.

*1982).*

62. Specifically, Defendants knew or should have known that Plaintiffs could not; under any circumstances afford to pay the monthly mortgage loan payment on the property.

63. Defendants induced Plaintiffs into obtaining the loan on the property and granting it a security interest by promising Plaintiffs that their payments would be lower or they would be able to otherwise refinance in the future, both of these statements were untrue when they were made. MCL 445.903

64. Defendant further induced Plaintiffs into purchasing the property by creating a mortgage market environment with high and constantly increasing false property values.

65. That as a direct result of these predatory lending practices, Plaintiffs have suffered damages.

**WHEREFORE, PLAINTIFFS REQUESTS** that this Court enter a judgment in its favor and against Defendants, declaring this mortgage to be void and allow rescission of the mortgage and notes, plus interest, costs, and attorney fees and for such further and additional relief as may be fair and just under the circumstances

## COUNT IV: VIOLATIONS OF MICHIGAN CONSUMERS PROTECTION ACT

66. Plaintiffs incorporates, by reference the allegations set forth in paragraphs 1-65 and further states:

67. Plaintiff is a "person" as defined by the Michigan Consumer Protection Act, MCL § 445.902(b).

68. The transactions complained of constitute "trade or commerce" as defined by the Michigan Consumer Protection Act, MCL § 445.902(c).

69. In the course of the transaction that is the subject of this lawsuit, Defendants violated the Michigan Consumer Protection Act, MCL § 445.901 et. seq, by engaging in unfair, unconscionable or deceptive methods, acts or practices in the conduct of trade or

DAILEY LAW FIRM, P.C.

commerce, including but not limited to:

    a.  Placing Plaintiffs into a mortgage that was contrary to his stated intention.

    b.  By placing Plaintiffs into a mortgage in which they knew there was a high likelihood that Plaintiffs would default and be subject to foreclosure.

    c.  By Placing Plaintiffs into a mortgage that was clearly not in the best interest of Plaintiffs.

    d.  By failing to make reasonable inquiry into Plaintiffs' actual ability to repay this debt.

    e.  By misrepresenting the amount charged by or paid to a third party for product or service, in violation of MCL 445.1634(1)(b).

    f.  By making false and misleading statements in connection with this agreement, in violation of MCL 445.1634(3).

    g.  By engaging in unfair, unconscionable, or deceptive methods/practices in the conduct of trade, in violation of MCL 445.903.

70. As a direct and proximate result of Defendants' violations, the mortgage entered into by Plaintiffs is void. MCL 440.2721; MCL 440.3305 MCL 445.108, MCL 445.1611

71. Further, under MCL 445.911(1)(a)(b) Plaintiffs are entitled to obtain a declaratory judgment that a method, act, or practice is unlawful and the Court may enjoin in accordance with the principles of equity a person who is engaging or is about to engage in a method, act, or practice which is unlawful under section three.

    WHEREFORE, Plaintiffs respectfully prays that this Court enter judgment in favor of Plaintiff and against the Defendants declaring its actions to be unlawful under this act and declaring this mortgage void and allow rescission of the mortgage and notes, plus interest, costs and reasonable attorney fees as allowed by MCL § 445.911(2).

DAILEY LAW FIRM, P.C.

## COUNT V: VIOLATIONS OF THE MORTGAGE BROKERS, LENDERS, AND SERVICERS LICENSING ACT

72. Plaintiffs incorporates, by reference the allegations set forth in paragraphs 1-71 and further states:

73. That MCL 445.1652(1) requires a person acting as a mortgage broker, mortgage lender, or mortgage servicer be licensed under this act.

74. That Defendant, **IT MORTGAGE**, violated MCL 445.1652 by failing to be a registered broker in the State of Michigan. Defendant, **IT MORTGAGE**, was an unlicensed broker at the time this agreement was entered into.

75. That Defendant, **IT MORTGAGE**, violated its duties under this act. MCL 445.1634

76. That Defendant, **IT MORTGAGE**, engaged in fraud, deceit, and material misrepresentation in connection with this transaction, in violation of MCL 445.1672b(a).

77. That Defendant, **IT MORTGAGE**, intentionally or due to gross negligence, repeatedly failed to provide borrowers with material disclosures, in violation of MCL 445.1672b(b).

78. That Plaintiffs are entitled to a declaratory judgment that Defendants methods, acts, or practices are in violation of this act and an injunction against Defendants who are engaging in these acts.

**WHEREFORE,** PLAINTIFF REQUESTS that this Court enter a judgment in its favor and against Defendant, **IT MORTGAGE**, declaring its acts and practices are in violation of The Mortgage Brokers, Lenders, and Servicers Licensing act and declare this mortgage to be void and allow rescission of the mortgage and notes, plus interest, costs, and attorney fees and for such further and additional relief as may be fair and just under the circumstances.

DAILEY LAW FIRM, P.C.

## COUNT VI: TRUTH IN LENDING ACT VIOLATIONS

79. Plaintiff incorporates, by reference the allegations set forth in paragraphs 1-78 and further states:

80. That Defendants, failed to include and disclose certain charges in the finance charge shown on the TIL statement, which charges were imposed on Plaintiffs incident to the extension of credit to Plaintiffs.

81. That disclosure of these charges is required pursuant to 15 USC Sec. 1605 and Regulation Z Sec. 1601.

82. Further, Defendants failed to provide a copy of the final HUD-1 statement signed by Plaintiffs.

83. The "closing" HUD -1 statement provided to Plaintiffs contained different interest rates and different mortgage rate computations than the final HUD -1 statement signed by Plaintiffs.

84. Further, Defendants failed to deliver two copies of notice of right to rescind to each borrower.

85. That The Truth in Lending Act Sec. 125(a), 15 USCA Sec 1635(a) requires the lender to deliver two copies of notice of right to rescind to each borrower.

86. That failure to provide two copies of notice of right to rescind to each borrower is grounds for rescission of the note and discharge of the mortgage under the Truth in Lending Act, *Elsner v. Albrecht*, 185 Mich. App 72; 460 NW2d 232 (1990).

87. That failure of the lender to deliver two copies of notice of right to rescind extends the time during which borrowers may rescind. *Truth in Lending Act Sec. 125(a), 15 USCA Sec 1635(a) and Regulation Z Sect 22.23(a) (3).*

88. That by calculation the annual percentage rate based upon improperly calculated and disclosed amount is a material violation of TILA. Defendants violated 15 U.S.C 1602(u), Regulation Z 226.23 n 48.

89. In transactions where the creditor sets an initial interest rate to be adjusted later (whether fixed or to be determined by an index or formula), in determining repayment ability the creditor must consider the consumer's ability to make loan payments based on the non-discounted or fully-indexed rate at the time of consummation. 15 USCA Sec 1635(a) (3).

90. That Plaintiffs' loan did have an interest rate to be adjusted later and Defendants failed to consider the consumer's ability to make payments based on non-discounted rates.

91. Under TILA, loan originators and assignees maybe held liable for failure to make required disclosures. Remedies for TILA violations include rescission, damages and equitable relief. 15 U.S.C. Sec. 1635

92. Civil damages are appropriate when disclosure requirements have been violated and liability is imposed despite the creditor's alleged good faith and reasonableness. 15 U.S.C 1640 (a).

93. Consumers are awarded attorneys fees in successful action or when they are "determined to have a right of rescission under 15 U.S.C Sec 1635.

94. A consumer is entitled to actual damages when a creditor fails to comply with the requirements imposed by TILA in the amount equal to the sum of any actual damage sustained by the consumer as a result of the creditor's violation. 15 U.S.C. 1640 (a)(1).

95. That Plaintiffs did not discover, and could not discover, Defendants' violations of the Truth in Lending Act because the documents provided to Plaintiffs were extremely misleading. Defendants took affirmative steps to conceal Plaintiffs' cause of action by failing to answer Plaintiffs' Qualified Written Requests and not providing Plaintiffs with a copy of the final HUD-1 statement.

DAILEY LAW FIRM, P.C.

96. Thus, Plaintiffs' claims under the Truth in Lending Act are subject to equitable tolling.

97. Plaintiffs are further entitled to equitable tolling because Plaintiffs took action prior to the 3 year statute of limitation by retaining the Law Office of Marshall Rosenbach to negotiate with Defendant, ASC in March of 2008(**Exhibit 4**). Plaintiffs also had a mortgage audit conducted in 2009, this is when they first realized the problems with their mortgage as outlined in the audit. (**Exhibit 5**).

**WHEREFORE,** PLAINTIFFS REQUESTS that this Court enter a judgment in its favor and against Defendants, declaring this mortgage to be void and allow rescission of the notes and mortgage, plus interest, costs, and attorney fees and for such further and additional relief as may be fair and just under the circumstances.

## COUNT VII: VIOLATIONS OF HOME OWNERSHIP EQUITY PROTECTION ACT

98. Plaintiffs incorporates, by reference the allegations set forth in paragraphs 1-97 and further states:

99. That Defendants extended credit to Plaintiff recklessly and without regards for Plaintiffs' ability to repay.

100. Specifically, in the course and conduct of offering and making HOEPA mortgage loans, Defendants have violated, and continue to violate, the requirements of HOEPA and Regulation Z by engaging in a pattern or practice of extending such credit to a consumer based on the consumers collateral rather than considering the consumer's current and expected income, current obligations, and employment status to determine whether the consumer is able to make the scheduled payments to repay the obligation, in violation of Sec 129(h) of TILA, 15 U.S.C. 1639 (h), and Section 226.32(e)(1) of Regulation Z C.F.R. 226.32(e)(1)

101. That Defendants have violated the Home Ownership Equity Protection Act

(HOEPA) by engaging in a pattern and practice of extending credit to individuals without regard to their ability to repay the loan. 15 USC Sec. 1639(h).

102.  Further, in the Mortgage transaction at issue here, Plaintiffs were required to pay excessive fees, expenses, and costs which exceeded more than eight percent of the amount financed.

103.  Defendants further violated HOEPA by failing to provide Plaintiffs with accurate TIL disclosures, and by understating the amount to be financed.

104.  Defendants also inserted "prepayment penalties" in violation of HOEPA. 15 U.S.C 1639 (c)-(h).

105.  Failure by defendants to deliver required notice or inclusion of prohibited terms triggers an extended (three year) right of rescission. 15 U.S.C 1639 (j)

106.  HOEPA violations give rise to "enhanced" Monetary damages under 15 U.S.C. 1640 (a) (4), namely all payments made by the borrower.

WHEREFORE, PLAINTIFFS REQUESTS that this Court enter a judgment in its favor and against Defendants, declaring this mortgage to be void and allow rescission of the mortgage and notes , plus interest, costs, and attorney fees and for such further and additional relief as may be fair and just under the circumstances.

## COUNT VIII: VIOLATIONS OF REAL ESTATE SETTLEMENT PROCEDURES ACT

107.  Plaintiffs incorporates, by reference the allegations set forth in paragraphs 1-106 and further states:

108.  That Plaintiff sent Defendant, ASC,  four formal RESPA request, a Qualified Written Request in compliance with 12 U.S.C. Sec. 2605(c) and Regulation X at 24 C.F.R. 3500 and the Gramm Leach Liability Act. (Exhibit 3)

DAILEY LAW FIRM, P.C.

109.    That to this date, Defendant, ASC, failed to respond to any of these qualified written requests.

110.    That any Notice of Default from Defendants is defective due to the failure to respond to Plaintiff's RESPA request.

111.    The servicer must initially provide a written response acknowledging receipt of the request within twenty days.

112.    Within sixty days of receipt of a Qualified Written Request from the borrower, the servicer must, provide the borrower with the information requested. *12 U.S.C. 2605(e)(2)(C)(i); Reg. X, 24 C.F.R. 3500.21(e)(3)(ii)(B).*

113.    Further, Defendant, ASC's failure to respond to Plaintiff's Qualified Written Request is a violation of the Michigan Fair Debt Collection laws and Federal Fair Debt Collection Practices Act, 15 USC Sec. 1692(g). When proof is requested, the law requires that all efforts to collect the debt must be suspended until the requested information is mailed.

114.    Congress intended RESPA to be a remedial consumer-protection statute. As such, RESPA is to be construed liberally in order to best "serve Congress intent"

115.    Defendants never provided Plaintiffs with a copy of the final HUD-1 statement, in violation of 15 U.S.C. 1629 (c)-(h).

116.    RESPA prescribed remedies include "rescission, the sum of all total fees paid at closing, costs and attorney fees". 15 U.S.C. 1639 (j); 15 U.S.C. 1640(a)(4)

117.    Defendants failed to account and or remit to the plaintiffs the "missing" sum of $7000.00, which was negotiated between the builder and plaintiffs to be used as credit for closing costs.

118.   Thus plaintiffs asserts that any payment to a broker or originator that does not represent reasonable compensation for services actually provided is prohibited and a violation of RESPA Sec 8; 12 U.S.C 2607(b); 24 C.F.R. 3500.14(c)

119.   The RESPA prescribed remedies for this violation are "treble damages, the total fees at closing, costs and attorneys fees". 12 U.S.C 2607 (d).

120.   Defendants failed to account and or remit to plaintiffs at closing the amount of $2500.00, which was negotiated between builder and plaintiffs as credit for appliances upon closing.

121.    Plaintiffs asserts that any payment to a broker or originator that does not represent "reasonable" compensation for services actually provided is prohibited and a violation of RESPA Sec 8, 12 U.S.C 2607 (b); C.F.R 3500.14(c).

122.   The RESPA prescribed remedy for this violation is "an amount equal to three times the amount of any charge paid for such settlement service, costs and attorneys fees". U.S.C. 2607 (d).

123.   Plaintiffs assert that Defendants or its agents received 1% of the total loan amount as "YSP" yields spread premium from lender.

124.   Defendants were already paid by plaintiffs, with the amount of $12,000 for fees and closing costs in form of a personal check during closing, which includes a broker's fee of $5,600.00.

125.   Thus plaintiffs asserts that defendants violated 12 U.S.C. 2607 (a); C.F.R. 3500.14(b).

126.   Plaintiffs assert that by giving Defendant, **IT MORTGAGE** a 1% of the total loan amount as "YSP" the lender added another 1% to the interest it charged for its own "YSP"

127. Plaintiffs believes this practice is a violation of 12 U.S.C 2607 (a); C.F.R. 3500.14(b).

128. Plaintiffs request the remedies prescribed under RESPA, including "the amount of three times the amount of any charge paid". 12 U.S.C. 2607(d)

WHEREFORE, PLAINTIFFS REQUESTS that this Court enter a judgment in its favor and against Defendants, declaring this mortgage to be void and allow rescission of the mortgage and notes , plus interest, costs, and attorney fees and for such further and additional relief as may be fair and just under the circumstances.

## COUNT IX VIOLATION OF FAIR DEBT COLLECTION PROCEDURES ACT.

129. Plaintiffs incorporates, by reference the allegations set forth in paragraphs 1-128 and further states:

130. That Plaintiff sent four QWR's (Qualified Written Requests) requesting for information and validation to Defendant, **ASC.**.

131. That Defendant, **ASC** failed to answer any of these requests.

132. Failure by the Defendants to respond to Plaintiffs qualified written response is a violation of FDCPA 809(a); 15 U.S.C 1692(g)

133. Failure by the defendants to cease collection of debt is a violation of FDCPA 809(b): 15 U.S.C. 1692(f).

WHEREFORE, PLAINTIFFS REQUESTS that this Court enter a judgment in its favor and against Defendants, declaring this mortgage to be void and allow rescission of the mortgage and notes , plus interest, costs, and attorney fees and for such further and additional relief as may be fair and just under the circumstances. And to certify this lawsuit a "class action", which the prescribed remedies of law held as reasonable. MCL 445.911

## COUNT X BREACH OF FIDUCIARY DUTY

134. Plaintiffs incorporates, by reference the allegations set forth in paragraphs 1-133 and further states:

135. Plaintiffs contend that Defendants breached its fiduciary duty by:

   a. Placing Plaintiffs into a mortgage that was contrary to his stated intention.

   b. By placing Plaintiffs into a mortgage in which they knew there was a high likelihood that Plaintiffs would default and be subject to foreclosure.

   c. By Placing Plaintiffs into a mortgage that was not in the best interest of Plaintiffs.

   d. By failing to make reasonable inquiry into Plaintiffs' actual ability to repay this debt.

   e. By misrepresenting the amount charged by or paid to a third party for product or service, in violation of MCL 445.1634(1) (b).

   f. By failing to provide Plaintiffs with the all required disclosure notices.

   g. By making false and misleading statements in connection with this agreement, in violation of MCL 445.1634(3).

   h. By engaging in unfair, unconscionable, or deceptive methods/practices in the conduct of trade, in violation of MCL 445.903.

   i. Wyatt v Union Mtge. Co., 24 cal.3d 773,782,157 Cal Rptr. 392, 397.598 P. 2d 45(1979) accord: Pierce v Hom, 178 Cal. Rptr. 553,558 (Ct. App. 1981), mortgage broker has duty to use his expertise in real estate financing for the benefit of the borrower".

136. Plaintiffs allege that as a direct and proximate result of Defendants breach of duty of care toward Plaintiffs, Plaintiffs have been damaged and injured both at equity and law, in that Plaintiffs' property is subject to non-judicial foreclosure sale and Plaintiffs

DAILEY LAW FIRM, P.C.

only remedy to address Defendants' breaching conduct is to obtain a Stay of the foreclosure proceedings to address Defendants' wrongful conduct.

WHEREFORE, PLAINTIFFS REQUESTS that this Court enter a judgment in its favor and against Defendants, declaring this mortgage to be void and allow rescission of the mortgage and notes , plus interest, costs, and attorney fees and for such further and additional relief as may be fair and just under the circumstances

## COUNT XI VIOLATIONS OF EQUAL CREDIT OPPURTUNITY ACT

137.    Plaintiffs incorporates, by reference the allegations set forth in paragraphs 1-136 and further states:

138.    Under ECOA, a borrower is entitled to the same terms of credit issuance that another borrower of equal characteristics is entitled to. 15 U.S.C 1691 et. Seq.

139.    Plaintiffs assert that Defendnats placed the plaintiffs into a loan that had a significantly higher interest rate than what was qualified for.

140.    That in doing so Defendant, **IT MORTGAGE** received the amount of $5600 and "lender" increased the interest of the loan by another 1%. An increase in the interest rate and monthly payment, in order to receive a "Yield Spread Premium" is a violation of ECOA.

**WHEREFORE,** PLAINTIFFS REQUESTS that this Court enter a judgment in its favor and against Defendants, declaring this mortgage to be void and allow rescission of the mortgage and notes , plus interest, costs, and attorney fees and for such further and additional relief as may be fair and just under the circumstances.

## COUNT XI: FOR DECLARATORY AND INJUNCTIVE RELIEF AGAINST ALL DEFENDANTS

141.    Plaintiffs incorporates, by reference the allegations set forth in paragraphs 1-140 and further states:

DAILEY LAW FIRM, P.C.

142.   Plaintiffs allege that actual controversy exists as to the following issues:

a.   Plaintiffs contend that the loan agreements of March 25, 2005, are void based upon Defendants' violation of disclosure requirements, violations of State and Federal Statutes and violations of other statutory provisions described herein.

143.   Plaintiffs contend that any foreclosure sale of the SUBJECT PROPERTY is improper in that Defendants are not the holders of the original note to the SUBJECT PROPERTY.

144.   Plaintiffs allege the Defendants failed to provide all necessary disclosures and violated numerous State and Federal Statutes and as such the entire loan transaction is subject to rescission.

145.   Plaintiffs desire a judicial determination of their rights and duties, a declaration as to the validity of the loan transactions at issue and to Defendants' right to proceed with the foreclosure of the SUBJECT PROPERTY.

146.   Plaintiffs allege that a judicial declaration is necessary and appropriate at this time under the circumstances in order that Plaintiffs may ascertain their rights under the Agreements and as to Defendants' right to proceed with the foreclosure of the SUBJECT PROPERTY.

147.   Plaintiffs' allege that Defendants' action have undermined their right to the SUBJECT PROPERTY and have interfered, and continue to interfere with Plaintiffs' right of possession of the SUBJECT PROPERTY.

148.   By the action above and set forth herein, Plaintiffs have a strong likelihood of prevailing on the merits of the case.

149.   Plaintiffs request that this Honorable Court grant a Preliminary Injunction and Temporary Restraining Order as to the foreclosure or sale of the SUBJECT

PROPERTY and a Permanent Injunction precluding Defendants from engaging in the wrongful conduct identified herein in the future.

## WHEREFORE PLAINTIFF PRAYS FOR JUDGMENT AGAINST DEFENDANTS AS FOLLOWS:

1. That the foreclosure or attempted foreclosure of Plaintiffs' home be deemed illegal and void and the same be permanently enjoined;

2. That the above mentioned loan transactions be deemed void as a result of Defendants' various fiduciary breaches, violations of State law and violations of Federal law.

3. That the actions of all Defendants be determined to be unfair and deceptive business practices in violation of Michigan Law and Statutes, and that this Court award all such relief to Plaintiffs as Plaintiffs may be entitled, including treble damages, actual damages, and an award of costs and attorney's fees;

4. That the actions of Defendants be determined to be in violation of Federal Law. Including but not limited to violations of Real Estate Settlement Procedures Act (RESPA), Truth in Lending Act (TILA), Home Ownership Equity Act (HOEPA), Fair Debt Collection Procedures Act (FDCPA), and violations of Equal Credit Opportunity Act (ECOA), which violations cause the rescission of the Loan Agreements/Contracts and disgorgement of any and all payments made by Plaintiffs to Defendants;

5. A permanent injunction precluding Defendants from engaging in the wrongful conduct identified herein;

6. For award of all damages Plaintiffs are entitled to under the law;

7. For award of attorney fees, and costs incurred and;

8. For any other relief this Honorable Court may deem just and proper.

I declare that the foregoing statements are true to the best of my information, knowledge and belief.

Dated: December _____2_____, 2009

_____
Martin Famatiga, Plaintiff

_____
Heather-Kerchen Famatiga, Plaintiff

Respectfully submitted,

**DAILEY LAW FIRM, PC**

_____
By: Brian T. Dailey (P39945)
Justin G. Grove (P71253)
Attorney for the Plaintiff
28000 Woodward Ave., Ste 201
Royal Oak, MI 48067
248.744.5005

DAILEY LAW FIRM, P.C.

```
********************
***   TX REPORT   ***
********************


TRANSMISSION OK

TX/RX NO                    3836
DESTINATION TEL #      918665908910
DESTINATION ID
ST. TIME                  08/09 15:26
TIME USE                    01'08
PAGES SENT                    8
RESULT                       OK
```

LAW OFFICES

# MARSHALL E. ROSENBACH

468 N. CAMDEN DRIVE, SUITE 200
BEVERLY HILLS, CALIFORNIA 90210
TELEPHONE (310) 860-4764
FACSIMILE (310) 860-4763

## FACSIMILE TRANSMISSION COVER SHEET

**TOTAL OF** _8_ **PAGE(S), including this cover page**

DATE            :        April 8, 2008

TO              :        Bret Hudson, ASC

FAX #           :        (866) 590-8910; (866) 453-6315.

SUBJECT         :        My clients, your borrowers, Martin Famatiga and Heather
                         Kerchen
                         Loan no. 1100110383
                         Property address: 1282 Morning Mist Dr., Howell, Michigan
                         48843
                         Last 4 SSN: 1924

FROM            :        Marshall E. Rosenbach, Esq.

MESSAGE/SPECIAL INSTRUCTIONS:

URGENT!

LAW OFFICES
### MARSHALL E. ROSENBACH
468 N. CAMDEN DRIVE, SUITE 200
BEVERLY HILLS, CALIFORNIA 90210
TELEPHONE (310) 860-4764
FACSIMILE (310) 860-4763

September 9, 2008

**VIA TELECOPIER ONLY**
(866) 590-8910; (866) 453-6315

Attn: Bret Hudson
America's Servicing Company
MAC X7801-03K
3476 Stateview Boulevard
Fort Mill, South Carolina 29715

> Re:  My clients, your borrowers, Martin Famatiga and Heather Kerchen
>      Loan no. 1100110383
>      Property address: 1282 Morning Mist Dr., Howell, Michigan 48843
>      Last 4 SSN: 1924

Dear Mr. Hudson:

As you know, I represent Martin Famatiga and Heather Kerchen in connection with the above-referenced loan. I have left you a few voice mail messages but have not gotten a returned call.

In April 2008, ASC approved my clients for a forbearance agreement. You sent my office a copy of the forbearance agreement. We asked you about the final payment under the plan of $18,151.22. You assured us that Mr. Famatiga and Ms. Kerchen would not have to pay this huge sum, but that this figure would be rolled into the back of the loan as part of a loan modification. We asked if you could include this language in the agreement. You stated the agreement was computer generated and could not be changed, but that ASC would honor what we discussed.

My clients diligently made all payments under the forbearance agreement (you had assured us payments under the agreement could be made by the 30th of each month). Attached are copies of the 3 checks in the amount of $2,657.53 paid by my clients and cashed by ASC. Also attached is a copy of two receipts showing the payments were overnighted to ASC (one receipt is missing). Mr. Famatiga and Ms. Kerchen also made

LAW OFFICES OF MARSHALL E. ROSENBACH
re: *Loan no. 1100110383*
Mr. Hudson, ASC
September 9, 2008
Page 2

the contribution payment at the time they signed the forbearance agreement.

Just recently, my clients were told by ASC that it was not accepting the $2,657.53 payment per month and that foreclosure proceedings would continue.

In light of Mr. Famatiga and Ms. Kerchen living up to their end of the bargain, is ASC going to consider them for a loan modification and roll the $18,151.22 into the back of the loan as we were told? I am happy to send you whatever financials or other documents you need to complete the loan modification process.

Please advise as soon as possible because we are afraid ASC is going to sell the home without first giving us notice.

Very truly yours,

MARSHALL E. ROSENBACH

Enclosures

09/09/2008  15:32 FAX  3108604763          MARSHALL E. ROSENBACH                              007/010

· Sep 03 08 11:41a     M. Famatiga & H. Kerchen                              517-548-3687              p.3

```
_=====================================
          HOWELL PC
       HOWELL : Michigan
           488432216
         2539230843-0098
05/29/2008 (800)275-8777 11:11:49 AM
====================================
========= Sales Receipt =========
Product      Sale Unit    Fina
Description   Qty Price   Pric
=================================

FORT MILL SC 29715              $16.5
Zone-4 Express Mail
PO-Add Flat Rate
  2.20 oz.
  Label #:      EB782113805US
  Next Day 3PM   / Normal Delivery
                          =======
  Issue PVI:              . $16.50

                       =============
· Total:                   $16.50

Paid by:
MasterCard                 $16.50
  Account #:    XXXXXXXXXXXX2000
  Approval #:    151157
  Transaction #:  193
  23903080877

Order stamps at USPS.com/shop or
call 1-800-Stamp24.  Go to
USPS.com/clicknship to print
shipping labels with postage.  For
other information call
1-800-ASK-USPS.

Bill#:1000200950807
Clerk:08

All sales final on stamps and postage.
Refunds for guaranteed services only.
      Thank you for your business.
##############################
##############################
    * To learn more about our new
    competitive shipping prices,
      go to usps.com/business.
##############################
##############################

##############################
##############################
    HELP US SERVE YOU BETTER

Go to: http://gx.gallup.com/pos

  TELL US ABOUT YOUR RECENT
    POSTAL EXPERIENCE

    YOUR OPINION COUNTS
##############################
##############################
```

*CERTIFIED*  *RECEIPTS*

```
===============================
          HOWELL PO
       HOWELL   Michigan
                           1:09:30 AM
                         ============
Description    Qty Price   Final
                           Price
================================

FORT MILL SC 29715            $16.50
Zone-4 Express Mail
PO-Add Flat Rate
  1.90 oz.
  Label #:      EB783292113US
  2nd Day 3PM    / Normal Delivery
                          =======
  Issue PVI:             $16.50

Forever         1   $8.40   $8.40
Stamp
Booklet
                        =========
Total:                   $24.90

Paid by:
MasterCard                 $24.90
  Account #:    XXXXXXXXXXXX2000
  Approval #:    150820
  Transaction #:  975
  23903080877

Order stamps at USPS.com/shop or
call 1-800-Stamp24.  Go to
USPS.com/clicknship to print
shipping labels with postage.  For
other information call
1-800-ASK-USPS.

Bill#:1000200995453
Clerk:11

All sales final on stamps and postage.
Refunds for guaranteed services only.
  · Thank you for your business,
##############################
##############################
  * To learn more about our new
  competitive shipping prices,
    go to usps.com/business.
##############################
##############################

##############################
##############################
    HELP US SERVE YOU BETTER
```



09/09/2008 15:31 FAX  3106604763          MARSHALL E. ROSENBACH                    ☑004/010

Sep 03 08 11:41a    M. Famatiga & H. Kerchen                         517-548-3687         p.4

Page 1 of 1



Return to Home Financial Services

*CANCELLED CHECKS*

09/09/2008 15:32 FAX  3108804763    MARSHALL E. ROSENBACH                    ☑006/010
Sep 03 08 11:42a    M. Famatiga & H. Kerchen                  517-548-3687      p.6
                                                                                Page 1 of 1



Return to Home Financial Services

09/03/2008 15:32 FAX  3108604763        MARSHALL E. ROSENBACH                    ☑005/010

-- Sep 03 08 11:41a      M. Famatiga & H. Kerchen                    517-548-3687            p.5

Page 1 of 1



Return to Home Financial Services



**ASC**
AMERICA'S SERVICING COMPANY
Return Mail Operations
P.O. Box 10328
Des Moines, IA 50306-0328

May 19, 2008

Loan Number 106-1100110383
Due Date:   10-01-07

Heather Kerchen
Martin Famatiga
1282 Morning Mist Dr
Howell MI 48843

Thank you for contacting us regarding your financial hardship on the loan
mentioned above. Our goal is simple. We want to ensure that you have
every opportunity to retain your home. Based on our telephone
conversation and the financial information you provided, we would like to
offer you a Special Forbearance Plan.

Currently, your loan is due for 8 installments, from October 01, 2007
through May 01, 2008. As agreed, you have promised to pay the
amounts shown below by the dates indicated. Also enclosed are the terms
and conditions of this forbearance. Please sign the enclosed agreement
and return it with the first installment. This is not a waiver of the
accrued or future payments that become due, but a period for you to
determine how you will be able to resolve your financial hardship. Any
payments received will be applied to the delinquent payments on the loan.
During this Special Forbearance Agreement, payments are to be mailed to:
            America's Servicing Company
            MAC X7801-03K
            3476 Stateview Blvd
            Fort Mill  SC  29715

We will instruct our foreclosure counsel to suspend foreclosure
proceedings once the initial payment has been received, and to continue
to suspend the action as long as you keep to the terms of the Agreement.
Upon full reinstatement, we will instruct our foreclosure counsel to
dismiss foreclosure proceedings and report to credit bureaus accordingly.

During this period, we are requesting that you maintain contact with our
office in order to establish acceptable arrangements for bringing your
loan current. If you need additional assistance, please call us at
(800) 662-3806, Monday through Thursday, 8 AM to 11 PM; Friday, 8 AM to
to 10 PM; or Saturday, 9 AM to 3 PM, Eastern Time.


                              LC065 005 N7V

We are required by the Fair Debt Collection Practices Act to inform you
that if your loan is currently delinquent or in default, as your loan
servicer, we will be attempting to collect a debt, and any information
obtained will be used for that purpose. However, if you have received a
discharge, and the loan was not reaffirmed in the bankruptcy case, we
will only exercise our right as against the property and are not
attempting any act to collect the discharge debt from you personally.

## SPECIAL FORBEARANCE AGREEMENT — TERMS AND CONDITIONS

1. Currently, your loan is due for 8 installments, from October 01, 2007 through May 01, 2008. The indebtedness of the referenced loan is in default and in consideration of extending forbearance for a period of time, it is necessary that you indicate your understanding and acceptance of the terms of the forbearance agreement by immediately signing and returning this agreement.
2. Payments must be made strictly in accordance with the enclosed payment schedule and forbearance agreement conditions. This plan is an agreement to temporarily accept reduced payments or maintain regular monthly payments during the plan specified below. Upon successful completion of the payments outlined in this plan, your loan will be reviewed for a Loan Modification. Based on investor approval, this may satisfy the remaining past due amount on your loan.
3. The lender is under no obligation to enter into any further agreement, and this forbearance shall not constitute a waiver of the lender's right to insist upon strict performance in the future.
4. All of the provisions of the note and security instrument, except as herein provided, shall remain in full force and effect. Any breach of any provision of this agreement or non-compliance with this agreement, shall render the forbearance null and void, and at the option of the lender without further notice to you may terminate this agreement. The lender, at its option, may institute foreclosure proceedings according to the terms of the note and security instrument without regard to this agreement. In the event of foreclosure, you may incur additional expenses of attorney's fees and foreclosure costs.
5. Each payment must be remitted according to the schedule below.

| PLAN | DATE | AMT | PLAN | DATE | AMT |
|------|------|-----|------|------|-----|
| 01 | 05/30/08 | 2,657.53 | 02 | 06/30/08 | 2,657.53 |
| 03 | 07/30/08 | 2,657.53 | 04 | 08/30/08 | 18,151.22 |

6. There is no "grace period" allowance in this agreement. All payments must be received on or before the agreed due date. If any payment is not received on or before the due date, the agreement will be void and the total delinquency, including fees, will be due immediately.
7. The total amount indicated on each payment of the payment schedule must be remitted. In the event the total amount due of each payment is not received, the Special Forbearance agreement will be rendered null and void.

By signing this Agreement I hereby consent to being contacted concerning this loan at any cellular or mobile telephone number I may have. This includes text messages, at no cost to me, and telephone calls including the use of automated dialing systems to contact my cellular or mobile telephone.

| Mortgagor | Date | Co-mortgagor | Date |
|-----------|------|--------------|------|

Loan Number 106/1100110383



**ASC**
AMERICA'S SERVICING COMPANY
Return Mail Operations
P.O. Box 10388
Des Moines, IA 50306-0388

September 16, 2008

Heather Kerchen
Martin Famatiga
1282 Morning Mist Dr
Howell MI 48843

*RETURNED CHECK*

Dear Heather Kerchen & Martin Famatiga :

RE: Loan Number 1100110383, Client 106

Enclosed please find your check(s) in the amount(s) of $2,657.53.
We are returning the funds because the funds are not certified funds.
Please be advised the return of these funds shall not constitute a
waiver of any remedy permitted under the terms of your Mortgage or
Deed of Trust.

Your loan is in a Foreclosure status at this time.  If you would
like to discuss the present condition of your loan, please
contact our attorney's office, ORLANS ASSOCIATES,
at (248)502-1500.

Sincerely,

America's Servicing Company

FC003/XKI

MARTIN R. FAMATIGA    09-05                                    1217
HEATHER C. KERCHEN
1282 MORNING MIST DR.                          74-7652/2724
HOWELL, MI 48843                                        01
FREEDOM ACCT                              Date 9/1/08

Pay to the
Order of America's Servicing Company         $ 2657.53

Two Thousand + Six Hundred Fifty Seven —— 53/100 Dollars

**Huron**
RIVER AREA
CREDIT UNION HOWELL, MI 48843

For Loan # 1100110383

⑆272476527⑆ 7103030137041⑈1217

2



LIBER4 7 4.9 PAGE 0 2 4 b

RECORDED

2005 MAR 25 P 3: 51

SALLY REYNOLDS
REGISTER OF DEEDS
LIVINGSTON COUNTY, MI
48843

# MORTGAGE  6 4/4

Return To:

BNC MORTGAGE, INC.
P.O. BOX 19656
IRVINE, CA 92623-9656

MIN 100122200001516647

Loan No.: DET009067

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated March 16, 2005 together with all Riders to this document.
(B) "Borrower" is HEATHER  KERCHEN AND MARTIN  FAMATIGA, JOINTLY.

*a single woman
**a single man

Borrower's address is 1282 HORNING MIST, MARION TWP, MI 48843
. Borrower is the mortgagor under this Security Instrument.

MICHIGAN-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS        Form 3023 1/01

VMP -6A(MI) (0005).01
Page 1 of 15    Initials:
VMP MORTGAGE FORMS - (800)521-7291

L 518569

LIBER 7 4 9 PAGE 0 2 4 7

(C) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the mortgagee under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888)679-MERS.

(D) "Lender" is BNC MORTGAGE, INC., A DELAWARE CORPORATION

Lender is a corporation
organized and existing under the laws of Delaware
Lender's address is P.O. BOX 19656, IRVINE, CA 92623-9656

(E) "Note" means the promissory note signed by Borrower and dated March 16, 2005
The Note states that Borrower owes Lender two hundred eighty thousand and 00/100

Dollars
(U.S. $280,000.00          ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than April 1, 2035

(F) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."

(G) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(H) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

[X] Adjustable Rate Rider  [ ] Condominium Rider          [ ] Second Home Rider
[ ] Balloon Rider          [ ] Planned Unit Development Rider  [ ] 1-4 Family Rider
[ ] VA Rider               [ ] Biweekly Payment Rider     [X] Other(s) [specify]
                                                          exhibit A

(I) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(J) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(K) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(L) "Escrow Items" means those items that are described in Section 3.

(M) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(N) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(O) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.



11/25/2008 14:03 FAX 517 548 0102          Zichi & Brauer. P.C.                    ☒001

```
                    *********************
                    ***   TX REPORT   ***
                    *********************


     TRANSMISSION OK

     TX/RX NO            0079
     CONNECTION TEL                18665908910
     SUBADDRESS
     CONNECTION ID
     ST. TIME            11/25 14:02
     USAGE T             00.'44
     PGS. SENT              2
     RESULT              OK
```

November 25, 2008

Attention Loan Modification Department
Subject: Loan # 1100110383
America's Servicing Company
3476 Stateview Blvd.
Fort Mill, SC 29715
Phone: 1-866-248-5719
Fax: 1-866-590-8910

Dear Sir or Madam:

This is a "Qualified Written Request" under Section 6 of the Real Estate Settlement Procedures Act (RESPA).

I am writing to request:

(1). Copies of all documents pertaining to the origination of my mortgage including but not limited to my loan application, Right to Cancel, Deed of Trust, note, adjustable rate note, addendum to the note for the interest only payment period, Truth in Lending statements, Good Faith Estimate(GFE), HUD 1, appraisal, and all required disclosures and rate sheets associated with this transaction for the above referenced loan. The copies should be legible and all documents shall be copied in their entirety. We would like the name and address of the mortgage servicing entity and the same information for the holder/owner of the mortgage and note.

(2). A copy of the loan history including all payments made, all fees incurred, what has been paid out of the escrow account, and how all payments were applied. This information should cover the entire life of the loan.

We have reason to believe that the loan terms were misrepresented to us at the time of application and further obscured and/or modified prior to signing. We believe that we are victims of "bait and switch". We also have reason to believe that certain statements were not provided for our approval prior to closing and those signatures may have been forged on various documents. It is also our belief that certain documents may have not been presented at all. Additionally, we believe that a notary was not present to witness our signatures on several pertinent documents and that this transaction did not take place in legitimate title/escrow/real-estate professionals therefore leaving us ill advised at the time of closing.

We started the process of trying to negotiate this loan before we even defaulted. We called October 2007 asking to be allowed to do FHA Secure, but were denied. We sent our paperwork November and as per your representative, it was received in December. It took ASC till March to communicate with us and May to finalize our loan mod. We were asked to pay the sum of $2667 for 3 months with a promise to modify our loan.

– 2 –                                                         November 25, 2008

Loan # 1100110383

We can be reached at 517-548-3687 or 810-623-7335.  If there is no answer we will call back promptly if a message is left with the phone number that I can call and get thru on.   Our email address is svnjock@hotmail.com and is otherwise the best way to contact us.

I understand that under Section 6 of RESPA you are required to acknowledge my request within 20 business days and must try to resolve the issue within 60 business days.

 In closing we are not trying to get out of paying anything.  We are only concerned in having the loan modified and the interest rate lowered.  If not then please agree to let us go through FHA Secure or H4H. We want a payment we know we can live with and one that will not get us in trouble again.

Sincerely,

*Martin & Heather Famatiga*

Martin & Heather Famatiga

DAVID W. BRAUER
Notary Public, State of Michigan
County of Livingston
My Commission Expires 8/22/2013
Acting in the County of _____

DAVID W. BRAUER
Notary Public, State of Michigan
County of Livingston
My Commission Expires 8/22/2013
Acting in the County of *Livingston*

*Notarized as to Heather Famatiga only.*

| **SENDER: COMPLETE THIS SECTION** | **COMPLETE THIS SECTION ON DELIVERY** | |
|---|---|---|
| ■ Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.<br>■ Print your name and address on the reverse so that we can return the card to you.<br>■ Attach this card to the back of the mailpiece, or on the front if space permits. | A. Signature<br>X | ☐ Agent<br>☐ Addressee |
| | B. Received by (Printed Name) | C. Date of Delivery |
| 1. Article Addressed to:<br><br>America's Servicing Co.<br>ATTN: Loan Modification Dept<br>3476 Stateview Blvd<br>Fort Mill, SC 24715 | D. Is delivery address different from item 1?  ☐ Yes<br>If YES, enter delivery address below:  ☐ No | |
| | 3. Service Type<br>☐ Certified Mail   ☐ Express Mail<br>☐ Registered   ☐ Return Receipt for Merchandise<br>☐ Insured Mail   ☐ C.O.D. | |
| | 4. Restricted Delivery? (Extra Fee)   ☐ Yes | |
| 2. Article Number<br>(Transfer from service label) | 7008 1830 0002 7087 2025 | |
| PS Form 3811, February 2004 | Domestic Return Receipt | 102595-02-M-1540 |

QWR MAILED CERTIFIED

LAW OFFICES
# MARSHALL E. ROSENBACH
468 N. CAMDEN DRIVE, SUITE 200
BEVERLY HILLS, CALIFORNIA 90210
TELEPHONE (310) 860-4764
FACSIMILE (310) 860-4763

February 13, 2009

### VIA U.S. MAIL ONLY

America's Servicing Dept.
Attn: Qualified Written Request Dept.
MAC X7801-03K
3476 Stateview Boulevard
Fort Mill, South Carolina 29715

Re: *My clients, Martin Famatiga and Heather Kerchen*
*Loan no. 1100110383*
*Property address: 1282 Morning Mist Dr., Howell, Michigan 48843*
*Last 4 SSN: 1924*

Dear Sir/Madam:

This office represents borrowers, Martin Famatiga and Heather Kerchen, in connection with the above-referenced loan. This is a "Qualified Written Request" under Section 6 of the Real Estate Settlement Procedures Act ("RESPA").

We are requesting all documents pertaining to loan no. 1100110383. The reason for this request is that our clients believe this loan is predatory in nature and we would like to properly investigate this mortgage contract, disclosures, and related documents that are causing them duress and financial hardship.

Our clients have requested modification and relief from excessive mortgage payments as a result of not receiving adequate disclosure of the terms and conditions of the loan product. They have requested on multiple occasions modification from ASC and have been unable to obtain one.

We are requesting a Life of Loan History to be sent to our office detailing all payments, interest, fees and charges incurred by my clients as a result of this mortgage. Our firm is also requesting all loan documents signed by our clients that pertain to this loan including, but not limited to, all original closing documents such as the Truth in

LAW OFFICES OF MARSHALL E. ROSENBACH
re: *Loan no. 1100110383*
ASC
February 13, 2009
Page 2

Lending Disclosure Statement, original appraisal, good faith estimate of closing costs associated with the origination of this loan, original application, final application, copy of Final Lender HUD-1 documents (all pages), copy of final funding instructions with final funding date, copy of prior Lender Payoff and Demand, Note plus all Addendums, Deed of Trust plus all Riders, all relevant Assignments of the Deed of Trust, Right to Cancel Notice, any and all disclosures (including broker affiliated disclosures), and rate lock sheet that the client received at closing by the title agent.

Under Section 6 of RESPA you, the servicer, must acknowledge this request in writing within twenty (20) business days of receipt of the request. Within 60 business days you must resolve the complaint by correcting the account or giving a statement of the reasons for Indymac's position. Section 6 of RESPA states that my clients have a sixty (60) day grace period in which no late fees or penalties can be applied and no late payments can be reported for the first 60 days to all credit bureaus.

Very truly yours,

MARSHALL E. ROSENBACH

Enclosures

LAW OFFICES
# MARSHALL E. ROSENBACH
468 N. CAMDEN DRIVE, SUITE 200
BEVERLY HILLS, CALIFORNIA 90210
TELEPHONE (310) 860-4764
FACSIMILE (310) 860-4763

March 27, 2009

## VIA U.S. MAIL ONLY

Martin Famatiga & Heather Kerchen
1282 Morning Mist Dr.
Howell, Michigan 48843

Dear Martin & Heather:

Enclosed is a copy of the "Qualified Written Request" that was sent to America's Servicing Company, with no response.

If you have any questions or if we can be of further assistance, please don't hesitate to call our offices.

Kind Regards,

Rebecca Waters
asst. to MARSHALL E. ROSENBACH

Enclosure

08/18/2009 12:52 FAX 3108604763      MARSHALL E. ROSENBACH      ☑001/002

KERCHEN, HEATHER & MARTIN - - ID# 6715750 - Created 3/18/2008 9:11:00 PM

1/26/2009 4:29pm - rebecca: called ASC, sale date is still postponed/suspended.
1/6/2009 12:59pm - rebecca: called ASC, sale date is suspended as borrower is in BK.

1/6/2009 9:40am - marshall: LVM and emailed client.

1/5/2009 4:04pm - marshall: LVM for client.
1/5/2009 3:01pm - rebecca: called ASC to check sale date, Loss Mit has no info on the sale date. Transferred to H4H; Bertha Badger is handling the file. Rep tried to call H4H too and he said that they should have been there, but message was closed.
2:40pm - NO answer at H4H even though it's during their business hours.

12/30/2008 2:55pm - rebecca: LVM for client
12/23/2008 3:35pm - rebecca: called client, LVM
12/19/2008 10:19am - rebecca: called ASC to check on sale date. Still set for the 7th of January. However, the file is with Andrew Lettner H4H as of 12.16 and was input into their system (confirmed) on 12.18. Client should hear from the rep in 5-7 days or sooner.

12/16/2008 4:37pm - marshall: LVM for client.
12/15/2008 4:38pm - marshall: Spoke to client; she says they want a $5,000+ payment which will make them pre-qualified; then it would be like 3 payments of $3,000+ including back escrow. I told her to call back and ask what they are proposing and what is she paying back; and would the payback amount totally resolve the back escrow.
12/9/2008 4:06pm - marshall: LVM for client and emailed.
12/8/2008 3:11pm - marshall: LVM for client.
12/8/2008 2:21pm - rebecca: called Martin to confirm info. he stated that his OT will discontinue at the first of the year and that they will be filing BK after the mod is done. Asked him for a brief letter about the income so that they will not show a surplus, despite the fact that the collection accounts will not be paid.
12/8/2008 1:46pm - rebecca: called Brett Hudson. Client submitted financials to them. Client stated that they pay on two vehicles, but they have $1100 in collection accounts. Wants to know if they are paying on those account or not. According to their I&E, it's just the two vehicle payments. Need to ask Client about the collections- if they will be paying them monthly or not.
Confirm w/Heather: $2747 and Martin: $353 & $4398

12/8/2008 11:55am - rebecca: called Brett Hudson, LVM(he LVM for Marshall)- 803-396-4127
12/5/2008 1:15pm - marshall: LVM for client.

12/1/2008 2:53pm - rebecca: called ASC,per Kathy, the sale date has been postponed for 1.7.09 (as of Nov. 20)Brett Hudson is the negotiator on the file and he will let us know if he is in need of any updated docs. As of now, there is no notation on the account that a BPO or drive-by appraisal has been ordered yet.
12/1/2008 2:33pm - rebecca: tried to call client several times. "fast" busy signal. Called from cell phone and LVM.

10/27/2008 12:06pm - rebecca: called ASC, new sale date is set for 12/3, per Jonita. The new negotiator is: Vannaph Sounrag. Confirmation fax of the new sale date can be faxed to loss mit at 886-590-8910.

10/24/2008 4:31pm - rebecca: called lender- client called 10.23 and spoke with lender and asked for H4H instead of mod. Terms of mod not technically approved, w/rate of 9.75% (which was what the rate started out at).Sale date postponement needs to be requested on Monday or Tuesday. Currently asking for 11/29, but it's pending.

10/21/2008 4:59pm - marshall: LVM for client with update.

10/20/2008 1:50pm - rebecca: called ASC- file sent 877-222-7875 opt 4, Desiree Campbell is negotiator on the file. BPO came back on 10/3 for 165K, credit score check was back on 10/10. No new updates since then.

10/13/2008 4:48pm - marshall: Spoke to client to call ASC.

9/23/2008 8:44am - marshall: Sale continued to October 29, 2008.

9/22/2008 7:19pm - marshall: Called ASC and ORIans again.

9/22/2008 1:58pm - marshall: Called ASC and Orlans.

9/22/2008 1:45pm - marshall: Spoke to client re: foreclosure; called ASC. They will postpone within 24 hours of sale. 248 502 1500

9/19/2008 3:00pm - marshall: No postponement yet; she escalated file; assigned it; made another request to postpone.

9/15/2008 10:01am - marshall: Spoke to client; ASC is renegotiating. Want new financials, etc.

9/9/2008 4:39pm - marshall: Called ASC; left message for Hudson; sent letter; sent email to clients.

9/2/2008 3:48pm - marshall: LVM for client.  Emailed client and told them that ASC said they'd roll over the last $18,000, but now they are not honoring that.

5/28/2008 8:53am - marshall: Emailed client that they only have until May 30, 2008.  Left voicemail as well.

5/19/2008 1:22pm - maghan: "tell famatiga/kerchen they have til may 30 to make payment," I called and told them.

5/12/2008 9:59am - maghan: Heather called for an update.

5/12/2008 8:44am - marshall: Left message for client.

4/22/2008 4:47am - marshall: Left message for client and emailed.

4/8/2008 7:08pm - marshall: Sent out loan mod request.

4/3/2008 12:41pm - vivien: Just faxed a new specific
ASC authorization for them to sign so I can attach it to fax I'm sending ASC today for status report, foreclosure date, etc.

4/3/2008 8:34am - marshall: Emailed client for financial info. Will be submitting package to ASC.

3/30/2008 12:33pm - marshall: Email from client stating cell phone # is 810-623-7335.

Jillian: sent autho/retainer 3/1/08

RECEIVED 3/14/2008 -NEED AUTHORIZATIONS AND MISSING DOCS. NO BORROWER PHONE NUMBER

MISSING DOCS FOR AUDIT NEED BORROWER TO PROVIDE FULL CLOSING PACKAGE

3/20 CALLED FOR AUTHORIZATION

3/21 EMAILED FOR AUTORHIZATION

NEED DOCS AND AUTHORIZATION MLS



 Loan Fraud Investigations

# FORENSIC LOAN AUDIT
# MORTGAGE COMPLIANCE
# ANALYSIS REPORT

***PREPARED***
***FOR***

# Heather Kerchen & Martin Famatiga
# 1282 Morning Mist
# Howell, MI  48883

 # Loan Fraud Investigations

**TRANSACTION DETAILS**

Borrowers Home Address
1282 Morning Mist
Howell, MI 48843

Subject Property: Ownership & Type:
Same-Primary

**TRANSACTION PARTICIPANTS**

ORIGINAL MORTGAGE LENDER/TABLE FUNDER:
BNC Mortgage
PO Box 19656
Irvine CA 92623

**MORTGAGE BROKER:**
I T Mortgage Corp
Address unknown

**MORTGAGE SERVICER**
Option One Mortgage

**MORTGAGE NOMINEE/BENEFICIARY**
MERS

**MORTGAGE TRUSTEE**
Unknown

**SECURITIZATION**
Unknown who owns the loan

| FIRST MORTGAGE | | REFINANCE | |
|---|---|---|---|
| Loan # | DET009067 | Close Date | Mar 16, 20 05 |
| Program | 2/28 | Amount | 280,000 |
| Int Rate | 9.75% | APR | 10.064 % |
| Index | 6 Month LIBOR | Index Value | 3.1495% |
| Margin | 5.65% | Cap | 12.97% |

 # Loan Fraud Investigations

Dear Heather & Martin

The Forensic Loan Audit for your loan has been completed. The examination has covered all documents provided. These include any Broker Disclosures, Lender Disclosures, Closing Documents and Settlement Papers provided.

The scope of the examination is limited to a determination of the accuracy and compliance of the loan documentation with Federal, State, and Local laws as they may apply to the loan. Particular attention to discovery of evidence that would support legal action against the current lender(s) to either modify, or rescind the existing loan(s), or in the event of an executed foreclosure, overturn the action.

The actual audit will be broker down into different parts.

1. Section One will apply to the actual audit itself.
2. Section Two will cover Foreclosure issues with the loan.
3. Section Three will cover the "battles" to be fought, Securitization and MERS.

The purpose of breaking down the audit into several different parts is to offer attorneys a manner whereby they can plan a strategy to bring lenders "to the table". Current strategies based upon just Truth In Lending and RESPA violations are proving difficult to achieve because lenders know what to expect and when confronted with court actions, will simply have the case "remanded" to Federal Courts where they tend to get more favorable results. As a result, Examiner will focus on possible actions using State Civil Codes and allegations.

# SECTION 1 : LOAN AUDIT

## *PART 1: Broker & Lender Initial Findings*

## Broker Findings



# Loan Fraud Investigations

### _Licensing_

Examiner has investigated the licensing status of I T Mortgage. He has been unable to find a record of I T being licensed in Michigan. If the broker was unlicensed in Michigan, then he is in violation of Michigan Real Estate Law

### _Initial Disclosures_

Examiner was not provided with the broker's early disclosures examination. The disclosures are mandated under _12 C.F.R. 226.23(a) (3), 6500 - FDIC § 226.19, and Truth In Lending Act (15 USC 1601 et seq.)._ If you were not provided these disclosures within three business days from the date of the original loan application, you will be required to complete an affidavit testifying to that affect.

The following codes apply to broker disclosures.

_6500 – Federal Deposit Insurance Corporation Consumer Protection, § 226.18 (c) § 226.19 § 226.18 (c) Itemization of amount financed. (Good Faith Estimate)_ § 226.19 (a) _Residential mortgage transactions subject to RESPA.--_(1) _Time of disclosures._ In a residential mortgage transaction subject to the _Real Estate Settlement Procedures Act (12 U.S.C. 2601 et seq.)_ the creditor shall make good faith estimates of the disclosures required by _§ 226.18_ before consummation, or shall deliver or place them in the mail not later than three business days after the creditor receives the consumer's written application, whichever is earlier.

_Truth in Lending Act (TILA), 15 United States Code 1601 et seq_
The purpose of TILA is "to assure meaningful disclosure of credit terms to enable consumers to become informed about the cost of loans and to compare the credit options available to them. If the interest rate is not fixed, then the Truth in Lending Disclosure Statement must inform the borrower of the variable rate feature of the loan. Additionally, the First and Fifth Circuits have held that "a misleading disclosure is as much a violation of TILA as a failure to disclose at all." Smith v. Chapman, 614 F.2d 968, 977 (5th Cir. 1980); Barnes v. Fleet Nat'l Bank, 370 F.3d 164, 174 (1st Cir. 2004) (quoting Smith v. Chapman).

_Truth In Lending Act (15 United States Code 1601 et seq.)_
The purpose of TILA is to promote the informed use of consumer credit by requiring disclosures about its terms, cost to standardize the manner in which costs associated with borrowing are calculated and disclosed. TILA requires uniform or standardized disclosure of costs and charges so that consumers can shop and compare. Misleading or misrepresentation of those charges voids the consumer's ability to shop for comparable loan products that may be available through other lenders. The regulation prohibits certain acts or practices in connection with credit secured by a consumer's principal dwelling.

 # Loan Fraud Investigations

*12 Code of Federal Regulations. 226.23(a)(3).*
Failure to make clear, conspicuous, and accurate material disclosures also triggers an extended right of rescission. Material disclosures include the: (1) annual percentage rate, (2) finance charge, (3) amount financed, (4) total payments, (5) or payment schedule.

*24 Code of Federal Regulations 3500.6(a).*
Requires certain disclosures such as but not limited to Good Faith Estimate, Truth-in-Lending, Servicing Transfer, Adjustable Rate Booklet, Right to Copy of Appraisal, Federal Equal Opportunity,

and various other exhibits to be provided to the borrower with in three business days from date of original application (early disclosures).

## *Lender Findings*

### *Licensing*

I have investigated the lender's licensing status at the time of the consummation of this loan and have determined that BNC was properly licensed in the State of Michigan.

### *Lender Initial Disclosures*

Under Federal RESPA and TILA law, upon receipt of an application from a broker or borrower, a lender has three days to issue required disclosures. In this loan, the Examiner has seen his most confusing set of disclosures that he has send.

1. Examiner notes initial disclosures from Option One Mortgage, dated Feb 15, 2005. These disclosures were a Good Faith Estimate and a Truth In Lending Disclosure. The interest rate quoted was 9.15%. The Index quoted was 3.026%. Initial payments were $2,054.91
2. A second set of documents, dated March 16, 2005, from BNC were found. These disclosures were apparently the Final Disclosures.
3. Loss Payee named in Final Closing Instructions was Option One Mortgage.

### *Conclusion*

Examiner has tried to understand what went on with the disclosures mentions above. He believes that the loan was originally submitted to Option One, where it was likely turned down. The loan was later submitted to BNC Mortgage, who used an Option One Warehouse line. The borrowers were approved by BNC at a higher rate, and the loan was sold to Option One.

 # Loan Fraud Investigations

Examiner found no evidence of initial disclosures from BNC Mortgage, however this is not unusual. Often, borrowers will not retain lender disclosures, not realizing the importance of them.

Use caution when alleging this, for the lender will usually be able to provide copies of initial disclosures sent.

*6500 – Federal Deposit Insurance Corporation Consumer Protection, § 226.18 (c) § 226.19 § 226.18 (c) Itemization of amount financed. (Good Faith Estimate) § 226.19 (a) Residential mortgage transactions subject to RESPA.*--(1) *Time of disclosures.* In a residential mortgage transaction subject to the *Real Estate Settlement Procedures Act (12 U.S.C. 2601 et seq.)* the creditor shall make good faith estimates of the disclosures required by *§ 226.18* before consummation, or shall deliver or place them in the mail not later than three business days after the creditor receives the consumer's written application, whichever is earlier.

## *Truth in Lending Act (TILA), 15 United States Code 1601 et seq*
The purpose of TILA is "to assure meaningful disclosure of credit terms to enable consumers to become informed about the cost of loans and to compare the credit options available to them. If the interest rate is not fixed, then the Truth in Lending Disclosure Statement must inform the borrower of the variable rate feature of the loan. Additionally, the First and Fifth Circuits have held that "a misleading disclosure is as much a violation of TILA as a failure to disclose at all." Smith v. Chapman, 614 F.2d 968, 977 (5th Cir. 1980); Barnes v. Fleet Nat'l Bank, 370 F.3d 164, 174 (1st Cir. 2004) (quoting Smith v. Chapman).

## *Truth In Lending Act (15 United States Code 1601 et seq.)*
The purpose of TILA is to promote the informed use of consumer credit by requiring disclosures about its terms, cost to standardize the manner in which costs associated with borrowing are calculated and disclosed. TILA requires uniform or standardized disclosure of costs and charges so that consumers can shop and compare. Misleading or misrepresentation of those charges voids the consumer's ability to shop for comparable loan products that may be available through other lenders. The regulation prohibits certain acts or practices in connection with credit secured by a consumer's principal dwelling.

## *12 Code of Federal Regulations. 226.23(a)(3).*
Failure to make clear, conspicuous, and accurate material disclosures also triggers an extended right of rescission. Material disclosures include the: (1) annual percentage rate, (2) finance charge, (3) amount financed, (4) total payments, (5) or payment schedule.

## *24 Code of Federal Regulations 3500.6(a).*
Requires certain disclosures such as but not limited to Good Faith Estimate, Truth-in-Lending, Servicing Transfer, Adjustable Rate Booklet, Right to Copy of Appraisal, Federal Equal Opportunity,

 # Loan Fraud Investigations

and various other exhibits to be provided to the borrower with in three business days from date of original application (early disclosures).

# PART 2: Underwriting

The purpose of an underwriter is to determine whether the borrower can qualify for a loan and if the borrower has the ability to repay the loan. This determination of the ability to repay a loan is based upon employment and income in large measure, which is proved by getting pay stubs, 1040's, W-2's and a Verification of Employment and Income on the borrowers.

If an underwriter has evaluated the loan properly, then there should be no question of the ability of the borrower to repay the loan. Debt ratios will have been evaluated, credit reviewed and a proper determination of risk made in relation to the loan amount. Approvals and denials would be made based upon a realistic likelihood of repayment.

## Automated Underwriting Systems

The underwriter's role in approving loans has been delegated to a support role in the past decade. Automated Underwriting Systems became the normal approval method. An underwriter or even a loan officer would simply input the data and the system would give an approval or denial. Any documents requested would be gathered and then loan documents drawn and signed.

The real issue with the automated systems is that they were not designed to be the "final word" in approval. The system approval was designed to be a guide, a preliminary approval and nothing more. After approval was received, the underwriter would then be expected to extensively review the file, closely examining the documents for final approval.

It must be noted that most experienced underwriters knew when a loan made sense or not. It has been reported many times that underwriters would decline the loans and then brokers or lender account representatives would quickly go over the head of the underwriter and get the decision reversed by the underwriter supervisor. This led to large numbers of experienced underwriters leaving the industry.

Examiner will be reviewing this file as an experienced underwriter would review it.

## Loan Application – Key Points

Examiner had no loan application to review.



# Loan Fraud Investigations

## _Underwriting_

### _Income and Credit Criteria_

**1. The ability to pay.** Did the borrower make enough income to support the loan? Were debt ratios appropriate? 32% housing ratio and 38% total debt ratio? Was the home being purchased no more than three times yearly income? Did a decent down payment exist?

Analysis of the loan documents indicate that this was a full documentation loan. Without an appraisal, it was impossible to determine debt ratios, and conduct a real income analysis. What is known is that BNC used a total debt ratio of 50% to qualify.

**Note:** This loan was approved as an Interest Only loan, and on a two year fixed rate program. It is likely that this was the only loan that the borrowers could have qualified under, based upon the examiners experience. It is likely that the borrowers were not evaluated on their ability to repay the loan after the interest rate adjusts and the interest only period expires.

**2. Willingness to pay.** Did their credit histories show a pattern of being able to pay credit on time? If there were credit issues, were their extenuating circumstances to explain the problems? Was credit used appropriately?

No credit scores were available for review.

**3. Stability.** Did the borrower's job history show a pattern of reliability and stability? Did it appear that the borrower would be likely to remain in the position and continue to thrive?

Employment history was unavailable.

## _Risk Layering_

Risk layering is the concept of borrowers having multiple elements of risk in any one loan. Risk would be greater as the different factors that lenders should be concerned about were found in each loan. The more layers of risk, the greater the likelihood of default. Layers of risk in this loan include....

### _Risk Factors_



# Loan Fraud Investigations

1. Lack of true determination of the ability to repay the loan
2. 100% loan to value ratios
3. Interest Only Payments
4. 2 Year adjustable rate mortgage

This loan has an increased level of risk as reflected by the above factors. These factors necessarily should lead to increased scrutiny of the approval process, including more extensive documentation of income.

### _Compensating Factors_

unknown

## _Appraisal_

Examiner had no appraisal to review.

## _Summary of Underwriting Decision by Examiner_

Examiner has reviewed the approval process of this loan. He cannot arrive at a firm conclusion, but he suspects that the borrowers were approved on the extreme edges of qualification guidelines.

Several statutes have addressed the issue of the ability to repay a loan, as well as risk determination. These are...

### _Paragraph 34(a)(4) Repayment ability.TILA 226.34 (A) (4)_

**2. Pattern or practice of extending credit—repayment ability.** Whether a creditor is engaging or has engaged in a pattern or practice of violations of this section depends on the totality of the circumstances in the particular case. While a pattern or practice is not established by isolated, random, or accidental acts, it can be established without the use of a statistical process. In addition, a creditor might act under a lending policy (whether written or unwritten) and that action alone could establish a pattern or practice of making loans in violation of this section.

**3. Discounted introductory rates.** In transactions where the creditor sets an initial interest rate to be adjusted later (whether fixed or to be determined by an index or formula), in determining repayment ability the creditor must consider the consumer's ability to make loan payments based on the non-discounted or fully-indexed rate at the time of consummation.



# Loan Fraud Investigations

_12 Code Federal Regulations 30_

II. OPERATIONAL AND MANAGERIAL STANDARDS

C. Loan documentation. An institution should establish and maintain loan documentation practices that:

1. Enable the institution to make an informed lending decision and to assess risk, as necessary, on an ongoing basis;

2. Identify the purpose of a loan and the source of repayment, and assess the ability of the borrower to repay the indebtedness in a timely manner;

5. Take account of the size and complexity of a loan.

D. Credit underwriting. An institution should establish and maintain prudent credit underwriting practices that:

1. Are commensurate with the types of loans the institution will make and consider the terms and conditions under which they will be made;

Provide for consideration, prior to credit commitment, of the borrower's overall financial condition and resources, the financial responsibility of any guarantor, the nature and value of any underlying collateral, and the borrower's character and willingness to repay as agreed;


_5000 – FEDERAL DEPOSIT INSURANCE CORPORATION Statements of Policy -_ "When an institution offers nontraditional mortgage loan products, underwriting standards should address the effect of a substantial payment increase on the borrower's capacity to repay when loan amortization begins." "Ensure that loan terms and underwriting standards are consistent with prudent lending practices, including consideration of a borrower's repayment capacity;" "For all nontraditional mortgage loan products, an institution's analysis of a borrower's repayment capacity should include an evaluation of their ability to repay the debt by final maturity at the fully indexed rate, assuming a fully amortizing repayment schedule"


and

Risk-layering features in a subprime mortgage loan may significantly increase the risks to both the institution and the borrower. Therefore, an institution should have clear policies governing the use of risk-layering features, such as reduced documentation loans or simultaneous second lien mortgages. When risk-layering features are combined with a mortgage loan, an institution should demonstrate the existence of effective mitigating factors that support the underwriting decision and the borrower's repayment capacity.

Recognizing that loans to subprime borrowers present elevated credit risk, institutions should verify and document the borrower's income (both source and amount), assets and liabilities. Stated income and reduced documentation loans to subprime borrowers should be accepted only if there are mitigating factors that clearly minimize the need for direct verification of repayment capacity. Reliance on such factors also should be documented. Typically, mitigating factors arise when a borrower with favorable payment performance seeks to refinance an existing mortgage with a new loan of a similar size and with similar terms, and the borrower's financial condition has not deteriorated. Other mitigating factors might include situations

 # Loan Fraud Investigations

where a borrower has substantial liquid reserves or assets that demonstrate repayment capacity and can be verified and documented by the lender. However, a higher interest rate is not considered an acceptable mitigating factor.

### *Office of the Comptroller of the Currency Guidance Letter AL 2003-2*

.....a departure from fundamental principles of loan underwriting generally forms the basis of abusive lending: lending without a determination that a borrower can reasonably be expected to repay the loan from resources other than the collateral securing the loan, and relying instead on the foreclosure value of the borrower's collateral to recover principal, interest, and fees. A national bank that makes a loan to a consumer based predominantly on the liquidation value of the borrower's collateral, rather than on a determination of the borrower's repayment ability, including current and expected income, current obligations, employment status, and other relevant financial resources, is engaging in a fundamentally unsafe and unsound banking practice that is inconsistent with established lending standards.7 This practice not only increases the risk to the bank that the loan will default but may also increase the bank's potential loss exposure upon default.

### *Office of the Comptroller of the Currency Guidance Letter AL 2003-3*

.........the OCC believes that a fundamental characteristic of predatory lending is the provision of credit to borrowers who simply cannot afford the credit on the terms being offered. Typically, such credit is underwritten predominantly on the basis of the liquidation value of the collateral, without regard to the borrower's ability to service and repay the loan according to its terms, absent resorting to that collateral. When a loan has been made based on the foreclosure value of the collateral, rather than on a determination that the borrower has the capacity to make the scheduled payments in accordance with the terms of the loan, the lender is effectively relying on its ability to seize the borrower's equity in the collateral to satisfy the obligation (including accrued interest) and to recover the typically high fees associated with such credits

Predatory and abusive loans originated through brokers or by third-party lenders also present a wide range of heightened legal risks for national banks, and could subject them to both supervisory action and civil liability. For example, borrowers victimized by oppressive loan terms or other unscrupulous conduct of a mortgage broker or loan originator may have remedies against the ultimate creditor under common law theories of fraud or unconscionability.

In addition, predatory loans originated through mortgage brokers, or purchased from third-party lenders, may subject national banks to liability or supervisory action under a wide range of federal consumer protection laws. For example, in typical mortgage broker transactions, the loan will be closed in the name of the bank as the initial creditor, and thus, the bank generally will have direct liability for any violations of law committed in connection with the loan. In addition, the bank could be liable under agency, "common enterprise," or other theories for violations committed by the broker, and may be jointly and severally liable with the broker —for example, under the Real Estate Settlement Procedures Act (RESPA) — for



# Loan Fraud Investigations

violations it is deemed to commit in conjunction with the broker. Even in table-funded or purchase transactions, a bank may have liability for violations of law as a successor or assignee of the original creditor.

It is now readily apparent after reading the above excerpts and regulations that underwriting for this loan was flawed. There was no determination of the ability of the borrower to repay the loan, with complete disregard for the Guidance Letters issued by Federal Agencies and even Federal and State Law. This disregard for the borrower leads to the potential for legal action under many different legal statutes, UDAP laws, and common law principles.

The failure to adequately underwriter this loan could be actionable under

_Michigan Comp Laws 445.901 through 445.922 Consumer Protection Act_

Causes of action could include:

Fraud for stated income by the broker.
Aiding and abetting by the lender for allowing the stated income loan.
Lack of due diligence by the lender in approving the loan.
Lack of Good Faith and Fair Dealings by the Lender.
Fiduciary Duty by the broker for doing a loan where it could lead to default.
Unconsciousability by the lender for doing the loan.

## Fraud in the factum

**Fraud in the Factum** is a type of fraud where misrepresentation causes one to enter a transaction without accurately realizing the risks, duties, or obligations incurred. Black's Law Dictionary (2nd Pocket ed. 2001 pg. 293). This can be when the maker or drawer of a negotiable instrument, such as a promissory note or check, is induced to sign the instrument without a reasonable opportunity to learn of its fraudulent character or essential terms. Determination of whether an act constitutes fraud in the factum depends upon consideration of "all relevant factors." Fraud in the factum usually voids the instrument under state law and is a real defense against even an holder in due course.

# Part 3: Closing Documents

Examiner has inspected the Closing Instructions and the Settlement Statement and other significant documents. Findings are:

 # Loan Fraud Investigations

## _Truth In Lending Accuracy_

### _First Mortgage_

Examiner has reviewed the Final Truth In Lending and also recalculated the Truth In Lending for accuracy.

Final Truth in Lending Apr 5, 2006

| APR | Amount Financed | Finance Charge | Total Payments |
|---|---|---|---|
| 10.064% | 272.250.72 | 613,799.64 | 885,050.36 |

Recalculated Truth in Lending

| APR | Amount Financed | Finance Charge | Total Payments |
|---|---|---|---|
| 10.107% | 271,270.52 | 639,151.06 | 910,401.78 |

Examiner has been unable to determine the Index Value that the lender used for calculating the Truth In Lending Disclosure. His own calculations show that the correct Index was for Feb 2005, and with a value of 3.1495%.

The failure to adequately underwriter this loan could be actionable under _Michigan Comp Laws 445.901 through 445.922 Consumer Protection Act_

## _Settlement Statement_

Examiner has reviewed a Settlement Statement dated Mar 14, 2005. He is entirely confused by it. He can only conclude that this statement is for another loan, since it is so different from the Closing Costs in the Closing Instructions dated the date after, Mar 15, 2005.

Examiner recommends that the Final Settlement Statement be obtained and reviewed.

 # Loan Fraud Investigations

## Fair and Accurate Credit Transaction Act of 2003

Credit Scoring Information: The credit scoring information that must be provided to the consumer is set forth in Section 212(b) of the FACT Act, which amends Section 609 of the FCRA by adding a new subsection (f). The credit scoring information must include the following:

1. The current credit score of the consumer or the most recent credit score of the consumer that was previously calculated by the credit reporting agency for a purpose related to the extension of credit;

2. The range of possible credit scores under the model used;

3. All of the key factors that adversely affected the credit score of the consumer in the model used, the total number of which shall not exceed four (4), unless a key factor that adversely affects the consumer's credit score consists of the number of enquiries made with respect to a consumer report. In this case, then five (5) key factors may be listed;

4. The date on which the credit score was created; and

5. The name of the person or entity that provided the credit score or credit file upon which the credit score was created.

The purpose of disclosure of credit scores is to provide the client a way to determine if the loan program being offered is consistent with his credit worthiness. Failure to provide this disclosure prevents comparison of loans. Examination of the loan documents finds that the credit score was never revealed.

## Credit – Equal Opportunity Credit Act- Regulation B

Sec. 202.1 Authority, scope and purpose. (b) Purpose: The purpose of this regulation is to promote the availability of credit to all creditworthy applicants without regard to race, color, religion, national origin, sex, marital status, or age (provided the applicant has the capacity to contract); to the fact that all or part of the applicant's income derives from a public assistance program; or to the fact that the applicant has in good faith exercised any right under the Consumer Credit Protection Act. The regulation prohibits creditor practices that discriminate on the basis of any of these factors. The regulation also requires creditors to notify applicants of action taken on their applications; to report credit history in the names of both spouses on an account; to retain records of credit applications; to collect information about the applicant's race and other personal characteristics in applications for certain dwelling- related loans; and to provide applicants with copies of appraisal reports used in connection with credit transactions.



# Loan Fraud Investigations

_Section 202.4 – General Rule Prohibiting Discrimination_    1. Scope of section. The general rule stated in Sec. 202.4 covers all dealings, without exception, between an applicant and a creditor, whether or not addressed by other provisions of the regulation. Other sections of the regulation identify specific practices that the Board has decided are impermissible because they could result in credit discrimination on a basis prohibited by the act. The general rule covers, for example, application procedures, criteria used to evaluate creditworthiness, administration of accounts, and treatment of delinquent or slow accounts. Thus, whether or not specifically prohibited elsewhere in the regulation, a credit practice that treats applicants differently on a prohibited basis violates the law because it violates the general rule. Disparate treatment on a prohibited basis is illegal whether or not it results from a conscious intent to discriminate. Disparate treatment would be found, for example, where a creditor requires a minority applicant to provide greater documentation to obtain a loan than a similarly situated nonminority applicant. Disparate treatment also would be found where a creditor waives or relaxes credit standards for a nonminority applicant but not for a similarly situated minority applicant. _Treating applicants differently on a prohibited basis is unlawful if the creditor lacks a legitimate nondiscriminatory reason for its action, or if the asserted reason is found to be a pretext for discrimination._

Under the EOCA, a borrower is entitled to the same terms of credit issuance that another borrower of equal characteristics is entitled to. The lender placed borrower into a loan that had a significantly higher interest rate than what was qualified for. This was a result of paying a Yield Spread Premium to the broker in the amount of $5,600, in addition to the broker charging the borrower a loan origination fee of $5,600. The Yield Spread Premium increased the interest rate of the loan by 1%, and the monthly payment by $233.33 for two years. An increase in the interest rate and monthly payment, in order to receive a Yield Spread Premium, is a violation of the EOCA.

Additionally, according to the Conditional Loan Approval, the lender has also received a Yield Spread Premium of 2%, which is also equal to a 1% increase in the interest rate.

If the broker and the lender had not received Yield Spread Premium, the interest rate would have been 7.75% for the first two years a monthly payment difference of $700 per month.

# _Yield Spread Premium – Unearned Fees – Unjust Enrichment_

Yield Spread Premium was originally designed as a method to offset the costs of doing a loan by placing the borrower into a loan with an interest rate higher than what they qualified for. The higher rate would involve the broker receiving a Yield Spread Premium that would then be "given" to the borrower as a "credit for closing costs".



# Loan Fraud Investigations

Since inception, the purpose of the Yield Spread Premium has been completely subverted. It is now used as a method for the broker to receive an additional compensation for doing the loan. Typically, if discovered by the borrower, she is told that the lender is paying the Yield Spread Premium, not the borrower. The borrower is not advised that she is actually paying a higher interest rate than what he would otherwise get.

## HUD 2 Part Test for YSP

HUD's 1999 Statement of Policy established a two-part test for determining the legality of lender payments to mortgage brokers for table funded transactions and Intermediary transactions under RESPA: (1) whether goods or facilities were actually furnished or services were actually performed for the compensation paid and; (2) whether the payments are reasonably related to the value of the goods or facilities that were actually furnished or services that were actually performed. In applying this test, HUD believes that total compensation should be scrutinized to assure that it is reasonably related to the goods, facilities, or services furnished or performed to determine whether it is legal under RESPA.

Examiner has reviewed the HUD Two Part Test. He finds that the broker has passed the first part of the test for performance of work done.

Examiner finds that the broker has failed Part 2, the test for reasonableness of fees. Examiner concludes that the Yield Spread Premium is an Unearned Fee under the below statutes.

The payment of the Yield Spread Premium could also be actionable under the
*Michigan Comp Laws 445.901 through 445.922 Consumer Protection Act*

## Contractual Interference

By paying the broker a Yield Spread Premium to bring a loan to a lender, and the loan having an interest rate higher than what the borrower could have qualified for, the lender has engaged in a practice of interfering with the Fiduciary Duty of the broker to the borrower.

## Unjust Enrichment

Borrowers had an implied contract with the lender and the broker in which borrowers would understand all fees and for them to not be charged fees not related to the settlement of the loan and without full disclosure.

Broker and lender knew that a "bait and switch" adjustable rate predatory mortgage with an increase in interest rate due to the YSP paid to the broker was not in the best interests of the borrower.

 # Loan Fraud Investigations

## *Part 4: Borrower, Broker, Lender Relationship — Assignee Status*

Examiner has been concerned for a great length of time about the duties of the loan officer or loan broker to the borrower. Most have held the opinion that because the Mortgage Loan Origination Agreement claims that they are independent contractors and only do loans, that there is no fiduciary relationship between the broker and the borrower. This is even in the face of the Fiduciary Duties that are acknowledged in Realtor/Buyer relationships.

Examiner has always believed that a fiduciary duty exists between a broker and a borrower. This belief is based upon a number of factors including the fact that brokers and loan officers are licensed, considered professionals by those inside and outside the industry, and viewed by the clients as representing the borrower's interests. To deny such would relegate the broker/loan officer to the status of a "Used Car Salesman".

The National Association of Mortgage Brokers has adopted a Code of Ethics which requires, among other things, that the broker's duty to the client be paramount. Paragraph 3 of the Code of Ethics states:

In accepting employment as an agent, the mortgage broker pledges himself to protect and promote the interest of the client. The obligation of absolute fidelity to the client's interest is primary.

Pierce v. Hom, 178 Cal. Rptr. 553, 558 (Ct. App. 1981) (mortgage broker has duty to use his expertise in real estate financing for the benefit of the borrower);

Wyatt v. Union Mtge. Co., 24 Cal.3d 773, 782, 157 Cal.Rptr. 392, 397, 598 P.2d 45 (1979).

## *The Duty*

The fiduciary duty of the broker (i.e. duty of trust) should be to deal with the consumer in good faith. If the broker knew or should have known that the Borrower will or has a likelihood of defaulting on this loan they have a fiduciary duty to the borrower to NOT place them in that loan (in harms way).

Additionally broker has a contractual duty of good faith and fair dealings with the lender which would be breached if they knowingly placed a loan with the lender failing to disclose the material fact that the borrower will likely default or file BK.

 # Loan Fraud Investigations

It is the opinion of the examiner that the broker may have violated his Fiduciary Responsibility to the borrower by

1. Placing the borrowers into their current loan product without regard for other products that might have suited the borrower better.
2. Placing the borrowers into a loan whereby it was likely the borrowers would default or incur bankruptcy as a result of the loan and it was reasonably foreseeable that such would occur.
3. Placing the borrowers into a loan without a realistic test of the ability of the borrowers to repay the loan.
4. Placing the borrower into a loan with a significantly higher monthly payment in order to receive a Yield Spread Premium.
5. Failing to provide initial disclosures.
6. Fraudulently inducing borrowers to enter into a mortgage transaction which was contrary to borrowers stated intentions, contrary to their interests, and contrary to the preservation of their home.

## *Agency*

Another issue that has bothered the examiner is the relationship between the broker and the lender. This relationship is especially bothersome when viewed in the following context:

Lender will pay a Yield Spread Premium to the broker as an inducement to bring them business.

Lender has "buy back" provisions in the broker agreements whereby for fraud or default, the broker may be required to "buy back" the loan.\

Lender/broker agreements reflect that the lender has some significant measure of control over the broker.

### *Wyatt v Union Mortgage, CA State Supreme Court, 1979*

*Montoya v. McLeod (1985) 176 Cal.App.3d 57, 64, 221 Cal.Rptr. 353,* held that a broker was the lenders' agent even though he had no written agency agreement with the lenders and was paid by a third party, because the broker negotiated the lenders' loan and executed a promissory note in their favor. *See also Vargas v. Ruggerio (1962) 197 Cal.App.2d 709, 17 Cal.Rptr. 568* (agency status may be shown by the parties' conduct and does not depend on proof of compensation);

 # Loan Fraud Investigations

*RICHARD MORRIS and YVONNE MORRIS, (Plaintiffs, ) NOVASTAR MORTGAGE, INC., ) COLUMBIA MORTGAGE, and LAURA T. WOODHEAD.*

"In determining whether an agency relationship exists, the primary issue is the principal's right to control the agent." Gunderson v. ADM Investor Servs., Inc., 2000 U.S. App. LEXIS 20971, at *5 (8th Cir. 2000). An agent's authority may be express, implied, or apparent. Actual authority exists if the principal has given the agent authority to act on its behalf either expressly or by implication. ASA-Brandt, Inc. v. ADM Investor Servs., 344 F.3d 738, 749 (8th Cir. 2003).

Apparent authority is "determined by what the principal does, rather than by any acts of the agent. Id. "Apparent authority is the power held by an agent or any other actor to affect a principal's legal relations with a third party when a third party reasonably believes the actor has authority to act on behalf of the principal and that belief is traceable to the principal's manifestations." Id. (quoting Restatement (Third) of Agency § 2.03). As discussed in the Brandt case, "the existence of documents disclaiming an agency relationship only negates the existence of actual authority; it does not however, affect the creation of an agency relationship through apparent authority." Brandt, 344 F.3d at 749-50.

In this case, there is a Broker Agreement signed by both NovaStar and Columbia that disclaims an agency relationship between the two parties. There is at least a genuine issue of material fact as to whether there was an agency relationship created by apparent authority between Columbia and NovaStar, such that NovaStar may be held liable for Columbia's fraudulent misrepresentations. At this point in the case, it is clear from the Broker Agreement that NovaStar exercised significant control over the dealings of Columbia with third parties. Plaintiffs have also come forward with contradictory evidence as to whether Columbia was in fact acting as an agent on their behalf. Viewing these facts in favor of the non-moving party, the Court will deny summary judgment with respect to NovaStar's liability to the Morrises for Columbia's alleged fraudulent conduct. The Court believes that plaintiffs' fraud claim is pled with sufficient particularity pursuant to Federal Rule of Civil Procedure 9(b).

The examiner concludes that it is conceivable that the mortgage broker is an agent of both of the borrowers. Therefore, the mortgage broker has failed to disclose his Dual Agency Relationship as required by both CA statutes and RESPA.

Additionally, the lender now assumes a secondary liability for the actions of the broker under agency relationships.

# Part 5: Predatory Lending - Unfair Business Practices – Deceptive Business Acts

Examiner suggests that this loan be viewed through the prism of the following:



# Loan Fraud Investigations

### *Predatory Lending*

The terms "abusive lending" or "predatory lending" are most frequently defined by reference to a variety of lending practices.  Although it is generally necessary to consider the totality of the circumstances to assess whether a loan is predatory, *a fundamental characteristic of predatory lending is the aggressive marketing of credit to prospective borrowers who simply cannot afford the credit on the terms being offered.*

*Typically, such credit is underwritten predominantly on the basis of the liquidation value of the collateral, without regard to the borrower's ability to service and repay the loan according to its terms absent resorting to that collateral.* When a loan has been made based on the foreclosure value of the collateral, rather than on a determination that the borrower has the capacity to make the scheduled payments under the terms of the loan, based on the borrower's current and expected income, current obligations, employment status, and other relevant financial resources, the lender is effectively counting on its ability to seize the borrower's equity in the collateral to satisfy the obligation and to recover the typically high fees associated with such credit. Not surprisingly, such credits experience foreclosure rates higher than the norm.

While such disregard of basic principles of loan underwriting lies at the heart of predatory lending, a variety of other practices may also accompany the marketing of such credit.

Some Predatory Lending practices found in this loan:

### *Ability to Repay the loan*
See the Underwriting Section for the complete analysis on this loan.

### *Lack of Due Diligence in Underwriting*
Is underwritten without due diligence by the party originating the loan.  No realistic means test for determining the ability to repay the loan.  Lack of documentation of income or assets, job verification. Usually with Stated Income or No documentation loans, but can apply to full documentation loans.

### *High Debt Ratios*
This is the practice of approving loans with high debt ratios, usually 50% or more, without determining the true ability of the borrower to repay the loan.  Can often be seen with Prime borrowers approved through the Automated Underwriting Systems.

### *Excessive Fees and Rates*
Requires borrowers to pay interest rates, fees and/or charges not justified by marketplace economics in place at the time the lien was originated.

 # Loan Fraud Investigations

### *Inappropriate Loan Programs*

Is materially more expensive in terms of fees, charges and/or interest rates than alternative financing for which the borrower qualifies. Can include prime borrowers who are placed into subprime loans, negative or interest only loans. Loan terms whereby the borrower can never realistically repay the loan.

### *High Loan to Value loans*

Loans that are done with the borrower having little or no equity in the home. Usually Adjustable Rate Mortgages that the borrower will not be able to refinance out of when the rate adjusts due to lack of equity.

### *Deception, Fraud, Unconscionable*

Is marketed in a way that fails to fully disclose all material terms. Includes any terms or provisions which are unfair, fraudulent or unconscionable. Is marketed in whole or in part on the basis of fraud, exaggeration, misrepresentation or the concealment of a material fact. Includes interest only loans, Adjustable Rate loans, Negative amortization. HOEPA loans.

### *Fraudulently caused to execute loan documents*

Adjustable rate mortgage loan was an inter-temporal transaction on which Plaintiffs had only qualified at the initial teaser fixed rate, and could not qualify for the loan once the interest rate terms changed in two years.

### *Targeting*

Targeting inappropriate or excessively expensive credit products to older borrowers, to persons who are not financially sophisticated or who may be otherwise vulnerable to abusive practices, and to persons who could qualify for mainstream credit products and terms;

## *Office of the Comptroller of the Currency*

The Office of Comptroller of the Currency has been concerned with Predatory Lending for over a decade. They have addressed this issue time and again through Policy Letters that also address Unfair Business Practices and Deceptive Business Acts.

### *OCC Policy Letter AL 2003-2*

.....a fundamental characteristic of predatory lending is the aggressive marketing of credit to prospective borrowers who simply cannot afford the credit on the terms being offered. Typically, such credit is underwritten predominantly on the basis of the liquidation value of the collateral, without regard to the borrower's ability to service and repay the loan according to its terms absent resorting to that collateral.......The advisory also describes how certain abusive lending can involve unfair or deceptive practices and thus violate section 5 of the Federal Trade Commission Act (FTC Act)



# Loan Fraud Investigations

Using loan terms or structures – such as negative amortization – to make it more difficult or impossible for borrowers to reduce or repay their indebtedness;

Inadequate disclosure of the true costs, risks and, where necessary, appropriateness to the borrower of loan transactions;

## *Violations of the FTC Act and Unfair & Deceptive Acts and Practices*

National banks are subject to section 5 of the FTC Act, which makes unlawful "unfair or deceptive acts or practices" in commerce. The OCC has the authority to enforce section 5 with respect to national banks and to impose sanctions for violations in individual cases... Practices may be found to be deceptive and, therefore, unlawful under section 5 of the FTC Act if each of the following factors is present:

1. There is a representation, omission, act, or practice that is likely to mislead;
2. The act or practice would be likely to mislead a reasonable consumer (a reasonable member of the group targeted by the acts or practices in question); and,
3. The representation, omission, act, or practice is likely to mislead in a material way.

A practice may be found to be unfair and, therefore, unlawful under section 5 of the FTC Act if each of the following factors is present:

1. The practice causes substantial consumer injury, such as monetary harm;
2. The injury is not outweighed by benefits to the consumer or to competition; and
3. The injury caused by the practice is one that consumers could not reasonably have avoided.

The OCC letter reflects that in this loan, the lender has violated the following section of the FTC Act.

## *FTC Sec 5 § 45  Unfair methods of competition unlawful: prevention by Commission*

(a)Declaration of unlawfulness; power to prohibit unfair practices; inapplicability to foreign trade:  Unfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are hereby declared unlawful.

It must be noted that violations of the FTC Act are actionable only through government agencies. Private remedies are not available through FTC.

States have noted this issue and have responded by incorporating the FTC Act concepts of deception and unfairness, and by providing significant state and private remedies, and allowing for widespread redress of marketplace misconduct and abuse of consumers.



# Loan Fraud Investigations

The FTC Act can still play a major part with regard to UDAP statutes. This is due to an increasing acceptance of state courts to accept FTC enforcement actions at the national level as a form of precedence and/or guidance for state UDAP actions.

This leads to the Michigan Consumer Protection Act being used in place of FTC actions.

# SECTION 2: MERS & Securitization

This loan has been securitized and MERS has been named the beneficiary. MERS and Securitization is a very complicated study, but Examiner will attempt to bring light to it and place it into the context of lending and foreclosure. Future audits will be expanding on this section as more information reaches the light of day.

Key elements to look for in every loan:

1. Deed of Trust that names the Lender, Trustee, and the Beneficiciary.
2. Promissary Note which describes the terms of the loan.
3. Assignment of Beneficiary that transfers the beneficial interest in the loan to another party.
4. Substitution of Trustee that replaces the Trustee on the loan.
5. Notice of Default that begins the foreclosure process.
6. Notice of Trustee Sale that sets the date of the auction.

MERS is recognized as an entity cloaked in mystery. It is now being understood that MERS was created to eliminate the need for the executing and recording of assignment of mortgages, with the idea that MERS would be the mortgagee of record. This would allow "MERS" to foreclose on the property, and at the same time, assist the lenders in avoiding the recording of the Assignments of Beneficiary on loans sold. This saved the lenders money in manpower and the costs of recording these notes. It was also designed to "shield" investors from liability as a result of lender mis-conduct regarding the process of mortgage lending.

When a lender or servicer signs up to be a part of MERS, several people on the staff of the lender or servicer are "designated" to be Corporate Officers of MERS. This allows the lender or servicer to execute documents in MERS name. The typical process for a foreclosure under MERS is:

1. When the loan was closed, the Deed of Trust was executed naming MERS, Mortgage Electronic Registration Systems as the "beneficiary" or the "nominee for the beneficiary". The note was securitized, being sold to various entities, until it finally reaches the "final owner".

 # Loan Fraud Investigations

2. Once payments stop being made, the Servicer decides to initiate foreclosure. (They do not contact securitized owner for approval. Most of the time, they do not know who the true owner of the note is.)

1. Servicer downloads needed blank documents from the MERS website applicable for their state and fills in information.

2. Servicer takes the Notice of Default to the "designated MERS Corporate Officer" who signs the document and has it notarized and recorded. The Notary is likely an employee of the servicer/lender also.

3. Assignments of Beneficiary of the Deed of Trust are not recorded until after the foreclosure process has started.  This usually occurs when it becomes obvious that the foreclosure process will end up resulting in the Trustee Sale occurring. If reinstatement of the Note or Modification is likely; then the Assignment of Beneficiary will not be executed.

4. Hence, the foreclosure initiator is the Servicer, not MERS or the actual note owner.

It appears that MERS is simply an "artificial" entity designed to circumvent certain laws and other legal requirements dealing with mortgage loans.  By designating certain member employees to be MERS corporate officers, MERS has created a situation whereby the foreclosing agency and MERS "designated officer" has a conflict of interest.  Additionally, when the foreclosing documents are notarized, it appears that the notary is also an employee of the particular servicer or lender, establishing another conflict of interest.

The selection of MERS poses some very real questions about how it operates.  Some points:

1. MERS is named as the beneficiary and "holds only legal title to the interest granted by Borrower in this Security Instrument.........has the right: to exercise any or all of those interest, including, but not limited to, releasing and canceling this security instruments. **However, MERS has no true beneficial interest in the loan, not being entitled to payments from the borrowers.  Without having true beneficial interest, MERS is not the true owner of the Deed of Trust and Note, and therefore has no right to foreclose.**

2. MERS is not registered and licensed in CA.  Therefore, MERS may not be legally able to operate in CA.

3. MERS, or the Servicer, does not record the assignment of beneficiary as required by law, until the foreclosure process starts, and only when it appears that the borrower will not be able to reinstate the loan and then foreclosure is inevitable.

4. By failing to record assignments as they occur, there is a "broken chain of title".  This leads to an unperfected Chain of Title.

5. MERS, if not the true owner of the note, may not have the legal standing to execute the Assignment of Beneficiary.  This is especially important, since they do not receive payments from the note.  Yet it is MERS that is claimed to start the foreclosure process.

6. There is a question as to who has the notes in their possession. MERS did not keep the notes, but now appears to be doing so in some case.

7. MERS, by being named the beneficiary and the note being in possession of another party, has separated the Deed of Trust from the Note.  This creates a situation whereby

 # Loan Fraud Investigations

any attempt to foreclose is unlawful since foreclosure can only occur when the same party owns and has possession of both the note and the Deed of Trust.

8. MERS has argued in Florida that it owns the note, and in Nebraska as not owning the note. It appears that MERS changes position, depending upon the circumstances at hand.

Where does this lead with MERS?

## *Legal Standing*

In order for the lender to prove legal standing in connection with the loan transaction, the lender must show the entire chain of title of note and of mortgage or deed of trust.

There are three likely scenarios that will be seen for legal standing:

1. Original lender still servicing the loan, holds note and mortgage. No assignments or sales. They would have legal standing.
2. Originating lender is actually mortgage broker, loan migrates to senior lending institution, to mortgage aggregator to investment banker to seller of securities to investor. Investor would have legal standing only.
3. Trustee in non-judicial sale states post notice of sale based upon information from a source that
   a. does not service the loan and therefore does not know if the borrower in default or not, and/or   (MERS is the perfect example)
   b. does not own the mortgage or cannot prove that it owns the mortgage. (Servicer)
   c. Does not own the note or cannot prove that it owns the note. (MERS, Servicer)

In most cases, an investor owns the mortgage and note and the people involved in the foreclosure don't have a clue as to which bundle of mortgages went into which bundle of securities and how many investors bought into that bundle of securities, and there are no proper assignment documents that were designed , much less signed in anticipation of being able to establish legal standing in sale foreclosure or eviction

4. Originating lender files foreclosure or posts notice of sale and does not have servicing right, ownership of mortgage or note.

Examiner suggests that MERS may not have the legal standing to foreclose.

## *Securitization Process*

 # Loan Fraud Investigations

Securitization is the name for the process by which the final investor for the loan ended up with the loan. It entailed the following:

1. Mortgage broker had client who needed a loan and delivered the loan package to the lender.
2. The lender approved the loan and funded it. This was usually through "warehouse" lines of credit. The lender hardly ever used their own money instead using the warehouse line that had been advanced to the lender by major Wall Street firms like J.P. Morgan.
3. The lender "sold" the loan to the Wall Street lender, earning from 2.5 – 8 points per loan. This entity is known also as the mortgage aggregator.
4. The loan, and thousands like it, are sold together to an investment banker.
5. Investment banker sells the loans to a securities banker.
6. Securities banker sells the loans to the final investors, as a Securitized Instrument, where a Trustee is named for the investors, and the Trustee will administer all bookkeeping and disbursement of funds.

The issue with the securitization process is that when the Securitized Instrument was sold, it was split apart and sold in tranches, (in slices like a pie). There were few or no records kept of which notes went into which tranche. Nor were there records of how many investors bought into each particular tranche.

Additionally, there were no assignments designed or signed in anticipation of establishing legal standing to foreclose.

## *Securitization Loan Methodology & Purpose*

When mortgage loans were made and then turned into negotiable securities sold to Wall Street, the loans were funded, packaged together and sold to Wall Street, or at least that was the way it was explained. The methodology is much different that what is customarily believed.

Wall Street (Wall Street Investment Banks) decided that loan securitization was a new investment tool whereby they could lure investors into buying subprime and other loans as a new investment vehicle. This would provide the investor with a good Rate of Return on investments, while providing Wall Street with a new method of generating commissions. It has generally been assumed that these funds consisted of Wall Street's own funds, but that is far from the truth. The methodology for Securitization is:

1. Wall Street, after the 2000 Dot.com crash, had large amounts of money sitting on the sidelines, looking for new investment opportunities. Returns on Investments were dismal, and investors were looking for new opportunities. Wall Street recognized that creating Special Investment Vehicles, offered a new investment tool that could generate large commissions.

 # Loan Fraud Investigations

2. Wall Street created pooling agreements where they defined in the agreements the loans that they would accept for each investment vehicle. They executed agreements with the lenders and then immediately issued warehouse lines of credit to the lenders.
3. Lenders then let brokers know the loan parameters to meet the pooling agreement guidelines and the brokers went out and found the borrowers.
4. Wall Street took all the loans, packaged them up and sold them as bonds and other security instruments to other investors, i.e. Joes Pension, and paid off original investors or reissued new line of credit, and earned commissions on both ends.
5. The process was repeated time and again.
6. What we do know now is that in most cases, the reality is that the reported lender on the Deed of Trust was NOT the actual lender. The actual lender who lent the money was the Wall Street Investment Bank. They simply _rented_ the license of the lender, so that they would not run afoul of banking regulations and/or avoid liability and tax issues. For all purposes, Wall Street was the true lender and there are arguments that suggest that Disclosures should have been required naming Wall Street as the lender.

This explains securitization in a very simplistic manner.

## _Pooling Agreements_

Pooling Agreements were created to govern the Investment Vehicles. These Agreements set the standard for what would be accepted into the pool. They described the way the pool would operate, the mechanics of repayment, the substitution of bad loans by good loans, and other necessary parameters regarding the transaction.

There appears to be only one set of master agreements executed by the lender, the mortgage aggregation and the trustee of the pool of assets. The date of these agreements will almost always precede the date that the mortgage and note came into existence, and will without exception predate the date of default.

This offers the arguments as to what assignment is valid, and whether third parties, aggretators, were hiding at the closing, and if third party payments were hidden at closing. All violate TILA.

Also, this would offer rescission rights since the true lender was never disclosed.

## _UCC CODE_

§ 3-305. DEFENSES AND CLAIMS OF RECOUPMENT.

(a) Except as otherwise provided in this section, the right to enforce the obligation of a party to pay an instrument is subject to the following:



# Loan Fraud Investigations

(1) a defense of the obligor based on (i) infancy of the obligor to the extent it is a defense to a simple contract, (ii) *duress, lack of legal capacity, or illegality of the transaction which, under other law, nullifies the obligation of the obligor,* (iii) *fraud that induced the obligor to sign the instrument with neither knowledge nor reasonable opportunity to learn of its character or its essential terms, or* (iv) discharge of the obligor in insolvency proceedings;

(c) Except as stated in subsection (d), in an action to enforce the obligation of a party to pay the instrument, the obligor may not assert against the person entitled to enforce the instrument a defense, claim in recoupment, or claim to the instrument (Section 3-306) of another person, but the other person's claim to the instrument may be asserted by the obligor if the other person is joined in the action and personally asserts the claim against the person entitled to enforce the instrument. *An obligor is not obliged to pay the instrument if the person seeking enforcement of the instrument does not have rights of a holder in due course and the obligor proves that the instrument is a lost or stolen instrument.*

## Prove the Note – Possession of the Note

The foreclosing entity needs to produce the original Deed of Trust and Note to show that it does exist, and they have possession of it, or it is an unlawful foreclosure. They must also be able to show an entire Chain of Title with all Assignments.

### Supporting Case Law

Where the complaining party cannot prove the existence of the note, then there is no note.

Pacific Concrete F.C.U. V. Kauanoe, 62 Haw. 334, 614 P.2d 936 (1980),

GE Capital Hawaii, Inc. v. Yonenaka 25 P.3d 807, 96 Hawaii 32, (Hawaii App 2001),

Fooks v. Norwich Housing Authority 28 Conn. L. Rptr. 371, (Conn. Super.2000), and Town of Brookfield v. Candlewood Shores Estates, Inc. 513 A.2d 1218, 201 Conn.1 (1986).

Solon v. Godbole, 163 Ill. App. 3d 845, 114 Ill. Dec. 890, 516 N. E.2d 1045 (3Dist. 1987).

Staff Mortgage. & Inv. Corp., 550 F.2d 1228 (9th Cir 1977). "Under the Uniform Commercial Code, the only notice sufficient to inform all interested parties that a security interest in instruments has been perfected is actual possession by the secured party, his agent or bailee.

It is recommended that demands be made upon the foreclosing lender to prove that they have actual possession of the note. It the note no longer exists or cannot be found, then according to above case law, there is no note.

 # Loan Fraud Investigations

## *CONCLUSION*

The examiner has attempted to point out specific violations of statutes and codes related to this loan. He has also reviewed underwriting approval, fiduciary issues and even securitization issues. His focus has been not just on Truth In Lending and RESPA violations, but the more inclusive State Violations that can be used to keep any actions out of Federal Court.

Examiner suggests that the following causes of action should be reviewed to determine applicability regarding this loan.

*Unconscionability* for executing a loan whereby the lender and the broker knew that the likelihood of repayment was unlikely. Common Law, UCC 2-3202 and UDAP statutes. Johnson v Long Beach Mortgage, UDAP claim for debt ratio, age, education, comprehension, : Strong v Option One

*Duty of Good Faith and Fair Dealing* under UCC and Common Law. Lender and broker have only cared about executing a loan, without regard for the effects to the borrower. Providing a loan program whereby the borrower would face a situation whereby he would not be able to refinance in the future due to having a non-amortizing loan.

*Fiduciary Duties -* Failure by the broker to act in the best interests of the borrower.

*Unfair and Deceptive Acts and Practices* - CA B& P 17200 – Failure to properly disclose, misrepresentation, fraud, all inclusive actions

*Contractual Interference* with regard to Agency and Yield Spread Premium. Lender has induced the broker to break his fiduciary duty to the borrower by offering the broker a Yield Spread Premium to bring them a loan with a higher interest rate and payment.

*Improvident Extension of Credit -* Providing a loan to a borrower who had no realistic likelihood of repaying it, and did not meet qualifying standards.

*Unjust Enrichment*
Borrowers had an implied contract with the lender and the broker in which borrowers would understand all fees and for them to not be charged fees not related to the settlement of the loan and without full disclosure.

Broker and lender knew that a "bait and switch" adjustable rate predatory mortgage with an increase in interest rate due to the YSP paid to the broker was not in the best interests of the borrower.



# Loan Fraud Investigations

### Civil Conspiracy

Lender, broker and other parties have agreed, between and among themselves, to engage in one actions and a course of conduct designed to further an illegal act or accomplish a legal act by unlawful means and to commit one or more overt acts in further of the conspiracy to defraud.

### Civil RICO

The conspiracy, the subject of this action has existed from date of application to the present, with injuries and damages continuing.  The lender, and the use of multiple corporate entities, multiple parties and concerted and predetermined act and conduct specficially designed to defraud constitutes an enterprise with the aim and objectives of the enterprise being to perpetrate a fraud upon the borrow through the use of nondisclosure, material misrepresentation and creation of the fraudulent loan documents.

Please call with any questions that you might have.

Sincerely,

Patrick Pulatie
Forensic Document Examiner
925-522-0371

Disclosure: You have engaged me to examine your real estate documents. The recommendations and opinions entered herein by me are not intended as legal advice or counseling. You are advised to consult with an attorney in matters related to this examination and the report hereof. Thank you for your business. I look forward to being of further service.



# Loan Fraud Investigations

Print postage online – Go to usps.com/postageonline

PLEASE PRESS FIRMLY

PLEASE PRESS FIRMLY

PRIORITY MAIL
POSTAGE REQUIRED.

UNITED STATES POSTAGE
PITNEY BOWES
02 1P    $ 004.950
0003901359   FEB 09 2010
MAILED FROM ZIP CODE 48331

**PRIORITY MAIL**®
UNITED STATES POSTAL SERVICE

Flat Rate
Mailing™

For Domesti

UNITED WE STAND

Visit us at us

Any a
as the
entire
provid

INTE

4-PC
INTE

Cust
Intern
or as

DAILEY
LAW FIRM, P.C.
28000 WOODWARD AVE,
SUITE 201
ROYAL OAK, MI 48067

America's Servicing Company
CSC-Lawyers
601 Abbott Rd.
Lansing, MI  48823


Recycled
Paper

to Create Certification™ for their ecologically intelligent
design. For more information go to mbdc.com/vspa
Cradle to Cradle Certifiedⁿⁿⁿ is certification mark of MBDC.

Please recycle.