UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Martin Famatiga and,
Heather Kerchen-Famatiga,

    Plaintiffs,

v.                                          Case No. 10-10937

                                             Honorable Sean F. Cox

Mortgage Electronic Registration
Systems, Inc. (MERS), et al.

    Defendants.
_____/

OPINION & ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT

Plaintiffs Martin Famatiga and Heather Kerchen-Famatiga ("Plaintiffs") brought this action against Defendants Mortgage Electronic Registration Systems, Inc. ("MERS"), U.S. Bank National Association ("U.S. Bank"), America's Servicing Company ("ASC"), BNC Mortgage, and IT Mortgage (together, "Defendants") in Livingston County Circuit Court.[1]  Plaintiffs alleged twelve violations of state and federal law relating to Plaintiffs' mortgage agreement. Defendants removed this action to this Court, asserting federal question jurisdiction.  On March 25, 2010, the Court remanded all of Plaintiffs' state-law claims.  The matter is currently before the Court on Defendants MERS, U.S. Bank National Association, and America's Servicing Company's Motion for Summary Judgement on the remaining federal claims.  The parties have

---

[1]Any claims against BNC Mortgage are stayed because BNC Mortgage filed for Chapter 11 bankruptcy on January 9, 2009.  According to Plaintiff, Defendant IT Mortgage is no longer in operation.  (Plf's Resp, Doc. No. 26 at 4).

1

fully briefed the issues and the Court heard oral argument on July 7, 2011.  For the following reasons, the Court shall GRANT Defendants' Motion for Summary Judgment.

## BACKGROUND

On March 16, 2005, Plaintiffs executed an adjustable rate note with BNC Mortgage. (Def' Facts, Doc. No. 20, Ex. 1, 3).  Plaintiffs also executed a mortgage with MERS as the mortgagee and as "nominee" for its lenders.  *Id*.  The addendum to the note, executed the same day as the note, indicates that Plaintiffs' interest rate was set to change every six months, beginning on April 1, 2007.  (Def's Facts, Ex. 1).  ASC began servicing the loan on July 1, 2005.  *Id*. at 2.

In 2007, Plaintiffs stopped making payments on their note.  After failing to make these payments, Plaintiffs entered into a Special Forbearance Agreement in order to bring their loan current.  *Id*. at 4.  The agreement required Plaintiffs to make three payments of $2,657.53, followed by one payment of $18,151.22.  Plaintiffs were unable to make the final payment of $18,151.22 and defaulted on the Special Forbearance Agreement.  *Id.*  Defendants state that Plaintiffs have not made a payment toward their loan since August 2008.

On February 15, 2008, MERS assigned the mortgage to U.S. Bank.  *Id*. at 3.  On April 8, 2008, Plaintiffs, through their attorney, sent correspondence to ASC requesting a loan modification.  (Def's Facts, Ex. 13).  On April 28, 2008, ASC responded by referring Plaintiffs to its Loss Mitigation Department.  (Def's Facts, Ex. 14).  On November 25, 2008, Plaintiffs sent a Qualified Written Request to ASC, pursuant to Section 6 of RESPA. (Def's Facts, Ex.15).  On February 13, 2009, Plaintiff again, through their attorneys, sent another Qualified Written Request to ASC.  *Id*.  Plaintiffs contend that Defendant did not respond to either of their

Qualified Written Requests.

Plaintiffs filed for bankruptcy on January 2, 2009, and ASC moved for relief from the bankruptcy stay in order to foreclose on Plaintiffs' property. (Def's Facts at 5). Plaintiffs did not respond to ASC's motion and the bankruptcy court granted ASC's motion for relief from the bankruptcy stay. *Id.* Plaintiffs' bankruptcy case was closed on July 7, 2009. ASC published multiple notices of its intention to sell Plaintiffs' property at a sheriff's sale scheduled for December 9, 2009.

On December 2, 2009, Plaintiffs filed this action in Livingston County Circuit Court. *Id.* Plaintiffs property was subsequently sold at sheriff's sale on December 9, 2009. *Id.* Plaintiffs failed to redeem the property by the close of the redemption period, which ended on June 9, 2009. *Id.* at 5-6.

U.S. Bank initiated eviction proceedings in 53rd District Court and Plaintiffs motioned for a stay of the eviction proceedings pending the outcome of this case. *Id.* at 6. The court granted Plaintiffs' request for a stay.

On August 3, 2010, Plaintiffs again filed for bankruptcy.

STANDARD OF REVIEW

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56 (c). The party seeking summary judgment has the initial burden of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admission on file together with the

affidavits which it believes demonstrate the absence of a genuine issue of material fact. *Celotex v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quoting FED. R. CIV. P. 56(e)). In deciding a motion for summary judgment, a court must view the evidence and draw all reasonable inferences in favor of the nonmoving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## ANALYSIS

On March 25, 2010, this Court remanded Plaintiffs' state-law claims to state court. (Doc. No. 9). The following five claims from Plaintiffs' complaint are now before the Court: Truth in Lending Act Violations (Count VI); Violations of Home Ownership Equity Protection Act (Count VII); Violations of Real Estate Settlement Procedures Act (Count VIII); Violation of Fair Debt Collection Procedures Act (Count IX); and Violations of Equal Credit Opportunity Act (Count XI). The majority of Plaintiffs' claims are rooted in allegations that Plaintiffs were subject to predatory lending practices by Defendants.

**I.     Standing Issue**

As an initial matter, Defendants challenge Plaintiffs' standing to make any claims with respect to the property. Defendants cite a number of cases to support their assertion that "[o]nce the redemption period expire[s], all of plaintiff's rights in and the title to the property [are] extinguished." *Overton v. Mortgage Electronic Registration Systems,* 2009 WL 1507342 at *2 (Mich.App. 2009). In all the cases cited by Defendants, however, the foreclosure was not challenged by the plaintiff until after the redemption period expired.

In this case, Plaintiffs filed their complaint claiming wrongful foreclosure and fraud, along with violations of federal law, six months before the redemption period expired. Plaintiffs filed their complaint in state court on December 2, 2009 and the sheriff's sale did not occur until December 9, 2009. Plaintiffs' challenge to the foreclosure occurred well before the expiration of the redemption period on July 9, 2009. Therefore, Plaintiffs had standing to challenge the foreclosure at the time they filed their complaint.[2]

## II.    Plaintiffs' Claims are Not Precluded by Judicial Estoppel.

Next, Defendants contend that Plaintiffs' claims are precluded by judicial estoppel because Plaintiffs failed to disclose the instant litigation in Plaintiffs' two bankruptcy proceedings. The first bankruptcy proceeding was filed on January 2, 2009 and was closed on July 7, 2009 – almost five months before Plaintiffs filed this action. Plaintiffs filed their second bankruptcy petition on August 3, 2010. As of March 1, 2011, the date that Plaintiffs filed their response brief, Plaintiffs second bankruptcy case was still pending.

Plaintiffs, however, state that the litigation was not disclosed in the first bankruptcy because Plaintiffs did not yet know the extent of their claims against Defendants. With respect to Plaintiffs' second bankruptcy proceeding, Plaintiffs contend that the bankruptcy court is fully aware of the instant lawsuit.

Judicial estoppel forbids a party from taking a position inconsistent with one

---

[2]In their response to Defendants' motion, Plaintiffs make a number of lengthy counter-allegations, asserting that MERS did not have standing to foreclose on Plaintiffs property because it did not have any rights in the promissory note. Alternatively, Plaintiffs contend that U.S. Bank did not have standing to foreclosure on Plaintiffs' property because MERS held no valid interest in the mortgage to which it could assign to U.S. Bank. The Court need not address these issues because they are not currently before the Court. This Court remanded the state-law wrongful foreclosure claim to state court.

5

"successfully and unequivocally" asserted by the same party in a prior proceeding. *Great Earth Companies, Inc. v. Simons*, 288 F.3d 878, 892 (6th Cir. 2002). The Sixth Circuit has previously determined that a party's "failure to disclose an asset in a previous bankruptcy proceeding qualifies as a 'position' of the party in the previous proceeding." *Riddle v. Chase Home Finance*, 2010 WL 3504020 at *4 (E.D. Mich. 2010) (Lawson, J.) (citing *Reynolds v. Comm'r*, 861 F.2d 469, 473 (6th Cir.1988)). The absence of bad faith on the part of the inconsistent party prevents the application of judicial estoppel. *White v. Wyndham Vacation Ownership, Inc.*, 617 F.3d 472, 476-77 (6th Cir. 2010); *See also Eubanks v. CBSK Financial Group, Inc.*, 385 F.3d 894

(6th Cir. 2004).

With regard to Plaintiffs first bankruptcy proceeding, there does not appear to be any indicia of bad faith on the part of the Plaintiffs when they failed to disclose their intentions of filing a lawsuit against Defendants. Plaintiffs did not file the instant claim until almost six months after the close of Plaintiffs' first bankruptcy proceeding. Although the evidence indicates that while Plaintiffs' first bankruptcy case was pending the Plaintiffs knew of many of the facts upon which they base their claims, a good portion of Plaintiffs' claims revolve around Defendants' alleged "wrongful foreclosure" of Plaintiffs' home. Defendants did not notify Plaintiffs of the sheriff's sale until November 11, 2009 – more than four months after the close of Plaintiffs' first bankruptcy case. Additionally, Plaintiffs filed a "Statement Regarding Mortgage Claim" with the bankruptcy court, in which Plaintiffs notified the bankruptcy court of their belief that ASC did not have the right to foreclose on their home. (Def's Br., Ex. 18). Furthermore, as stated below, Plaintiffs immediately disclosed this lawsuit in the second

bankruptcy proceeding which was filed after Plaintiffs initiated this case. Thus, Defendants have failed to establish that Plaintiffs' failure to disclose their intentions to file the instant lawsuit was in bad faith.

With regard to Plaintiffs' second bankruptcy proceeding, Plaintiffs did, in fact, disclose the current litigation on their bankruptcy schedules. (*See* Def's Br., Ex. 20 at 5). Although this lawsuit is not listed under the "suits and administrative proceedings" portion of the bankruptcy schedule, it is disclosed under Plaintiffs Schedule B as an "other liquidated debt owed to debtor." *Id.* Plaintiffs further state that the bankruptcy court is "fully aware of each and every claim asserted by Plaintiffs" and that "specific hearings [on Plaintiffs' claims] have been held in the bankruptcy court."

For these reasons, the Court finds that Plaintiffs' claims are not barred by judicial estoppel.

### III.    Plaintiffs TILA Claims are Time-Barred.

In Count VI of their complaint, Plaintiffs allege that Defendants violated provisions of the Truth in Lending Act ("TILA") by failing to disclose certain charges on the TILA statement. Plaintiffs also allege that Defendants violated TILA by failing to provide Plaintiffs with a copy of the final HUD-1 statement, failing to provide Plaintiffs with two copies of a notice of right to rescind, improperly calculating Plaintiffs' annual percentage rate, and failing to consider Plaintiffs' ability to make payments. Under their TILA claim, Plaintiffs request that the Court allow recision of the note and mortgage and grant "additional relief that may be fair and just under the circumstances."

####     A.    Plaintiffs' Claim for Rescission is Time-Barred.

A borrower's right to rescind under TILA is subject to a three-year statute of limitations. *See* 15 U.S.C. § 1635. Plaintiffs executed the promissory note at issue in March of 2005 and did not file this action until December 2, 2009. Plaintiffs do not deny that their TILA claim is subject to the three-year statute of limitations, but instead contend that the statute of limitations should be equitably tolled because Defendants took affirmative steps to conceal Plaintiffs' cause of action by failing to answer Plaintiffs' Qualified Written Requests.

Section 1635(f) provides in pertinent part:

> An obligor's right of rescission shall expire three years after the date of consummation of the transaction or upon the sale of the property, whichever occurs first, notwithstanding the fact that the information and forms required under this section or any other disclosures required under this part have not been delivered to the obligor. . .

15 U.S.C. § 1635.

Courts in this district have interpreted § 1635(f) to completely preclude equitable tolling to the statute of limitations for a plaintiff's right to rescind. As Defendants stated in their brief, "Unlike the statute of limitations [for damages claims] provided in § 1640(e), the three-year right to rescind is a statutorily created right that expires three years after the loan . . . [a] claim for rescission under TILA and HOEPA is, therefore, not subject to tolling." *Thielen v. GMAC Mortgage Corp.*, 671 F.Supp.2d 947, 954-955 (E.D. Mich. 2009) (Edmunds, J.); *See also Beach v. Ocwen Fed. Bank*, 523 U.S. 410, 412 (1998) ("[Section] 1635(f) completely extinguishes the right of rescission at the end of the 3-year period.").

Therefore, Plaintiffs' claim for rescission under TILA is barred by the three-year statute of limitations, regardless of Defendants' failure to provide the documents requested by Plaintiff.

**B.      Plaintiffs' Remaining TILA Claims are Time-Barred.**

Furthermore, Plaintiffs' TILA damages claims are precluded by TILA's one-year statute of limitations, which is set forth in 15 U.S.C. § 1640(e). Unlike a borrower's right to rescind, however, the one-year period for damages claims is subject to equitable tolling under limited circumstances. *Jones v. Transohio Savings Assoc.*, 747 F.2d 1037, 1041 (6th Cir. 1984).

Under the doctrine of fraudulent concealment, the statute of limitations may be equitably tolled where the plaintiff alleges and establishes: 1) defendant concealed the conduct that constitutes the cause of action; 2) defendant's concealment prevented plaintiff from discovering the cause of action within the limitations period; and 3) until discovery, plaintiffs exercised due diligence in trying to find out about the cause of action. *Egerer*, 556 F.3d at 422. Where the doctrine of fraudulent concealment is applied "the one year period will begin to run when the borrower discovers or had reasonable opportunity to discover the fraud involving the complained of TILA violation." *Jones,* 747 F.2d at 1041.

Federal Rule of Civil Procedure 9(b) requires that a plaintiff bringing a claim for fraudulent concealment must plead the fraudulent acts with particularity. *Harvey v. Ameriquest Mort. Co.*, 2010 WL 4386976 (E.D. Mich. 2010) (Duggan, J.). Rule 9(b) has been interpreted to require a plaintiff alleging fraud to "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Frank v. Dana Corp.*, 547 F.3d 564, 569-70 (6th Cir. 2008) (citation omitted).

Although the Court remanded Plaintiffs' fraud and misrepresentation claims, Plaintiffs are not entitled to equitable tolling on their remaining TILA claims because Plaintiffs have failed to plead fraud or misrepresentation with particularity. Plaintiffs fail to plead how Defendants

9

took affirmative steps to conceal the alleged violations.  In Count II of their complaint, Plaintiffs simply make conclusory statements like "BNC Mortgage. . . fraudulently induced Plaintiffs to enter into a mortgage transaction" and "BNC Mortgage made. . . material misrepresentations." Plaintiffs' complaint does not set forth facts establishing fraudulent concealment and therefore their TILA damages claims cannot be equitably tolled.  As a result, Plaintiffs' TILA claims for damages are barred by TILA's one-year statute of limitations.

         **C.**      **Equitable Recoupment Does Not Apply to Plaintiffs TILA Claim.**

Alternatively, Plaintiffs assert that the doctrine of equitable recoupment saves their TILA claims from TILA's one-year statute of limitations, under 15 U.S.C. § 1640(e).  Section 1640(e) provides:

> This subsection does not bar a person from asserting a violation of this subchapter **in an action to collect the debt** which was brought more than one year from the date of the occurrence of the violation **as a matter of defense by recoupment** or set-off in such action, except as otherwise provided by State law.

15 U.S.C. § 1640(e) (emphasis added).

Plaintiffs rely on *Beach v. Ocwen Federal Bank*, 523 U.S. 410 (1998), but their reliance is misplaced.  Although the appellants in *Beach* were permitted to recoup some of the fees owed to their lender, their equitable recoupment claim was brought as defense to their lender's foreclosure proceeding.  *Id*. at 414.  The court in *Beach* explained that § 1635(f) does not apply when a plaintiff brings an independent TILA action, as Plaintiff has done in this case.  *Id*. at 415.  The court stated:

> [The plaintiffs] are, of course, correct that as a general matter a defendant's right to plead 'recoupment,' a defense arising out of some feature of the transaction upon which the plaintiff's action is grounded, survives the expiration of the period provided by a statute

10

> of limitation *that would otherwise bar the recoupment claim as an independent cause of action*. So long as the plaintiff's action is timely, *a defendant may raise a claim in recoupment even if he could no longer bring it independently*, absent the clearest congressional language to the contrary.

*Id.* (internal quotations and citations omitted) (emphasis added).

Since Plaintiffs bring their TILA claim through an independent action as a plaintiff, rather than as a defense to a debt collection suit, Plaintiffs cannot assert recoupment as a means to circumvent TILA's one year statute of limitations.

## IV. Plaintiffs' HOEPA Claim is Time-Barred.

In Count VII of their complaint, Plaintiffs allege that Defendants violated the Home Ownership Equity Protection Act ("HOEPA"). Specifically, Plaintiffs assert that Defendants violated provisions of 15 U.S.C. § 1639 by extending credit to Plaintiffs recklessly and without regard for Plaintiffs' ability to repay, inserting prepayment penalty provisions in the terms of Plaintiffs' note, and failing to deliver a notice or inclusion of prohibited terms to Plaintiffs.

At the hearing on this matter, Plaintiffs withdrew their claim under HOEPA. Even if Plaintiffs had not withdrawn their HOEPA claim, it is barred by the statute of limitations. Section 1639 applies to mortgages defined in § 1602(aa) of Title 15. HOEPA claims under §1602(aa) are subject to the same one-year statute of limitations as TILA claims. *See* 15 U.S.C. §§ 1635(f), 1640(e); *Yaldu v. Bank of America Corp.*, 700 F.Supp.2d 832 (E.D. Mich. 2010) (Lawson, J.). Therefore, for the same reasons stated in Part III, above, Plaintiff's HOEPA claims are time-barred.

## V. Plaintiff's RESPA Claims

### A. Plaintiffs' Claims Under 12 U.S.C. § 2605(e).

11

In Count VIII of Plaintiffs' complaint, Plaintiffs allege that Defendants violated 12 U.S.C. § 2605(e) and Regulation X, 24 C.F.R. 3500.21(e)(3)(ii)(B), by failing to respond to Plaintiffs' Qualified Written Requests ("QWRs").[3] Under § 2605, a servicer is required to respond to information requests relating to the servicing of a borrower's loan. 12 U.S.C. § 2605(e)(1)(A). RESPA defines "loan servicing" as "receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan ... and making the payments of principle and interest and such other payments with respect to the amounts received from the borrower as may be required pursuant to the terms of the loan." 12 U.S.C. § 2605(i)(3). Section 2605(e) is titled "Duty of loan servicer to respond to borrower inquiries," and provides:

> (1) Notice of receipt of inquiry
>
> > (A) In general
> >
> > If any servicer of a federally related mortgage loan receives a qualified written request from the borrower (or an agent of the borrower) for *information relating to the servicing of such loan*, the servicer shall provide a written response acknowledging receipt of the correspondence within 20 days (excluding legal public holidays, Saturdays, and Sundays) unless the action requested is taken within such period.
> >
> > (B) Qualified written request
> >
> > For purposes of this subsection, a qualified written request shall be a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, that--
> >
> > > (i) includes, or otherwise enables the servicer to identify, the name and account of the borrower; and

---

[3] In Count VIII of their complaint, Plaintiffs also re-allege claims under statutory provisions already addressed in Part IV, above, regarding Plaintiffs' HOEPA claims.

> > (ii) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower.
>
> (2) Action with respect to inquiry
>
> ***Not later than 60 days*** (excluding legal public holidays, Saturdays, and Sundays) after the receipt from any borrower of any qualified written request under paragraph (1) and, if applicable, before taking any action with respect to the inquiry of the borrower, the servicer shall--
>
> > (A) make appropriate corrections in the account of the borrower, including the crediting of any late charges or penalties, and transmit to the borrower a written notification of such correction (which shall include the name and telephone number of a representative of the servicer who can provide assistance to the borrower);
> >
> > (B) after conducting an investigation, ***provide the borrower with a written explanation or clarification that includes*--**
> >
> > > (i) to the extent applicable, ***a statement of the reasons for which the servicer believes the account of the borrower is correct as determined by the servicer***; and
> > >
> > > (ii) the name and telephone number of an individual employed by, or the office or department of, the servicer who can provide assistance to the borrower; or
> >
> > (C) after conducting an investigation, provide the borrower with a written explanation or clarification that includes--
> >
> > > (i) information requested by the borrower ***or an explanation of why the information requested is unavailable or cannot be obtained by the servicer***; and
> > >
> > > (ii) the name and telephone number of an individual employed by, or the office or department of, the servicer who

>           can provide assistance to the borrower.

12 U.S.C. § 2605(e) (emphasis added).

Although Plaintiffs allege that they sent four QWRs to ASC, the Court has been provided with only two QWRs, which are dated November 25, 2008 and February 13, 2009. (Def's Br., Ex. 15). Both of these letters were supplied by Defendants.

Defendants first contend that Plaintiffs' RESPA claims relating to Plaintiffs' QWRs should be dismissed to the extent that are made against Defendants MERS and U.S. Bank because neither was the servicer of the loan. In this case, there is no dispute that the servicer of Plaintiffs' loan was ASC, and that the only defendant to receive Plaintiffs' QWRs was ASC. Because MERS and U.S. Bank were not the servicers of Plaintiffs' loan, and § 2605 applies only to servicers of loans, Plaintiffs' § 2605 claims are dismissed to the extent that are made against Defendants MERS and U.S. Bank. *See* 12 U.S.C. § 2605(i)(2) ("The term "servicer" means the person responsible for servicing of a loan (including the person who makes or holds a loan if such person also services the loan)").

Defendants also assert that Plaintiffs' QWRs did not qualify as proper QWRs. The QWRs, however, include all the information required under § 2605(e)(1)(b). The QWRs include the names and account number of the borrowers, a brief statement of reasons for the belief of the Plaintiffs that the account is in error, and sufficient detail to the servicer regarding other information sought by Plaintiffs. Moreover, although both of Plaintiffs' QWRs requested a number of documents outside the scope of ASC's servicing of Plaintiff's loan, such as documents related to the origination of Plaintiffs' loan, Plaintiffs' QWRs requested relevant documents related to all payments made, as well as interest, fees, and other charges that

14

Plaintiffs' have incurred. These requests clearly relate to the servicing of the loan.

Finally, Defendants contend that Plaintiffs' RESPA claim fails because Plaintiffs failed to allege actual damages as a result of ASC's failure to respond to Plaintiffs' QWRs. If a plaintiff is alleging a violation of § 2605(e), as Plaintiffs are here, § 2605(f) provides:

> Whoever fails to comply with any provision of this section shall be liable to the borrower for each such failure in the following amounts:
>
> (1) Individuals. In the case of any action by an individual, an amount equal to the sum of—
>
> > (A) any actual damages to the borrower as a result of the failure; and
> >
> > (B) any additional damages, as the court may allow, in the case of a pattern or practice of noncompliance with the requirements of this section, in an amount not to exceed $1,000.

12 U.S.C. § 2605(f).

In this case, Plaintiffs are not alleging a pattern or practice of noncompliance and are limited to actual damages resulting from ASC's failure to respond to the QWR. Therefore, in order to properly allege a claim under § 2605(e), a plaintiff must allege actual damages. *See Kevelighan v. Trott & Trott, P.C.*, 2011 WL 2076336 at *4 (E.D. Mich. 2011) (Duggan, J.) ("A plaintiff asserting a claim under § 2605(f) must allege that she was actually harmed by the RESPA violation."); *Battah v. ResMAE Mortg. Corp.*, 746 F.Supp.2d 869, 876 (E.D. Mich. 2010) (Rosen, J.) ("To successfully plead a RESPA claim, Plaintiff must allege actual damages, which resulted from the Bank Defendants' failure to respond to Plaintiff's QWRs.").

Because Plaintiffs make no mention of actual damages under § 2605 in their complaint or response brief, the Court shall grant Defendants' Motion for Summary Judgment as to this

15

portion of Plaintiffs' RESPA claim.

      **B.**      **Plaintiffs' Claims Under 12 U.S.C. § 2607(a) are time-barred.**

Plaintiffs also assert that Defendants violated 12 U.S.C. §2607(a) and C.F.R. 3500.14 by receiving 1% of the total loan amount as a yield spread premium from the lender, and that the lender, in turn, added another 1% to the interest it charged for its own yield spread premium.

Section 2607(a) and 24 C.F.R. § 3500.14 prohibit the payment or acceptance of referral fees in connection with a federally related mortgage loan. With regard to Plaintiffs' allegations that Defendants violated these provisions of RESPA, Defendants argue that Plaintiffs' RESPA claim is barred by the statute of limitations under 12 U.S.C. § 2614. (Def's Br. at 14).

Defendants are correct in asserting that RESPA claims brought under § 2607 are subject to a one-year statute of limitations. *See* 12 U.S.C. § 2614; *Egerer v. Woodland Realty, Inc*. 556 F.3d 415, 421 (6th Cir. 2009). Section 2614 also provides that the limitations period begins to run from "the date of the occurrence of the violation." *Id*.

Plaintiffs entered into the mortgage agreement in March of 2005 – more than four years before the Plaintiffs filed their claim. Plaintiffs' RESPA claim under § 2607 is therefore barred by the one-year statute of limitations.

**VI.**      **Defendants are Not Debt Collectors Under the FDCPA.**

In Count IX of their complaint, Plaintiffs allege violations of the Fair Debt Collection Practices Act ("FDCPA"). Plaintiffs' only claims alleging FDCPA violations are based upon ASC's failure to respond to Plaintiffs' QWRs. In their response brief, Plaintiffs assert that Defendants violated 15 U.S.C. § 1692g by failing to respond to Plaintiffs' request for information regarding the "real owner" of Plaintiffs' debt. Plaintiffs also assert in their response

16

that Defendants violated 15 U.S.C. § 1692e(a)(2) by making false representations of the character, amount or legal status of Plaintiffs' debt.

As an initial matter, Plaintiffs fail to allege any acts on the part of MERS or U.S. Bank that would constitute a violation of the FDCPA. It is undisputed that the requests mailed by Plaintiffs were sent only to ASC as servicer of the loan and that MERS assigned its rights to the mortgage in February 2008. MERS has made no attempt to collect Plaintiffs' debt and Plaintiffs' recurring statements that MERS initiated foreclosure proceedings on Plaintiffs' home are unsubstantiated.[4]

Additionally, as stated by Defendants in their motion, Plaintiffs have failed to establish that MERS, U.S. Bank, and ASC are "debt collectors" under the FDCPA. Under 15 U.S.C. § 1692a(6)(A), the term "debt collector" does not include a creditor attempting to collect its own debts. Instead, the FDCPA applies only to those "collecting the debts of another." *Montgomery v. Huntington Bank*, 346 F.3d 693, 698-99 (6th Cir. 2003); *Scott v. Home American, et al.*, 2009 WL 3270084 at *4 (E.D. Mich. 2009) (Borman, J.); *Romberger v. Wells Fargo Bank*, 2008 WL 3838026 (E.D. Mich. 2008) (Cook, J.). Because U.S. Bank is a creditor attempting to collect its own debts, it is not a "debt collector" under the FDCPA. Similarly, MERS, as assignee, is in the same position as U.S. Bank but has been removed from the debt collection by virtue of its assignment. *See Scott,* 2009 WL 3270084 at *4. Therefore, U.S. Bank and MERS are exempt from the provisions of the FDCPA.

Furthermore, the term "debt collector" does not include "any person collecting or

---

[4]The Sheriff's Deed on Mortgage Foreclosure for Plaintiffs' property explicitly states, "Said mortgage is now held by U.S. Bank National Association, as Trustee for the Structured Asset Investment Loan Trust, 2005-5 by assignment."

17

attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity. . . concerns a debt which was not in default at the time it was obtained by such person." 15 U.S.C. § 1692a(6)(F).

ASC began servicing Plaintiffs' loan in July of 2005 and Plaintiffs did not default on their loan until 2007. Plaintiffs' debt was not in default at the time it was obtained by ASC, and ASC is therefore not a "debt collector" under the FDCPA. *King v. Ocwen*, 2008 WL 111260 (E.D. Mich. 2008) (Edmunds, J.) (holding that the term "debt collector" under the FDCPA does not include mortgage servicing companies as long as debt was not in default at the time it was assigned).

For these reasons, Plaintiffs FDCPA claims fail as to all moving Defendants.

### VII.     Plaintiffs' ECOA Claims are Time-Barred.

Finally, Plaintiffs allege that Defendants violated the Equal Credit Opportunity Act ("ECOA") by placing Plaintiffs "into a loan that had a significantly higher interest rate than what was qualified for." Plaintiffs also allege that Defendant IT Mortgage, who has yet to make an appearance in this matter, violated the ECOA by increasing the interest rate in order to receive a yield spread premium. The ECOA prohibits discrimination against any applicant with respect to any aspect of a credit transaction.

Plaintiffs do not cite to any particular provision of the ECOA and do not allege any discriminatory acts, or other disparate treatment, on the part of the moving Defendants MERS, U.S. Bank, and ASC. Thus, Plaintiffs' have failed to establish *prima facie* case for discrimination under the ECOA.

Furthermore, although Defendant IT Mortgage is not a moving party to the instant

motion, Plaintiffs' claims alleging that IT Mortgage violated ECOA by charging a yield spread premium, and any other ECOA claims, are barred by the ECOA's two-year statute of limitations. Specifically, 15 U.S.C. § 1691e(f) provides, "No such action shall be brought later than two years from the date of the occurrence of the violation. . . " In this case, the alleged violation occurred on March 16, 2005 – the date Plaintiffs executed their mortgage and note. Therefore, any claims Plaintiffs may have that occurred during the origination of their loan are time-barred.

Assuming Plaintiffs have properly alleged claims under ECOA, which they have not, Plaintiffs contend that the statute of limitations on their ECOA claims should be equitably tolled because Plaintiffs could not have discovered the problems associated with their loan until after they had an audit conducted on their loan. Plaintiffs do not provide the date that their loan audit was performed. Nonetheless, the terms of Plaintiffs' loan, including IT Mortgage's 1% mortgage broker fee, were clearly disclosed by Defendants in the loan documents that Plaintiffs signed on March 16, 2005. (*See* Def's Br., Ex. 9). Thus, Plaintiffs' have failed to establish that Defendants made any misrepresentations that could be the basis for tolling the statute of limitations. *Mills v. Equicredit Corp.*, 294 F.Supp.2d 903, 909 (E.D. Mich. 2003) (Borman, J.).

## CONCLUSION

For the reasons stated above, the Court GRANTS Defendants' Motion for Summary Judgment in its entirety. Accordingly, Plaintiffs' complaint is DISMISSED.

IT IS SO ORDERED.

S/Sean F. Cox<br>
Sean F. Cox<br>
United States District Court

Dated: August 2, 2011

I hereby certify that a copy of the foregoing document was served upon counsel of record on August 2, 2011, by electronic and/or ordinary mail.

                        S/Jennifer Hernandez
                        Case Manager